United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIA RENIGER, GREG BATTAGLIA,      ) Case No. 14-3612 SC
OREN JAFFE, LUCIA SAITTA, and ANN   )
MANCUSO, individually and on        ) ORDER GRANTING IN PART AND
behalf of all others similarly      ) DENYING IN PART DEFENDANTS'
situated,                           ) MOTIONS TO DISMISS AND
                                    ) DENYING MOTION TO STRIKE
            Plaintiffs,             )
                                    )
     v.                             )
                                    )
                                    )
HYUNDAI MOTOR AMERICA, a            )
California corporation, and         )
HYUNDAI MOTOR COMPANY, a foreign    )
corporation,                        )
                                    )
            Defendants.             )
_____)

I.  **INTRODUCTION**

     Now before the Court are two motions in this putative class

action alleging consumer protection, fraud, and warranty claims

related to alleged low-speed stalling of Hyundai Santa Fe vehicles.

See ECF No. 21 ("SAC").  First, Defendants Hyundai Motor America

and Hyundai Motor Company ("HMC") (collectively, "Hyundai") have

moved to strike Plaintiffs' class action allegations and

allegations relating to the Kia Motor Group on the grounds that

these allegations are either contrary to California and Ninth

**United States District Court**
For the Northern District of California

Circuit law or otherwise redundant, impertinent, and immaterial under Federal Rule of Civil Procedure 12(f).  ECF No. 31 ("Mot. to Strike").  Second, Defendants move to dismiss several of the named Plaintiffs for lack of standing and to dismiss the balance of Plaintiffs' allegations for failure to state a claim.  ECF No. 33 ("MTD").

These motions are fully briefed,[1] and appropriate for resolution without oral argument under Civil Local Rule 7-1(b). For the reasons set forth below, the motion to dismiss is GRANTED IN PART and DENIED IN PART and the motion to strike is DENIED.

**II.   BACKGROUND**

The Hyundai Santa Fe is a midsized sport utility vehicle manufactured by Hyundai since 2000.  Plaintiffs allege that model year 2010-2012 Santa Fes have a safety defect that causes the vehicle to totally lose power (or "stall").  When an affected Santa Fe stalls, power steering and brakes are lost as well, creating a potentially dangerous situation in which it is difficult to control the vehicle.  Plaintiffs contend that Defendants had knowledge of this alleged defect through a variety of sources, including consumer complaints and similar problems experienced by Kia Motors, another automobile manufacturer, with its Kia Sorento, a midsized sport utility vehicle much like the Santa Fe.

Plaintiffs' allegations of knowledge and concealment of this alleged defect stem from a series of Technical Service Bulletins ("TSBs") issued by Hyundai since 2010 "describing procedures that

---

[1] ECF Nos. 35 ("MTD Opp'n"), 36 ("Mot. to Strike Opp'n"), 39 ("MTD Reply"), 40 ("Mot. to Strike Reply").

2

**United States District Court**
For the Northern District of California

have been implemented by dealers to remedy the Stalling Defect without success." SAC ¶¶ 7. These TSBs describe procedures for cleaning the "Electronic Throttle Control . . . throttle body" to address idling, power, and throttle issues, and updates to the "Engine Control Module" to improve shifting at low throttle, coasting to a stop, and a "'limp home' condition caused by performance/power issues." Id. at ¶¶ 8-10.

In 2014, Hyundai announced a "Voluntary Service Campaign," which provides a free software update to address the risk that "during a specific set of operating conditions," model year 2010-2012 vehicles can lose power or stall "when coming to a stop during braking at low speed . . . ." Id. at ¶ 13. Hyundai notified regulators of the campaign, and states it sent a letter to all owners and lessees of Santa Fes in the affected model years notifying them of the issue and offering a free software update at dealerships to address the stalling problem. MTD at 3 (citing SAC Ex. H). However, Plaintiffs allege this is only the illusion of a fix and has, in certain cases, not been made available to the owners or lessees of all affected vehicles (including two of the named plaintiffs). See SAC at ¶¶ 12-14, 18.

The named Plaintiffs in this putative class action are five current or former owners of new or used Santa Fes from model years 2010-2012. They seek to represent a nationwide class of owners and lessees of 2010-2012 Santa Fes and three subclasses made up of (1) New York owners and lessees, (2) California owners and lessees, and (3) California owners and lessees who are "consumers" within the meaning of California Civil Code Section 1761(d). Plaintiffs allege nine causes of action, including violations of California

1   and New York consumer, false advertising, and implied warranty

2   laws; breach of the Magnuson-Moss Warranty Act ("Mag.-Moss"), 15

3   U.S.C. § 2301; and common law fraud.  SAC ¶¶ 107-195.

4        While not all of the named plaintiffs allege out-of-pocket

5   costs associated with the stalling defect, all allege that they

6   owned Santa Fes from model years 2010-2012 and experienced

7   unforeseen and sometimes dangerous stalling.  One, Reniger, sold

8   her Santa Fe prior to the service campaign after her vehicle

9   stalled on several occasions and her Hyundai dealer was unable to

10  remedy the stalling even after paying for service she understood

11  would help with the stalling.  Id. at ¶¶ 40-44.  Two other named

12  plaintiffs, Saitta and Mancuso, brought their vehicles in for

13  Hyundai's service campaign, but continued to experience stalling

14  issues thereafter.  Id. at ¶ 19.  Three, Mancuso, Battaglia, and

15  Jaffe, did not receive notice of the service campaign, and own

16  Santa Fes that are listed as ineligible for the service campaign on

17  Hyundai's service campaign website,

18  https://www.hyundaiusa.com/campaign929/.  Id. at ¶¶ 51, 58.  Of

19  these, only Mancuso brought her vehicle in for the service

20  campaign, and Battaglia and Jaffe's vehicles remain unfixed and are

21  allegedly still afflicted.  Id.

22       Now, arguing these allegations are insufficient to confer

23  Article III standing or state a claim upon which relief can be

24  granted, Hyundai moves to dismiss.  Hyundai also seeks to strike

25  Plaintiffs' class action allegations, arguing that these (and

26  Plaintiffs' allegations about the Kia Sorento and Hyundai's

27  relationship with Kia) are "an insufficient defense or . . .

28  redundant, immaterial, impertinent, or scandalous matter" within

United States District Court
For the Northern District of California

the meaning of Federal Rule of Civil Procedure 12(f).  Plaintiffs oppose.

The Court ordered supplemental briefing on both (1) whether standing of a single plaintiff satisfies the minimum needs of Article III standing and (2) whether a transaction is required vice allegations of a safety concern.  Order of the Court dated June 12, 2015, ECF No. 45 ("Supp. Briefing Order").  Parties have provided all responsive briefs.  ECF Nos. 48 ("Supp. Mot."), 49 ("Supp. Opp'n"), 50 ("Supp. Reply").

**III.  LEGAL STANDARDS**

**A.    Federal Rule of Civil Procedure 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction. Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).  Because Article III standing relates to the Court's subject-matter jurisdiction, it is properly raised on a Rule 12(b)(1) motion, and the party asserting jurisdiction "bears the burden of proving its existence."  Id. at 1121-22.

To satisfy Article III's standing requirements, Plaintiffs must demonstrate that "(1)[they] ha[ve] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**B.   Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**C.   Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

**United States District Court**
For the Northern District of California

Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted) (alteration in original).

### D. **Federal Rule of Civil Procedure 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and alteration omitted), rev'd on other grounds sub nom., Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

## IV. **DISCUSSION**

Article III standing is a threshold issue. See Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). As a result, the Court addresses Defendants' Rule 12(b)(1) motion first, before turning to the balance of the motion to dismiss and, finally, the motion to strike.

### A. **Rule 12(b)(1) Motion**

Hyundai contends that four of the five named plaintiffs -- Reniger, Battaglia, Saitta, and Mancuso -- all lack Article III ///

**United States District Court**
For the Northern District of California

1  standing.  Hyundai does not challenge the standing of the fifth

2  named plaintiff, Jaffe.

3      Article III standing has three elements.  First, Plaintiffs

4  must have suffered an "injury in fact," which is an actual or

5  imminent, concrete, and particularized "invasion of a legally

6  protected interest . . . ."  <u>Lujan</u>, 504 U.S. at 560.  Second, that

7  injury must be "fairly traceable" to the Defendants' conduct.  <u>Id.</u>

8  (ellipses and alterations omitted).  Finally, Plaintiffs must show

9  that a favorable decision will likely redress their injuries.  <u>Id.</u>

10  at 561.  Although the burden of showing standing is on the

11  Plaintiff, "general factual allegations of injury resulting from

12  the defendant's conduct may suffice" at the pleading stage.  <u>Id.</u>

13  "[I]n an era of frequent litigation[ and] class actions, . . .

14  courts must be more careful to insist on the formal rules of

15  standing, not less so."  <u>Ariz. Christian Sch. Tuition Org. v Winn</u>,

16  131 S. Ct. 1436, 1449 (2011).

17      "In a class action, standing is satisfied if at least one

18  named plaintiff meets the requirements."  <u>Lowden v. T-Mobile USA,</u>

19  <u>Inc.</u>, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008); <u>see also</u> <u>Ellis v.</u>

20  <u>Costco Wholesale Corp.</u>, 657 F.3d 970, 979 (9th Cir. 2011) (noting

21  that "[b]ecause only one named Plaintiff must meet the standing

22  requirements, the district court did not err in finding that

23  Plaintiffs have standing.").[2]  Here, there can be no serious doubt

24  that (at least) Jaffe has standing -- indeed, Defendants did not

25  even challenge Jaffe's Article III standing in their original MTD.

26  Plaintiffs allege that Jaffe owned a used 2011 Santa Fe,

27

28  [2] For a more in depth set of citations, <u>see</u> <u>Newberg on Class</u>
    <u>Actions</u> § 2:3 (5th Ed.), 1, n. 10-11.

1  experienced multiple stalls, and paid $412.54 out-of-pocket in

2  several attempts to remedy the stalling.  SAC ¶¶ 33, 54-59.

3  Furthermore, Plaintiffs allege that despite Jaffe's repeated

4  stalling issues, Jaffe's vehicle is listed as ineligible for

5  Hyundai's service campaign, and his vehicle continues to suffer

6  from the alleged stalling defect.  Id. at ¶ 58.

7      Supplemental briefing as ordered by the Court does not alter

8  this analysis.  See Supp. Briefing Order.  Hyundai cites numerous

9  authorities that confirm the need for Article III standing, that

10 there must be a named plaintiff with such standing, and that if

11 none of the named plaintiffs have standing then the case should be

12 dismissed for lack of standing.  Supp. Mot. at 1-6.  However, the

13 cases Hyundai cites do not contemplate where there are both a named

14 plaintiff with standing to proceed on each and every claim against

15 each and every defendant and still other named plaintiffs who might

16 lack standing as to some or all of the claims.

17     While Hyundai stresses context for the Ninth Circuit cases

18 underlying those cited by the Court's Supp. Briefing Order, Hyundai

19 fails to appreciate the language and context of the cases to which

20 Hyundai itself cites.  For example, Defendants partially cite In re

21 Carrier IQ, Inc., Consumer Privacy Litig., 2015 U.S. Dist. LEXIS

22 7123, at *51 (N.D. Cal. Jan. 21, 2015).  The full quote is:

23     [Another case] stands for the unremarkable proposition
       that for a class action to proceed between the named
24     parties, each named plaintiff must have standing to
       sue at least one named defendant; to hold each
25     defendant in the case, there must be at least one
       named plaintiff with standing to sue said defendant.
26

27 Id. (emphasis added, reflecting the limited portion quoted by

28 Hyundai).  While out of context the portion Hyundai quoted may

1   appear to support Hyundai's argument, the quote in context clearly

2   indicates that Judge Chen is discussing what is necessary to hold a

3   <u>defendant</u> in the case -- namely at least one named plaintiff who

4   has a claim against the named defendant.  Other citations by

5   Hyundai similarly or even more glaringly misconstrue the context of

6   the quoted source.  <u>See</u> Supp. Mot. at 5 n.4.

7       Here, <u>Lowden</u>, <u>Ellis</u>, and the cases collected by Plaintiffs

8   persuade the Court that it is proper to summarily find that Article

9   III standing exists where a single named plaintiff is found to have

10  standing.  The Court thus holds that where there are multiple

11  defendants and multiple claims, there must exist at least one named

12  plaintiff with Article III standing as to each defendant and each

13  claim -- but a single named plaintiff who meets these criteria can

14  suffice, even though it is not necessary that Article III standing

15  be established via a single vice multiple named plaintiff(s).[3]

16      Because the Court need "consider only whether at least one

17  named plaintiff satisfies the standing requirements" of Article III

18  and Jaffe satisfies said standing requirements, Hyundai's Rule

19  12(b)(1) motion is DENIED.  <u>See</u> <u>Bates</u>, 511 F.3d at 985.

20  **B.   <u>Rule 12(b)(6) Motion</u>**

21      Defendants make eight arguments as to why Plaintiffs' claims

22  fail as pleaded: (1) that HMC should be dismissed from the case for

23  lack of any transaction; (2) that the Unfair Competition Law (Cal

24  Bus. & Prof. C. § 17200 et seq.) ("UCL"), Consumer Legal Remedies

25  Act ("CLRA") (Cal. Civ. Code § 1750 et seq.), and Fraud Claims fail

26  for assorted reasons; (3) that False Advertising Law (Cal. Bus. &

27
28  [3] While this ruling may have implications for class certification,
    this finding is largely distinct from such an inquiry, which the
    Court expressly does not reach or consider at this time.

1  Prof. C. § 17500 et seq.) ("FAL") claims fail to identify an

2  advertisement; (4) that certain named plaintiffs fail to allege a

3  breach of implied warranty within the warranty period; (5) that New

4  York implied warranty claims fail for lack of privity; (6) that the

5  Song-Beverly Consumer Warranty Act (Civ. Code § 1790 et seq.)

6  ("Song-Beverly") and Mag.-Moss require damages that were not

7  pleaded; (7) that Mag.-Moss claims without a viable underlying

8  state-law claim should be dismissed; and (8) that the Court should

9  defer to the "primary jurisdiction" of the National Highway and

10  Transportation Safety Administration ("NHTSA") rather than decide

11  this case.  The Court addresses each in turn.

12  **1.  Transactions with Hyundai Motor Company**

13  First, Defendants argue that HMC (as opposed to Hyundai Motor

14  America) should be dismissed because Plaintiffs have failed to

15  allege a "transaction" with HMC, and thus have not shown that HMC

16  had a duty to disclose the alleged stalling defect to Plaintiffs.

17  The Court requested and received supplemental briefing on this

18  issue due to concern that a "transaction" may not be required where

19  a party alleges a safety concern posed by the defect.  See Supp.

20  Briefing Order at 2; see also Supp. Mot. at 7-10; Supp. Opp'n at 6-

21  10; Supp. Reply at 3-5.

22  While there are four distinct circumstances in California law

23  in which "nondisclosure or concealment may constitute actionable

24  fraud," LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (Cal. Ct.

25  App. 1997), several cases have concluded that "no duty to disclose

26  can arise in the absence of either a fiduciary duty or a

27  transaction between the parties."  See Fulford v. Logitech, Inc.,

28  No. C-08-2041 MMC, 2009 WL 837639, at *1 (N.D. Cal. Mar. 26, 2009)

United States District Court
For the Northern District of California

1   (citing LiMandri, 52 Cal. App. 4th at 336-37); see also Cirulli v.

2   Hyundai Motor Co., No. SACV 08-0854 AG (MLGx), 2009 WL 4288367, at

3   *4 (C.D. Cal. Nov. 9, 2009) (dismissing CLRA claims against HMC --

4   as opposed to Hyundai Motor America -- for failing to plead a

5   "transaction" with HMC).  Thus, even if Plaintiffs argue that HMC

6   had "exclusive knowledge of material facts not known to the

7   plaintiff[s]," and "actively conceal[ed] some material fact[s],"

8   MDT Opp'n at 15, Defendants contend Plaintiffs still must plead a

9   transaction or other relationship between the Plaintiffs and HMC.

10  See LiMandri, 52 Cal. App. 4th at 336; see also Los Angeles Mem'l

11  Coliseum Comm'n v. Insomniac, Inc., 233 Cal. App. 4th 803, 831

12  (January 27, 2015).[4]

13       However, "a duty to disclose may also arise when a defendant

14  possesses or exerts control over material facts not readily

15  available to the plaintiff[,]" at least when those material facts

16  concern allegedly concealed safety risks known only to the

17  manufacturer.  See Jones v. ConocoPhillips, 198 Cal. App. 4th 1187,

18  1198-99 (Cal. Ct. App. 2011) (stating that the general rule that

19  "'manufacturers have a duty to warn consumers about the hazards

20  inherent in their products'" is "equally pertinent to the scope of

21  the defendants' duty to disclose") (quoting Johnson v. Am.

22  Standard, Inc., 179 P.3d 905, 910 (Cal. 2008)); see also O'Shea v.

23  Epson Am., Inc., No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *7-9

24  (C.D. Cal. July 29, 2011) (noting that "[a]lthough California

25  courts are split on this issue, the weight of authority suggests

26

27  [4] Insomniac examined costs associated with a rental agreement and
    found only a commercial relationship, not a fiduciary relationship.

28  233 Cal. App. 4th at 831.  It did not discuss -- as it was not
    relevant -- any safety exception, and thus is inapposite here.

**United States District Court**
For the Northern District of California

that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation <u>or a safety issue</u>.") (citations omitted, emphasis added); <u>Ehrlich v. BMW of N. Am., LLC</u>, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) ("[T]he Court concludes that a safety-based exception exists that might create a duty to disclose a defect even after the period for an express warranty expires and Plaintiff has sufficiently alleged . . . an unreasonable safety risk that would be material to a reasonable consumer."). Thus, in <u>ConocoPhillips</u>, the Court of Appeal concluded that the plaintiffs, family members of a deceased worker exposed to toxic chemicals, had sufficiently alleged a duty to disclose (and a claim for fraudulent concealment) against the manufacturers of those chemicals without requiring any prior "transaction" between the deceased worker and the manufacturers. <u>ConocoPhillips</u>, 198 Cal. App. 4th at 1199-1200; <u>see also</u> <u>Daugherty v. Am. Honda Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 836-37 (Cal. Ct. App. 2006) (noting the lack of allegations of a safety issue in concluding that Honda did not have a duty to disclose an alleged engine defect).

Here, Plaintiffs allege that the stalling issue "poses an obvious and serious safety risk," that consumer reports "clearly document" that risk by detailing "many 'near misses,'" and that Defendants had "superior and exclusive knowledge of the Stalling Defect" since early 2009 by virtue of their exclusive access to pre-production testing and data, consumer complaints, internal testing, and other data. SAC at ¶ 7, 78, 89. Moreover, further illustrating the potential risks of stalling, Plaintiffs' complaint recounts several harrowing incidents, including two times when

**United States District Court**
For the Northern District of California

1   named plaintiff Battaglia narrowly avoided collisions after his
2   vehicle stalled and he lost power steering and brakes.  Id. at ¶¶
3   48, 50.  In this respect, this case is unlike the authorities on
4   which Defendants rely requiring a transaction between the plaintiff
5   and the defendant prior to finding a duty to disclose.  See Wilson
6   v. Hewlett-Packard, 668 F.3d 1136, 1142 (9th Cir. 2012) (concluding
7   that plaintiffs did not sufficiently allege a nexus between the
8   alleged design defect and the alleged safety hazard); Robinson v.
9   HSBC Bank USA, 732 F. Supp. 2d 976, 980 (N.D. Cal. 2010) (analyzing
10  whether a newspaper advertisement featuring a photograph of
11  plaintiffs' house violated the CLRA); Cirulli, 2009 WL 4288367, at
12  *1 (discussing an alleged frame corrosion defect without analyzing
13  whether it was a safety risk); cf. Hoffman v. 162 N. Wolfe LLC, 228
14  Cal. App. 4th 1178, 1192 (Cal. Ct. App. 2014) as modified on denial
15  of reh'g (Aug. 13, 2014), review denied (Nov. 25, 2014)
16  (distinguishing between the safety risk in ConocoPhillips and the
17  case at bar, which involved allegations a landowner had a duty to
18  disclose a prescriptive easement).

19      Hyundai is therefore mistaken that it had no duty to disclose.
20  Hyundai suggests that a duty to disclose presupposes a fiduciary
21  relationship or some kind of transaction between the parties.  See,
22  e.g., Cirulli, 2009 WL 4288367, at *4 (dismissing claims against
23  HMC under LiMandri, 52 Cal. App. 4th at 336-37, which Hyundai
24  argues treats a transaction or fiduciary relationship as necessary
25  for a duty to disclose).  However, Cirulli and the other cases on
26  which Hyundai relies are inapposite where, as here, Plaintiffs
27  allege a safety defect that a reasonable consumer would find
28  material.  See Daugherty v. Am. Honda Motor Co., Inc., 144 Cal.

App. 4th 824, 836-37 (Cal. Ct. App. 2006) (noting the lack of allegations of a safety issue in concluding that Honda did not have a duty to disclose an alleged engine defect); Mui Ho v. Toyota Motor Corp., 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013) ("[A] duty to disclose may arise if a plaintiff alleges 'physical injury or . . . safety concerns posed by the defect.'") (quoting Daugherty, 144 Cal. App. 4th at 836); see also Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007); Williams v. Yamaha Motor Corp., U.S.A., No. CV 13-05066 BRO, 2015 WL 2375906, at *8 (C.D. Cal. Apr. 29, 2015).[5] Here, Plaintiffs' complaint is replete with allegations that the alleged stalling defect is dangerous -- a reasonable conclusion given that when the vehicle stalls it apparently loses both power steering and power brakes, thus making the vehicle difficult to steer or stop.  See SAC at ¶¶ 17, 48-50, 78, 87-89.

As noted in its Supp. Briefing Order, in at least one case involving a concealed safety risk, the California Court of Appeal reversed the dismissal of a fraudulent concealment claim against 19 chemical companies even though those companies only contracted with the plaintiffs' decedent's employer.  See ConocoPhillips, 198 Cal. App. 4th at 1199-1200.  While the Court of Appeal did not discuss

---

[5] Williams, where there was no actual injury yet the court still found an adequate safety concern to require disclosure, is being appealed, No. 15-55924, filed June 12, 2015.  The Court sua sponte considered -- and rejected -- the need for a stay pending the results of this appeal.  There are adequate legal grounds upon which to decide the matter at issue and there are sufficient allegations which the Court finds survive this motion to dismiss such that: (1) parties can complete another attempt at a proper amended complaint while the appeal is pending without any harm; and (2) should the parties begin discovery, discovery would be as applicable to those issues not reached by the matters pending on appeal as to those issues potentially reached by the Ninth Circuit.

**United States District Court**
For the Northern District of California

the precise authorities on which Defendant here bases their argument for dismissing HMC, it notably fails to require a transaction (vice a relationship) between the decedent and the chemical companies to create a duty to disclose.  This casts doubt on Defendants' arguments that a transaction is required in the first place and that HMC should be dismissed because Plaintiffs never transacted with it.  <u>See</u> <u>id.</u>[6]  Likewise, Hyundai's complaints about group pleading are misplaced.  <u>See</u> <u>Cirulli</u>, 2009 WL 4288367, at *4 (noting that group pleading is permissible so long as the complaint puts defendants on notice of claims against them).

As referenced above, Plaintiffs sufficiently allege materiality.  Plaintiffs state that they would have behaved differently had they been aware of the alleged stalling defect. SAC ¶¶ 43-44, 52, 59, 64, 71, 117; <u>see also</u> <u>Falk</u>, 496 F. Supp. 2d at 1095-96.  Again, this is highly reasonable, as very few "reasonable consumer[s]" would buy a car (at full price) that they knew will unpredictably stall resulting in an inability to steer or brake.  As a result, Plaintiffs have adequately pleaded a duty to disclose on the part of both HMC and Hyundai Motor America.[7]

---

[6] The Court rejects Defendants' suggestion, Supp. Reply at 5, that <u>ConocoPhillips</u> has been limited to its facts by <u>Hoffman</u>, 228 Cal. App. 4th at 1192 ("A manufacturer's nondisclosure to the public of the toxic nature of its products where the toxicity is known to the manufacturer but not to others is a very different circumstance from a landowner's knowledge that it possesses prescriptive easement rights.").  That <u>ConocoPhillips</u> cannot be used to extend liability for concealment under the purely business facts presented in <u>Hoffman</u> supports Plaintiffs' argument that safety concern cases are of a different ilk.  <u>See</u> Supp. Opp'n at 8-9.  The Court also rejects the collected citations offered by Defendants at Supp. Mot. at 8 n.7, as the cases therein that would be binding on the Court (vice persuasive) all fail to involve a safety concern pursuant to manufacturer liability or else fail (in dicta) to do more than cite to <u>LiMandri</u> without any analysis.

[7] Hyundai also argues that Plaintiffs' complaint runs afoul of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard

United States District Court
For the Northern District of California

1    Defendants further argue Plaintiffs' CLRA claims against HMC

2  must be dismissed because the CLRA only applies to "unfair methods

3  of competition and unfair or deceptive acts or practices undertaken

4  . . . <u>in a transaction</u>."  Cal. Civ. Code § 1770 (emphasis added).

5  However, as numerous cases have noted, the CLRA is to be

6  interpreted broadly, and "a cause of action under the CLRA may be

7  established independent of any contractual relationship between the

8  parties."  <u>See</u> <u>McAdams v. Monier, Inc.</u>, 182 Cal. App. 4th 174, 186

9  (Cal. Ct. App. 2010); <u>Chamberlan v. Ford Motor Co.</u>, 369 F. Supp. 2d

10  1138, 1144 (N.D. Cal. 2005) ("Plaintiffs who purchased used cars

11  have standing to bring CLRA claims, despite the fact that they

12  never entered into a transaction directly with" the manufacturer).

13  While Hyundai's argument is not without support, <u>see</u> <u>Cirulli</u>, 2009

14  WL 4288367, at *4, "the weight of persuasive authority falls

15  heavily against the position [Hyundai] takes here . . . ."  <u>See</u>

16  <u>Gray v. BMW of N. Am., LLC</u>, No. 13-cv-3417-WJM-MF, 2014 WL 4723161,

17  at *4 (D.N.J. Sept. 23, 2014) (collecting sources).

18    As a result, Defendants' motion to dismiss HMC is DENIED.

19  Insofar as Defendants' motion to dismiss is based on a lack of a

20  transaction or duty to disclose, it is DENIED.

21          **2.  <u>UCL, CLRA, and Fraud Claims</u>**

22    Defendants make three arguments relating to why the UCL, CLRA,

23  and Fraud claims should fail.  The primary challenge claims a

24  failure by Plaintiffs to adequately plead that Defendants had the

25  for claims grounded in fraud by grouping together both Hyundai

26  Motor America and HMC.  However, in "a case of an alleged
    fraudulent concealment perpetrated by sophisticated corporate

27  entities that are related to each other, the Plaintiffs need not
    distinguish the specific roles that each entity played in the

28  fraudulent concealment in order to meet the Rule 9(b) standard."
    <u>Gray</u>, No. 13-cv-3417-WJM-MF, 2014 WL 4723161, at *2.

United States District Court
For the Northern District of California

1  requisite knowledge of the defect at the relevant time.  Defendants

2  then argue they had no duty to make disclosures related to used

3  vehicles and that there was no properly alleged violation of the

4  TREAD Act.  The Court focuses on the first argument, and then

5  briefly resolves the latter two.

6             **i.  Knowledge**

7       Hyundai argues that Plaintiffs' allegations that it knew of

8  the alleged stalling defect are insufficient because: (1) they

9  post-date the named plaintiffs' vehicle purchases; (2) are

10 insufficient "summary claims of knowledge" rejected by the Ninth

11 Circuit in Wilson, 668 F.3d 1136; or (3) the claims are otherwise

12 insufficient to show Hyundai's knowledge.  Mot. at 10-11.

13      Plaintiffs allege Defendants knew or should have known of the

14 alleged stalling defect before they purchased their Santa Fes

15 because Defendants had exclusive access to pre-production, pre-

16 release, and post-release testing data, early consumer complaints,

17 high warranty reimbursement rates and repair orders, replacement

18 part sales data, and data from dealerships.  See SAC ¶ 89.

19 Moreover, Plaintiffs also point to customer complaints made with

20 the NHTSA and a string of Technical Service Bulletins ("TSBs") as

21 further demonstrating Hyundai's knowledge.  See, e.g., SAC ¶¶ 4-5,

22 7-12, 17-19, 21, 80.

23      While Plaintiffs point to cases such as Falk, 496 F. Supp. 2d

24 at 1099, which found that similar allegations of exclusive

25 knowledge were sufficient, the Ninth Circuit's subsequent decision

26 in Wilson, 668 F.3d at 1145-48 calls that conclusion into question.

27 Wilson involved allegations that HP failed to disclose an allegedly

28 dangerous safety defect that could cause laptop computers to

**United States District Court**
For the Northern District of California

overheat or catch fire.  Id. at 1139.  The Ninth Circuit concluded plaintiffs insufficiently alleged HP's knowledge by comparing their vague assertions of access to information and testing with the allegations in Cirulli, 2009 WL 4288367, at *4.  In Cirulli, plaintiffs alleged in relevant part that Hyundai knew of an alleged defect in its Sonata vehicles because it began tracking the NHTSA database for reports of defects in 1999, when the first affected Sonata was released.  Id.; Wilson, 668 F.3d at 1146-47; see also Wilson, 668 F.3d at 1147 (contrasting Falk due to reliance on "'amassed weight of [customer] complaints' together with other indications that GM had knowledge of the defect.'") (quoting Falk, 496 F. Supp. 2d at 1096-97) (alteration in original).

The Court nonetheless finds that Plaintiffs have adequately alleged Hyundai's knowledge of the alleged stalling defect.  The Court agrees that some of Plaintiffs' knowledge allegations are the kinds of generic boilerplate rejected by Wilson and subsequent cases.  See, e.g., Grodzitsky v. Am. Honda Motor Co. Inc., No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013).  Here, however, Plaintiffs provide more than merely conclusory allegations of knowledge.  See Falco v. Nissan N. Am. Inc., No. CV 13-00686 DDP MANX, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013) ("in the present case, unlike in Wilson and Grodzitsky, Plaintiffs have alleged particular facts which make Plaintiffs' allegations more than merely speculative or conclusory."); MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1095-96 (N.D. Cal. 2014) ("Dispositive in each of Mui Ho and Grodzitsky was whether the plaintiffs provided additional information supporting their allegations."); Mui Ho, 931 F. Supp.

United States District Court
For the Northern District of California

2d at 998.  Specifically, in addition to alleging Defendants had exclusive access to information about the stalling defect sooner, Plaintiffs allege a connection between pre-2014 TSBs aimed at the Santa Fes' throttle and Engine Control Module, the use of both (as documented in NHTSA complaints and the named plaintiffs' own allegations) to address stalling, and Hyundai's resulting knowledge (through monitoring the NHTSA database).  See SAC ¶¶ 8-11, 41, 68, 80.  Thus, even though Hyundai's most recent TSB post-dates Plaintiffs' Santa Fe purchases by at least 22 months, the knowledge Plaintiffs allege came significantly earlier.[8]  Defendants' arguments to the contrary stressing that there is no connection between these early TSBs and the stalling defect may (or may not) prove superior at a later stage of litigation.  See MTD Reply at 6-7.  But at this stage, where the Court is bound to accept the pleadings as true, the pleadings form a plausible basis for belief that Defendants knew or reasonably should have known of a defect (which per the earlier section they had a duty to disclose).

### ii.  Duty to Disclose on Used Vehicles

Defendants' argument regarding used vehicle purchases appears to be derivative of their contention that they had no duty to disclose.  Accordingly, their argument to dismiss Plaintiffs Jaffe and Saitta (both of whom purchased used Santa Fes) also fails.  See MTD at 16.[9]

---

[8] This conclusion is further supported by Parenteau v. Gen. Motors, LLC, No. CV 14-04961-RGK MANX, 2015 WL 1020499, at *6 (C.D. Cal. Mar. 5, 2015) (discussing Falco, Wilson, and Mui Ho, 931 F.Supp.2d at 998 (where allegations of internal testing and reporting were sufficient when coupled with allegation that manufacturer issued two technical service bulletins regarding the defect)).
[9] To the extent Hyundai argues that because used cars are sold between private parties, and it would be an "impossibility" for it to "inject itself into each transaction" and disclose the existence

United States District Court
For the Northern District of California

### iii. **TREAD Act**

As the Court has found that Plaintiffs adequately pleaded an independent basis for their UCL claim, the Court need not address Defendants' arguments regarding the TREAD Act. See 49 U.S.C. §§ 30118(c), 30119(a).

As a result, Hyundai's motion to dismiss is DENIED as to Plaintiffs' UCL, CLRA, and common-law fraud claims.

### 3. **False Advertising Law Claims**

Next, Defendants argue that Plaintiffs' FAL claims fail because they lack the requisite factual support and do not identify specific advertisements. There must be more to allegations than simply elements of a cause of action -- there must be factual allegations supporting those elements. See Ashcroft, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (discussing Twombly, 550 U.S. 544). Moreover, to satisfy the Fed. R. Civ. P. 9(b) particularity requirement, a plaintiff must include allegations about the time, place, and content of the alleged misrepresentations, as well as an explanation as to why the statement or omission complained of is false or misleading. Janda v. T-Mobile, USA, Inc., No. C 05-03729 JSW, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (citations omitted). However, this requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Id. (quoting Moore v.

---

of the alleged stalling defect, that concern is misplaced. Reply at 9. Disclosures can take many forms and do not necessarily require a manufacturer to be aware of or participate in private transactions. However, to the extent this is actually a privity argument, the Court separately considers this matter later herein.

United States District Court
For the Northern District of California

1    <u>Kayport Package Exp., Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)).

2    The goal, per the Ninth Circuit, is to ensure that, "when averments

3    of fraud are made, the circumstances constituting the alleged fraud

4    [are] specific enough to give defendants notice of the particular

5    misconduct . . . so that they can [defend] against the charge and

6    not just deny that they have done anything wrong."  Id. (quoting

7    <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)).

8         Here, some factual allegations seem, at first, to be proper.

9    Per the Court's earlier discussion, Defendant had knowledge of the

10   defect prior to the purchases made by Plaintiffs, and accordingly

11   had a duty to disclose, thus satisfying part of the requirements of

12   <u>Daugherty</u>, 144 Cal. App. 4th at 835.  In line with this, Plaintiffs

13   have provided some examples of statements Hyundai has made -- to

14   include time, place, content, and explanations thereof -- that are

15   false or misleading pursuant to a theory of fraudulent omission.

16   <u>See, e.g.</u>, SAC ¶¶ 13-18.  However, other information in the SAC

17   itself suggests that this same specific written statement which was

18   false may not have been seen and thus was not misleading to at

19   least one named plaintiff, if not more.  <u>See, e.g.</u>, SAC ¶ 69

20   (where a named Plaintiff did not receive a notice of the Service

21   Campaign, and thus likely also did not visit a website described

22   therein which allegedly falsely stated that said named Plaintiff's

23   vehicle was unaffected).

24        Other examples of advertisements or information lack

25   specificity as to the <u>precise nature</u> of the <u>specific statement</u> and

26   sometimes lack an explanation of precisely how the <u>specific</u>

27   <u>statement</u> referenced was false or misleading (even if by omission).

28   <u>See</u> SAC ¶¶ 39, 44, 46, 52, 54, 59, 60, 64, 66, 71.  While

Defendants can easily review what was included in a car's "Monroney sticker" or on their own website, the content of other amorphous internet research or statements by a salesperson give insufficient notice for a Defendant to adequately respond.  The need for specificity remains -- or perhaps is especially present -- where Plaintiffs rely on a theory of fraudulent omission.  Plaintiffs' failure to specifically identify the substance of the claims makes it difficult for even the Court to distinguish between claims of product superiority "that are vague or highly subjective [and thus] often amount to nonactionable puffery," versus "'misdescriptions of specific or absolute characteristics of a product [which] are actionable.'"  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (citation omitted) (quoting Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990)); see also Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1005 (9th Cir. 2003) (citing Cook).  Plaintiffs' general explanations that anybody made aware of the Stalling Defect "would not have purchased the Class Vehicles or would have paid less for them" are also insufficient to help Defendants defend a specific advertisement against claims of False Advertising.  See SAC ¶ 87.

Given the potential that otherwise properly plead fraudulent omissions may relate to individuals who (per the complaint) were not actually exposed to the advertising and given also the lack of specificity describing the specific statements at issue, the Court GRANTS Defendants' motion to dismiss.[10]  However, the Court

_____

[10] Even so, the Court rejects arguments that there was no allegation of the timing of the purchase in relation to the exposure to the advertising claims or reliance.  See MTD Reply at

DISMISSES WITHOUT PREJUDICE and GRANTS Plaintiffs leave to amend in the belief that Plaintiffs can likely properly allege a violation in light of the Court's Order.[11]

### 4.  **Breach of Implied Warranty**

Defendants next argue that the maximum implied warranty is one year for new goods, three months for used goods.  In this much, the Court agrees.  Cal. Civ. Code §§ 1791(c), 1795.5(c).  Defendants then describe how the breach as alleged was discovered outside the period for three of the named plaintiffs and accordingly must be dismissed.  MTD at 18.  Plaintiffs respond that the breach is considered to have occurred at the time of sale and thus within the period <u>even if discovered after the period</u> if a defect rendered it unmerchantable at the time of sale.  MTD Opp'n at 22-23.  This argument relies primarily on <u>Mexia v. Rinker Boat Co.</u>, 174 Cal. App. 4th 1297, 1304-05 (2009), and its progeny.  Defendants argue that <u>Mexia</u> is a recognized outlier which the Court should decline to extend in this case.  MTD Reply at 11-12.

<u>Mexia</u> involved a boat that allegedly contained a latent defect which caused the boat's engine to corrode approximately two years after its purchase.  The plaintiff in Mexia was able to present evidence that the corrosion was due to said latent defect which resulted in the boat being unmerchantable at the time of sale.  Therefore, even though the defect could only be <u>discovered outside</u> the warranty period, the breach <u>occurred within</u> the period and was

---

11 (citing <u>Hydoxycut Mktg. & Sales Practices Litig v. Iovante Health Scis. Group, Inc.</u>, 801 F. Supp. 2d 993, 1006 (S.D. Cal. 2001)).  It seems clear from the pleadings read with all favorable inferences in favor of the Plaintiffs that named plaintiffs were exposed to advertisements shortly before their purchase and relied on those statements.
[11] The Court does not opine on the merits of any such allegation.

United States District Court
For the Northern District of California

thus a cognizable claim under Song-Beverly.  <u>Mexia</u>, 174 Cal. App. 4th at 1300, 1308.

Numerous courts have extensively examined <u>Mexia</u> and its applicability.  Some apply the rule of <u>Mexia</u>.  <u>See, e.g.</u>, <u>Malone v. CarMax Auto Superstores California, LLC</u>, No. LA CV14-08978 JAK, 2015 WL 3889157, at *7 (C.D. Cal. June 23, 2015) ("The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale**.**"); <u>Kas v. Mercedes-Benz USA, LLC</u>, No. CV 11-1032-GHK PJWX, 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011) (applying <u>Mexia</u> to holding that where "Plaintiff has alleged the Radiator Defect existed at the time Plaintiff purchased the vehicle" a claim made outside the one year statutory period is nonetheless adequately made and the motion to dismiss is appropriately denied).  Others decline to follow it.  <u>See, e.g.</u>, <u>Sharma v. BMW of N. Am., LLC</u>, No. C-13-2274 MMC, 2015 WL 75057, at *4-6 (N.D. Cal. Jan. 6, 2015) (opining that <u>Mexia</u> applies "where the goods are not fit for their ordinary purpose from the outset, but is inapplicable where the goods perform as warranted during the statutorily provided period and thereafter fail to continue to so perform." (citations omitted)); Reply at 12 n.17 (collecting cases).  Still others use <u>Mexia</u> in a discussion of the Uniform Commercial Code ("UCC").  <u>See</u> <u>MacDonald</u>, 37 F. Supp. 3d at 1099-100 (where coolant pumps were alleged to have an inherent defect at the time of sale, the latest each Plaintiff could have brought a claim was four years after the purchase, per <u>Mexia</u> and the UCC).

In navigating these murky waters, the Court is cognizant that for matters of California law, the Court takes its cue from the California Court of Appeal unless there is convincing evidence the

**United States District Court**
For the Northern District of California

California Supreme Court would rule differently (while also remaining bound by decisions from the Ninth Circuit). See California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1099 (9th Cir. 2003). Focusing on just these binding cases, recent courts have applied Mexia with little concern for the debate surrounding its applicability. See Ortega v. Toyota Motor Sales, U.S.A., Inc., 422 F. App'x 599, 600-01 (9th Cir. 2011) (applying Mexia but finding against plaintiff on summary judgment for failure to adequately support its claims that the defect was present in the used vehicle at the time of sale or within three months thereafter); Jones v. Credit Auto Ctr., Inc., 237 Cal. App. 4th Supp. 1, 9-10 (Cal. App. Dep't Super. Ct. 2015) (breach may occur at any time during the original statutory period, citing Mexia for the proposition that "the purchaser was required to show that the defect existed at the time the product was sold or delivered[,]" and therefore a breach occurring one month after a purchase was cognizable).[12]  Other cases suggest that the UCC sets a firm 4-year statute of limitation for bringing an action, but that the action must relate back to the limited period of the implied warranty (1-year or 3-months for new or used goods, respectively). Rooney v. Sierra Pac. Windows, 566 F. App'x 573, 576 (9th Cir. 2014) (citing Mexia for the proposition that "providing that an action for breach of warranty under the Song-Beverly, Civ. Code § 1790 et seq., has four-year statute of limitations").

---

[12] The facts of Jones involved a breach that was discovered within the three month statutory period, and thus Jones did not directly reach whether, under Mexia, a latent defect discovered later could be cognizable.  Jones merely cites Mexia approvingly for a rule, and applies the simple statutory deadline which yielded the same result without requiring that court to consider this debate.

United States District Court
For the Northern District of California

1    A California appellate court has outright followed <u>Mexia</u> in a

2    published opinion.  <u>Donlen v. Ford Motor Co.</u>, 217 Cal. App. 4th

3    138, 149 (2013), <u>as modified on denial of reh'g</u> (July 8, 2013)

4    ("Postwarranty repair evidence may be admitted on a case by case

5    basis where it is relevant to showing the vehicle was not repaired

6    to conform to the warranty during the warranty's existence.").

7    This is noteworthy insofar as <u>Donlen</u> was published a month <u>after</u>

8    all but one of the cases cited by Defendants.  That case (<u>Sharma</u>,

9    2015 WL 75057), in turn, does not appear to have involved a defect

10   already existing in the vehicle[13] and there is no indication that

11   the Court was provided with the <u>Donlen</u> opinion to assist in its

12   decision-making.[14]  When harmonized with <u>Donlen</u>, <u>Sharma</u> reinforces

13   _____

14   [13] <u>Sharma</u> involved a design defect that made certain drainage pipes

15   "prone to become clogged," evidencing non-defective parts that were
     likely to cause a malfunction happen in the future rather than a
     defective product installed from the get-go.  <u>Sharma</u>, 2015 WL

16   75057, at *2.  The facts before the Court are far more reminiscent
     of a case cited by <u>Mexia</u> and factually distinguished by <u>Sharma</u>,

17   namely <u>Moore v. Hubbard & Johnson Lumber Co.</u>, 149 Cal. App. 2d 236,
     308 P.2d 794 (1957).  In <u>Moore</u>, lumber was infested with beetles

18   making it unusable and unsalable from the date of sale, even
     though the defect was unknown at that time.  So too, here, the

19   Court is presented with a case where the car engine allegedly
     contains an unseen defect in its engine from the get-go, directly

20   relating to safety and a pre-existing broken part -- facts that
     <u>Sharma</u> lacks.

21   [14] <u>Sharma</u> relies on collected cases all dated before <u>Donlen</u> and
     does not appear to consider <u>Donlen</u> in arriving at its conclusion.

22   2015 WL 75057, at *4-6.  Moreover, the cases collected largely do
     not go to the types of safety concerns that make a good

23   unmerchantable.  The exception is <u>Grodzitsky v. American Honda
     Motor Co.</u>, 2013 WL 2631326 (C.D. Cal. June 12, 2013) (published one

24   month before <u>Donlen</u>).  <u>Grodzitsky</u>, in turn, analyzed <u>Mexia</u>, its
     underpinnings, and other pre-<u>Donlen</u> federal district court cases,

25   plus relied on two unpublished California appellate court
     decisions.  <u>Id.</u> at *10-11. In so doing, <u>Grodzitsky</u> expressly

26   recognized that "[a]lthough unpublished California cases have no
     precedential value, they may be considered 'as a possible

27   reflection of California law.'"  <u>Id.</u> at *11 n.12 (quoting <u>Roberts
     v. McAfee, Inc.</u>, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011)).  It is

28   unlikely a court would rely on such authority and ignore entirely a
     published California appellate case if it knew of <u>Donlen</u>.

1   the principle that a parts defect must exist at the time of sale or

2   come to exist during the statutory period, not merely possess a

3   potential to break down.  When so understood, the quotation by

4   Defendants from <u>Sharma</u> properly states that one can use evidence of

5   a latent defect causing a break-down under the rule of <u>Mexia</u> where:

> "[innately defective] goods are not fit for their
> ordinary purpose from the outset [even if they perform
> as warranted during that period], but [that same
> principle] is inapplicable where the [innately non-
> defective] goods perform as warranted [without
> breaking down] during the statutorily provided period
> and thereafter fail to continue to so perform [due to
> subsequent breakdown]."

11  <u>Sharma</u>, 2015 WL 75057, at *14-15.  The Court also notes that the

12  circumstances of the case here are analogous to those described in

13  <u>Marcus</u>, where a clear safety risk is alleged as the basis that the

14  vehicle was unmerchantable at the time of sale.  <u>See</u> <u>Marcus</u>, 2015

15  WL 1743381, at *6 (collecting cases deriving the referenced rule).

16  Accordingly, on these specific facts, the Court follows the <u>Mexia</u>

17  rule as limited by the UCC.

18  Here, then, the California claims were brought within 4 years

19  of the purchase of the vehicle, and evidence pleaded in the

20  complaint shows that the vehicles were unmerchantable at the time

21  of purchase due to an alleged latent safety defect which could not

22  reasonably have been discovered by Plaintiffs sooner (though

23  allegedly the defect was already known to Defendants) but were

24  already present within the vehicle's engine such that breaking down

25  was simply a matter of time.  <u>See, e.g.</u>, SAC ¶¶ 2-3, 8-10, 89, 92,

26  94-95.  Whether Plaintiffs can produce the evidence to meet their

27  burden on summary judgment is irrelevant at this procedural stage

28  where all allegations in the complaint are taken as true.  <u>C.f.</u>

United States District Court
For the Northern District of California

1  <u>Ortega</u>, 422 F. App'x at 601.  Therefore, the Court finds the claims

2  regarding breach of warranty are proper and DENIES Defendants'

3  motion.[15]

4          **5.   <u>Privity</u>**

5          Defendants next attack named plaintiff Mancuso's implied-

6  warranty claim under N.Y. U.C.C. § 2-314, arguing that she lacks

7  privity with Defendants by virtue of having made her purchase from

8  a third party dealership.  <u>See</u> SAC ¶ 35, MTD at 18-19.  Plaintiffs

9  respond that such privity exists "if the dealerships with which

10 plaintiffs dealt were defendant's sales or leasing agents, and

11 disclosure is needed with respect to the latter possibility."

12 <u>Gordon v. Ford Motor Co.</u>, 239 A.D.2d 156, 156 (N.Y. App. Div.

13 1997); <u>see also</u> MTD Opp'n at 23.  Plaintiffs respond that dealers

14 are not agents of manufacturers, properly citing <u>Herremans v. BMW</u>

15 <u>of N. Am., LLC</u>, 2014 U.S. Dist. LEXIS 145957, at *18 (C.D. Cal.

16 Oct. 3, 2014) (collecting cases to this effect); <u>see also</u> MTD Reply

17 at 12-13.  However, <u>Herremans</u> also states that "an automobile

18 dealership may under certain circumstances be an agent of the

19 manufacturer." <u>Herremans</u>, 2014 U.S. Dist. LEXIS 145957, at *18

20 (quoting <u>Kent v. Celozzi-Ettleson Chevrolet, Inc.</u>, No. 99 C-2868,

21 1999 WL 1021044, at *4 (N.D. Ill. Nov. 3, 1999)).  When considering

22 all these cases together, it appears that a showing (or, at this

23 stage, express pleading) would be required to show Star Hyundai in

24 Bayside, New York, was defendant's sales or leasing agent.  As that

25 is presently lacking in the complaint, the Court GRANTS Defendants'

26 ///

27 _____

28 [15] Defendants do not challenge and thus waive arguments related to
plaintiff Reniger, whose stalling began within a few months of
purchase, making the claim timely under any reading of <u>Mexia</u>.

1  motion and the claim is DISMISSED WITHOUT PREJUDICE.  Plaintiffs

2  are given leave to amend to fix this issue.

3       **6.  <u>Damages</u>**

4       Defendants bring their Article III standing arguments a second

5  time, here in the guise of requiring actual, cognizable damages

6  under Song-Beverly and Mag.-Moss.  MTD at 19.  Plaintiffs similarly

7  rely on their showings of damages in relation to Article III

8  standing.  MTD Opp'n at 23.  The reply fails to meaningfully

9  respond to a critical detail of Plaintiffs' argument:  "two of the

10 plaintiffs, Oren Jaffe and Julia Reniger, allege out-of-pocket

11 damages."  <u>Id.</u>, <u>contra</u> MTD Reply at 13.  Accordingly, the complaint

12 contains cognizable, actual damages even under Defendants' own

13 scheme.  The Court further notes that the Article III standing

14 arguments made by Defendant do not challenge Jaffe's allegations of

15 damages (as they fail to address Jaffe's standing), consequently

16 waiving any objections thereto for the purposes of this motion.

17 The Court therefore DENIES Defendants' motion and does not reach or

18 consider the issue of whether Plaintiffs' other measure of damages

19 would also constitute a sufficient claim for damages.

20      **7.  <u>Mag.-Moss Claims</u>**

21      The Court and all Parties agree "claims under the Magnuson-

22 Moss Act stand or fall with [the] express and implied warranty

23 claims under state law."  <u>Clemens v. DaimlerChrysler Corp.</u>, 534

24 F.3d 1017, 1022 (9th Cir. 2008); <u>see also</u> MTD Mot. at 20, MTD Reply

25 at 24.  The Court has found that California state warranty claims

26 are properly pled but New York state warranty claims failed for

27 lack of privity.  Accordingly, the Court DENIES Defendants' motion

28 with respect to Mag.-Moss claims related to the California claims

**United States District Court**
For the Northern District of California

but GRANTS Defendants' motion with respect to Mag.-Moss claims related to the New York claims.  As before, the claim is DISMISSED WITHOUT PREJUDICE, and as the Court has granted Plaintiffs leave to amend the underlying New York claim the Court by extension GRANTS leave to amend to support related Mag.-Moss claims.

### 8.   <u>Deference to NHTSA's Jurisdiction</u>

The Court and all Parties agree that this case is bound by <u>Clark v. Time Warner Cable</u>, 523 F.3d 1110, 1115 (9th Cir. 2008).  There, the Ninth Circuit explains that

> [a]lthough "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," <u>Davel Commc'ns, Inc. v. Qwest Corp.</u>, 460 F.3d 1075, 1086 (9th Cir. 2006) (internal quotation marks and citation omitted), we have traditionally examined the factors set forth in <u>General Dynamics</u>, and held that the doctrine applies in cases where there is: "(1)[a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration," [citations omitted].  In considering these factors, we have previously explained that the primary jurisdiction doctrine is designed to protect agencies possessing "quasi-legislative powers" and that are "actively involved in the administration of regulatory statutes." [citations omitted].

<u>Clark</u>, 523 F.3d at 1115.[16]  Defendants argue that these factors support a finding that the NHTSA should be granted primary jurisdiction for the recall and automobile safety concerns that are an important part of this case.  The Court disagrees, and finds that the four factors, on balance, favor denial at this time.

---

[16] Parties also cite the Court to the persuasive but non-binding case <u>McQueen v. BMW of N. Am., LLC</u>, No. CIV.A. 12-6674 SRC, 2013 WL 4607353, at *4 (D.N.J. Aug. 29, 2013).  The test in the case is notably different thus limiting its applicability.  That said, <u>McQueen</u> is a good example of how Courts can reasonably decline to accept primary jurisdiction arguments like many made by Defendants.

**United States District Court**
For the Northern District of California

The first factor favors resolution by the Court, as the Court is better able to handle a products defect case involving numerous allegations of warranty violations.  Defendants argue that the non-action of the NHTSA after being notified "<u>is</u> an exercise of its jurisdiction."  MTD Reply at 14 (emphasis in original).  While the Court recognizes that Defendants' argument is made in a slightly different context, if accepted it shows NHTSA would provide no resolution, and thus referring this case to them runs contrary to a need for resolution.

The second factor and third factor both require note that Congress has placed some of this case within the reach of a Federal agency, but by no means all or even the bulk thereof.  The framework for the NHTSA is set forth in the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act").  49 U.S.C. § 30101, et seq.  Section 30103 of the Safety Act, as cited by Plaintiffs, limits the jurisdiction of the NHTSA to exclude warranty laws (Subsection d) and common law liability (Subsection e).  If anything, the Court might consider referral with respect to remedies if Plaintiffs prevail at trial or via pre-trial dispositive motions and the Court finds a recall the only appropriate remedy.  <u>C.f.</u> MTD Opp'n at 25.  But it would seem odd indeed to refer the entire case to an agency for resolution knowing that the agency could legally only consider a specific claim for relief included as merely one facet of the case.  <u>See</u> <u>Tovar v. Midland Credit Mgmt.</u>, No. 10CV2600 MMA MDD, 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011) (noting <u>Clark</u> is distinguishable where the issues before the agency are different than those before the

///

32

**United States District Court**
For the Northern District of California

1  court).[17]  Thus the Court concludes that these two factors on

2  balance favor resolution by the Court.

3      The fourth factor requires expertise and consistency.  The

4  Court does possess expertise from many years of experience with

5  product (and vehicle) defect cases, but admits it possesses far

6  less expertise than an Agency which focuses on such matters

7  exclusively.  Even so, the Court does not see this case as one

8  which presents such complex issues that it is comparable to the

9  expertise required in Clark.  See Clark, 523 F.3d at 1112-14

10 (evaluating Voice over Internet Protocol technology, a topic

11 already being actively regulated by the FCC).  Other Courts have

12 declined to find primary jurisdiction necessary for similar

13 reasons.  See Guido v. L'Oreal, USA, Inc., No. CV 11-1067 CAS JCX,

14 2013 WL 454861, at *6 (C.D. Cal. Feb. 6, 2013) (noting Clark

15 applied to technical and policy questions).  The Court sees little

16 or no danger to uniformity where a suit is brought as (what the

17 Court anticipates will be) a broadly styled putative class action

18 meant to capture many drivers of a certain vehicle during a certain

19 timeframe.  There is no pending investigation and no reason to

20 believe that the NHTSA has any interest in this case, whereas the

21 Court has already invested valuable judicial resources in

22 considering this and related motion arguments, and will ultimately

23 be required to turn its attention back to this case (should it

24 refer the case to NHTSA) to consider the warranty claims herein

25 with a uniform decision.

26 ///

27 ───────────────

28 [17] Insofar as Defendants attempt to restyle their arguments to make
this type of narrow request, MTD Reply at 13-14, the Court DENIES
the request as not yet ripe.

United States District Court
For the Northern District of California

1    Accordingly, the factors on balance and judicial economy weigh

2    in favor of denying Defendants' arguments for primary jurisdiction.

3    Defendants' motion is therefore DENIED on this matter.

4         **C.   12(f) Motion**

5         Finally, the Court turns to the motion to strike.  Motions to

6    strike "are not favored and should not be granted unless it is

7    clear that the matter to be stricken could have no possible bearing

8    on the subject matter of the litigation."  Astiana v. Ben & Jerry's

9    Homemade, Inc., 2011 U.S. Dist. LEXIS 57348, at *34-35 (N.D. Cal.

10   2011) (citing Colaprico v. Sun Microsystem, Inc., 758 F. Supp.

11   1335, 1339 (N.D. Cal. 1991)).  When a court considers a motion to

12   strike, it "must view the pleading in a light most favorable to the

13   pleading party."  Id. 2011 U.S. Dist. LEXIS 57348, at *35 (citing

14   In re 2TheMart.com, Inc. Sec Lit., 114 F. Supp. 2d 955, 965 (C.D.

15   Cal. 2000)).  The motion to strike should be denied "if there is

16   any doubt whether the allegations in the pleadings might be

17   relevant in the action."  Id.; see also 2-12 Moore's Federal

18   Practice - Civil § 12.37.

19        Defendants seek to strike the class allegations made by

20   Plaintiffs using Fed. R. Civ. P. 12(f) and 23(d)(1)(D).  In support

21   of their motion, Defendants expressly cite Ogola v. Chevron Corp.,

22   2014 U.S. Dist. LEXIS 117397, at *6, *19 (N.D. Cal. Aug. 21,

23   2014)(Conti, J.).  See Mot. to Strike Reply at 1, 2.  Contrary to

24   Defendants' use or summation thereof, Ogola makes very clear that

25   the Court is not inclined to grant motions to strike under Fed. R.

26   Civ. P. 12(f) or 23(d)(1)(D).  See Ogola, 2014 U.S. Dist. LEXIS

27   117397, at *19.  If Ogola was insufficiently clear, the Court has

28   since published a second order on point, describing how authorities

**United States District Court**
For the Northern District of California

1    within this judicial district split on this matter and siding

2    firmly with the authority which does not grant motions to strike at

3    this early, motion to dismiss stage of litigation absent

4    exceptional circumstances.  See Roy v. Wells Fargo Bank, N.A., 2015

5    U.S. Dist. LEXIS 39636, at *5 (N.D. Cal. Mar. 27, 2015) ("Both the

6    text of Rule 12(f) and Ninth Circuit precedent agree that a court

7    may strike from a pleading only an insufficient defense or any

8    redundant, immaterial, impertinent, or scandalous matter.").

9        Here, class allegations in Plaintiffs' complaint relating to

10   Hyundai are not an insufficient defense, redundant, immaterial,

11   impertinent, or scandalous.  Defendants have not shown how the

12   pleading fits into the limited categories permitted by Rule 12(f)

13   (or, by extension, 23(d)(1)(D)), or any exceptional circumstance

14   meriting the action requested of the Court.

15       Defendants do make such arguments with respect to the

16   complaint's discussion of Kia.  However, even assuming Plaintiffs

17   really are trying to bootstrap a second lawsuit into this one (a

18   matter on which the Court does not opine), the complaint connects

19   the Plaintiffs' concerns about Kia directly to their own case by

20   alleging that, "[o]n information and belief, because of their close

21   relationship with Kia and the overlap between their products,

22   Defendants monitor and are aware of issues arising with Kia

23   vehicles, including the Sorento."  Compl. ¶ 29.  Whether this

24   monitoring and knowledge of problems with a sister vehicle will

25   ultimately show "Defendants' knowledge of the Stalling Defect in

26   the Santa Fe, and the inadequacy of Defendants' purported fix" is a

27   matter for a different type of motion or a trier of fact.  However,

28   it is directly relevant to allegations of fraud and if otherwise

admissible (another matter the Court does not reach) could be used to prove intent.  As there is "any doubt whether the allegations in the pleadings might be relevant in the action[,]" Defendants have not met their burden.  See Astiana, 2011 U.S. Dist. LEXIS 57348, at *35.

Accordingly, the Court DENIES the motion to strike.  The Court also DENIES as moot Defendants' request for judicial notice in support of its motion to strike and Plaintiffs' objection thereto. ECF Nos. 32, 38.  The Court GRANTS LEAVE for Plaintiffs to amend the complaint to fix the issues noted in Mot. to Strike Opp'n at 8.

**V.   CONCLUSION**

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendants' motion is DENIED with respect to: lack of standing; that HMC should be dismissed from the case for lack of any transaction, that UCL, CLRA, and fraud should be dismissed for assorted reasons; that certain named plaintiffs fail to allege a breach of implied warranty within the warranty period; that Song-Beverly and Mag.-Moss claims required damages; that California Mag.-Moss claims were improperly pleaded; and that the Court should defer to primary jurisdiction.  Defendants' motion is GRANTED with respect to: FAL claims failing to identify an advertisement; that New York implied warranty claims fail for lack of privity; and that Mag.-Moss related to the New York claims also failed.  Plaintiffs are GRANTED LEAVE TO AMEND those portions which the Court has dismissed.  While the Court has GRANTED LEAVE to amend the complaint several times in this Order, the Court hereby notices Plaintiffs that leave to amend yet again may be granted far more

**United States District Court**
For the Northern District of California

1  sparingly, and failure to properly state a claim already considered

2  by this opinion may result in dismissal of that claim with

3  prejudice.

4      Defendants' motion to strike is also DENIED.  The Court GRANTS

5  LEAVE for Plaintiffs to amend the complaint to fix those issues for

6  which dismissal was granted and to cure the defect Plaintiffs noted

7  in Mot. to Strike Opp'n at 8.

8      Should Plaintiffs desire to amend their complaint, they must

9  do so within 14 days of the date of this order.  In doing so,

10 Plaintiffs should be cognizant whether amending may create any

11 statute of limitations defenses.

12

13     IT IS SO ORDERED.

14

15 Dated: August 18, 2015

16                                   UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California