GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Mark S. Greenstone (#199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA RENIGER, GREG BATTAGLIA,  OREN JAFFE, LUCIA SAITTA and ANN MANCUSO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation, and HYUNDAI MOTOR COMPANY, a foreign corporation,<br><br>Defendants. | Case No.  3:14-cv-03612-CW<br><br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: August 2, 2016<br>TIME:  2:30 p.m.<br>PLACE:  Oakland Courthouse, Courtroom 2<br>JUDGE:  Hon. Claudia Wilken |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................ - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... - 2 -

I.    INTRODUCTION ...................................................................................... - 2 -

II.   PROCEDURAL & FACTUAL SUMMARY ........................................... - 3 -

III.  TERMS OF PROPOSED SETTLEMENT .............................................. - 6 -

      A.    Reimbursement Program for Out-of-Pocket Costs ...................... - 6 -

      B.    10 Year Campaign 929A Software Update Guarantee ................ - 7 -

      C.    New Vehicle Purchase / Lease Incentive Program & Enhanced Rebate
            Program ........................................................................................ - 7 -

      D.    Dissemination of Notice to the Settlement Class ........................ - 8 -

      E.    Service Award and Attorneys' Fees and Costs ........................... - 9 -

      F.    Release Provisions ..................................................................... - 10 -

IV.   CLASS CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE - 10 -

      A.    The Class Satisfies the Numerosity Requirement ..................... - 11 -

      B.    The Class Satisfies the Commonality Requirement ................... - 11 -

      C.    Plaintiffs Meet the Typicality Requirement .............................. - 12 -

      D.    Plaintiffs Satisfy the Adequacy Requirement ........................... - 12 -

      E.    Plaintiffs and Class Members Are Ascertainable ..................... - 13 -

      F.    The Class Satisfies the Criteria of Rule 23(b) .......................... - 14 -

            1.    Common Questions Predominate ..................................... - 14 -

            2.    A Class Action Is the Superior Method for the Fair and Efficient
                  Adjudication of This Controversy ................................... - 16 -

a. The Individual Class Members' Interest in Controlling the Litigation ................................................................................ - 16 -

b. Extent and Nature of Litigation Already Commenced by Class Members ............................................................................ - 16 -

c. The Desirability of Concentrating the Litigation In a Particular Forum .................................................................................. - 17 -

d. This Case is Manageable As a Class Action ................................... - 17 -

V. PRELIMINARY APPROVAL IS APPROPRIATE ................................................ - 18 -

A. The Settlement Approval Process ................................................................ - 18 -

B. The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval ...................................................... - 19 -

1. The Settlement Negotiations Were at Arm's Length ............................ - 20 -

2. Plaintiffs' Counsel Had Adequate Discovery to Make an Informed Judgment on the Merits of the Claims .................................................. - 20 -

3. Plaintiffs' Counsel, Who Are Highly Experienced in Consumer Fraud Cases and Class Action Procedure, Believe the Settlement is Fair, Reasonable, and Adequate ................................................................... - 21 -

4. The Reaction to the Proposed Settlement ............................................ - 22 -

VI. NOTICE ................................................................................................................... - 22 -

VII. PROPOSED SCHEDULE ....................................................................................... - 23 -

VIII. CONCLUSION ........................................................................................................ - 24 -

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Ackerman v. Coca-Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013)............................................ - 15 -

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..................................................................- 15 -, - 17 -

*Amgen Inc. v. Conn. Retirement Plans & Trusts Funds*,
  133 S. Ct. 1184 (2013) ................................................................ - 14 -

*Arnold v. FitFlop USA, LLC*,
  2014 U.S. Dist. LEXIS 58800 (S.D. Cal. Apr. 28, 2014) .............................. - 17 -

*Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)........................................................- 10 -, - 18 -

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
  917 F.2d 1171 (9th Cir. 1990).......................................................... - 12 -

*Churchill Village, L.L.C. v. General Electric Co.*, 361 F.3d 566 (9th Cir. 2004) ......................................................... - 10 -

*Covillo v. Specialtys Café*,
  2013 WL 5781574 (N.D. Cal. 2013)..................................................... - 23 -

*Deitz v. Comcast Corp.*,
  No. C 06–06352(WHA), 2007 WL 2015440 (N.D.Cal. July 11, 2007) ...................... - 13 -

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  133 S. Ct. 2179 (2011)................................................................ - 15 -

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................- 12 -, - 13 -, - 15 -

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ....................................................... - 17 -

*Kent v. Hewlett-Packard Co.*,
  2011 U.S. Dist. LEXIS 106831 (N.D. Cal. Sept. 20, 2011) ............................ - 17 -

*Lamumba Corp. v. City of Oakland*,
  2007 WL 3245282 (N.D. Cal. November 2, 2007) ....................................... - 13 -

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................................... - 16 -

*Manner v. Gucci America, Inc.*,
    2016 WL 1045961 (S.D. Cal. 2016) ....................................................................... - 23 -

*Miller v. Ghirardelli Chocolate Co.*,
    2015 U.S. Dist. LEXIS 20725 (N.D. Cal. Feb. 20, 2015) ........................................ - 17 -

*Moshogiannis v. Security Consultants Group, Inc.*,
    2012 WL 423860 (N.D.Cal. Feb. 8, 2012) .............................................................. - 15 -

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950) ................................................................................................. - 22 -

*Negrete v. Allianz Life Ins. Co. of North America*,
    238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................ - 17 -

*Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................. - 19 -

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................ - 16 -

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................- 10 -, - 11 -

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) ................................................................................ - 15 -

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .................................................................................. - 14 -

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................................ - 11 -

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) .................................................................................. - 14 -

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008) .................................................................................. - 15 -

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................ - 16 -

*Wolph v. Acer Am. Corp.*,
   No. 09–1314, 2012 WL 993531 (N.D.Cal. Mar. 23, 2012) ........................................... - 13 -

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ................................................................................... - 15 -

*Young v. Polo Retail*,
   2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................................ - 19 -

<u>STATUTES</u>

15 U.S.C. § 2301 .......................................................................................................... - 3 -

Cal. Bus. & Prof. Code §§ 17200 ................................................................................ - 3 -

Cal. Civ. Code §§ 1750 ................................................................................................ - 3 -

Cal. Civ. Code §§ 1792 and 1791.1 ............................................................................. - 3 -

N.Y. Gen. Bus. L. § 349 ............................................................................................... - 4 -

N.Y. Gen. Bus. L. § 350 ............................................................................................... - 4 -

N.Y. U.C.C. § 2-314 ..................................................................................................... - 4 -

<u>RULES</u>

Fed. R. Civ. P. 23(b)(3) ..........................................................................................*passim*

<u>OTHER AUTHORITIES</u>

CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS
   § 11.41 (4th ed. 2002) ............................................................... - 18 -, - 19 -, - 20 -

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION §§ 21.632-.635
   (4th ed. 2004).................................................................................- 18 -, - 19 -

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on August 2, 2016 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, Plaintiffs will, and hereby do, move the Court for an Order Granting Preliminary Approval of Class Action Settlement. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Mark S. Greenstone, [Proposed] Order, and all pleadings and other documents on file in this action, and such other matters as may be presented at or in connection with the hearing.

DATED:  June 21, 2016

GLANCY PRONGAY & MURRAY LLP


By:  *s/ Mark S. Greenstone*
Lionel Z. Glancy
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Julia Reniger, Greg Battaglia, Lucia Saitta and Ann Mancuso ("Plaintiffs")[1], on behalf of themselves and the proposed Settlement Class Members they seek to represent, hereby move for preliminary approval of the Class Action Settlement Agreement and Release ("Settlement" or "Agreement")[2] they reached with Defendants Hyundai Motor America and Hyundai Motor Company (together "Defendants" or "Hyundai").

On August 8, 2014, Plaintiffs filed this proposed class action lawsuit (the "Action") alleging that Defendants committed unfair and deceptive business practices by failing to disclose and concealing material information about the unexpected stalling of Hyundai Santa Fe model year 2010-2012 vehicles ("Stalling Defect").  Plaintiffs alleged that the Stalling Defect results in total loss of power, including braking and steering, has been documented to occur under a multitude of driving conditions, and poses a grave safety risk to drivers, passengers and pedestrians. Defendants have consistently denied that the subject vehicles are defective or that any alleged stalling concern poses a safety risk, that they did anything wrong or unlawful, or that Plaintiffs' claims may be asserted on a class wide basis.

On August 18, 2015, the Court issued an order granting in part and denying in part Defendants' motions to dismiss and to strike, which sustained the bulk of Plaintiffs' claims. Plaintiffs then filed their Third Amended Complaint ("TAC") which Defendants answered.

---

[1] Plaintiff Oren Jaffe is not a Settlement Class Member due to his vehicle model and is in the process of settling his claims on an individual basis.

[2] Unless otherwise stated, capitalized terms have the same meaning as in the Agreement, attached as Exhibit A to the Declaration of Mark S. Greenstone ("Greenstone Decl.").

Thereafter, the parties exchanged written discovery and participated in a full-day mediation before the Hon. Edward Infante and, after several months of post-mediation follow-up caucuses with Judge Infante, ultimately reached the settlement embodied in the Agreement. The Settlement was negotiated by lawyers with significant experience in class action procedure and provides substantial benefits for approximately 77,331 Settlement Class Members including: a reimbursement program for out-of-pocket expenses; a guarantee by Defendants to continue to make available free-of-charge for ten (10) years a Service Campaign for the Stalling Defect which was expanded during the pendency of the litigation to the entire Settlement Class and which has reduced the incidence of stalling complaints by over ninety-eight percent; and, a new vehicle incentive program for those who wish to replace their vehicle notwithstanding the availability of the Service Campaign.  Accordingly, the proposed Settlement merits preliminary approval.  Plaintiffs, therefore, respectfully request that the Court grant this motion.

## II.   <u>PROCEDURAL & FACTUAL SUMMARY</u>

Plaintiffs Julia Reniger and Greg Battaglia filed the initial Complaint on August 8, 2014 alleging causes of action for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("Mag-Moss"), and for breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.* ("Song Beverly"). Dkt. 1, ¶¶ 61-109.

Defendants filed a motion to dismiss on October 6, 2014 arguing that Plaintiffs' claims were moot in light of a voluntary Service Campaign (the "929 Campaign") launched shortly before the initial Complaint was filed, and which Defendants contended resolved the Stalling

Defect.  The 929 Campaign offered an engine control module ("ECM") upgrade limited to approximately 44,281 of the 77,331 putative Class Vehicles that had a particular brand of alternator as original equipment.  Greenstone Decl., ¶4.

In response to Defendants' motion to dismiss, Plaintiffs filed a First Amended Complaint on October 27, 2014 (Dkt. 17) and a  Second Amended Complaint ("SAC")  on November 24, 2014.  Dkt. 21.  Plaintiffs' SAC added Lucia Saitta and Ann Mancuso as plaintiffs; alleged supplemental facts concerning the inadequacy of the 929 Campaign; asserted additional claims for violation of New York Deceptive Practice Act (N.Y. Gen. Bus. L. § 349, *et seq.*), violation of the New York False Advertising Law (N.Y. Gen. Bus. L. § 350, *et seq.*), breach of implied warranty pursuant to New York Uniform Commercial Code (N.Y. U.C.C. § 2-314), and common law fraud; and alleged a New York Sub-Class. Dkt. 21.  Plaintiffs' SAC was based upon an extensive investigation of counsel that included, *inter alia*, interviews of hundreds of putative class members.  Greenstone Decl., ¶8.

In April 2015, Defendants initiated the 929A Campaign which extended the 929 Campaign ECM upgrade to the remaining 33,050 vehicles in the putative 77,331 vehicle class not covered under the original 929A Campaign.[3]  Greenstone Decl., 5.  The 929A Campaign also added additional software updates that Defendants contend are unrelated to the Stalling Defect and that provided for a software-based cleaning of the electronic throttle control. Analysis of Hyundai's warranty claims database performed by Gregory Webster, Hyundai's

---

[3] It is Defendants' contention that the extension of the 929 Campaign ECM update was contemplated earlier.  Specifically, in December 2014, Hyundai Motor America ("HMA") prepared a service bulletin bearing the title Service Campaign TV5.  Defendants contend this was intended to make the 929 Campaign ECM update available to the remaining 33,050 vehicles in the putative 77,331 vehicle class, but that before a consumer notice was sent on TV5, HMA decided to merge it with the 929 Campaign into a single campaign that was formally launched with consumer notice in April 2015 as Campaign 929A.

Senior Group Manager, Design and Engineering Analysis, revealed that prior to the 929A Campaign there was an average of 70 stall complaints per month; since the 929A Campaign was launched (April 2015), the complaint rate nationwide was just 0.9 complaints per month. *Id*., ¶5 and Exh. B.  Thus, Hyundai contends that the 929A Campaign eliminates any ongoing stalling concerns.

On August 18, 2015, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Motion to Strike in which it upheld all of Plaintiffs' claims with the exception of Plaintiffs' California and New York False Advertising Law ("FAL") claims, as well as Plaintiffs' New York implied warranty claim and derivative Mag-Moss claim.  Dkt. 53.  Plaintiffs filed the TAC dropping the FAL claims and re-alleging the New York implied warranty claim and the derivative Mag-Moss claim. Dkt. 54.  Defendants filed answers to the TAC on September 15, 2015. Dkt. 55 & 56.

Thereafter, the parties agreed to mediate with retired federal Magistrate Judge Edward Infante and prepared detailed mediation statements. Prior to the mediation, the parties agreed to an exchange of information (in addition to that obtained through formal discovery) to help inform the parties at mediation.  Greenstone Decl., ¶6.  On December 15, 2015, the parties attended a full-day mediation before Judge Infante in San Francisco.  Although the parties were unable to reach a resolution, they continued to engage in settlement negotiations for approximately three months with the assistance of Judge Infante and were able to reach an agreement in principle as to all facets of a nation-wide settlement.  *Id*.  The parties filed a Stipulation with Proposed Order to Vacate Case Management Conference in Light of Settlement in Principle on March 29, 2016 (Dkt. 67), which the Court granted on April 4, 2016. Dkt. 68.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     TERMS OF PROPOSED SETTLEMENT

### A.     Reimbursement Program for Out-of-Pocket Costs

Under the terms of the Agreement, Defendants will reimburse, on a claims-made basis, reasonable and documented Out-of-Pocket Costs associated with a "929A Condition"[4] subject to, where applicable, the Maximum Reimbursement Amount, incurred by the Class defined as: all residents[5] of the United States and the District of Columbia (excluding U.S. territories), who currently own or lease, or previously owned or leased a Class Vehicle[6] that was originally purchased or leased in the United States. Agreement, ¶¶ I.9; III.A. Class Members eligible to

---

[4] "929A Condition" is a documented stall in a Class Vehicle that does not generate a diagnostic trouble code ("DTC"). Specifically, some vehicle stalls generate a code that is stored in the vehicle's on-board computer system and that dealers often note in the repair order. A 929A Condition stall is a stall that does ***not*** generate such a code. If a repair order does ***not*** identify a particular code or cause for the stall, it will be considered a 929A Condition stall.

[5] Excluded from the Class are (1) Hyundai Motor America, its subsidiaries and affiliates, officers, directors and employees; (2) Insurers of the Class Vehicles; (3) All persons or entities claiming to be subrogated to the rights of Class Members; (4) Issuers or providers of extended vehicle warranties or providers of extended service contracts; (5) Individuals and/or entities who validly and timely opt-out of the Settlement; (6) Consumers or businesses that have purchased Class Vehicles deemed a total loss (i.e. salvage) (subject to verification through Carfax or other means); (7) Current and former owners of a Class Vehicle that previously have released their claims against Hyundai Motor America with respect to the issues raised in the Litigation; (8) Individuals or entities that have purchased and/or leased Class Vehicles as "fleet" vehicles (i.e. rentals or company vehicles); (9) Any judge to whom this matter is or may be assigned, and his or her immediate family (spouse, domestic partner, or children).

[6] "Class Vehicles" are 2010 through 2012 model year Hyundai Santa Fe Vehicles with 3.5L engines. Agreement, ¶ I.15. This is a subset of the class alleged in the TAC, which is defined therein as all persons who purchased or leased any 2010 through 2012 Hyundai Santa Fe vehicle, and which includes vehicles with both six cylinder 3.5L engines, and four cylinder 2.4L engines. Plaintiffs will file a further amended complaint prior to the hearing on this Motion to align the class alleged with the Settlement Class.

make a Claim are those who experienced a stall associated with the "929A Condition" up to mailing date of the Class Notice.

**B.      10 Year Campaign 929A Software Update Guarantee**

Hyundai agrees that the Campaign 929A Software Update (or its functional equivalent) will remain available free-of-charge for 10 years after the date the Class Vehicles were first put into circulation as "new" vehicles.  Agreement, ¶ III.D.  As noted above, analysis of Hyundai's warranty claims database revealed that prior to the 929A Campaign there was  an average of 70 stall complaints per month; since the 929A Campaign was launched (April 2015), the complaint rate nationwide was just 0.9 complaints per month.  Greenstone Decl., ¶5. Exh. B.

**C.      New Vehicle Purchase / Lease Incentive Program & Enhanced Rebate Program**

Notwithstanding the availability of reimbursement for out-of-pocket expenses and the 929A Campaign, the Agreement also provides a special cash incentive for Class Members who nonetheless wish to replace their Class Vehicles.  The New Vehicle Purchase/Lease Incentive Program provides Class Members who have experienced one documented 929A Condition stall a rebate of $250 to $1,000 on the purchase or lease of a new Hyundai vehicle, depending upon the specific new vehicle purchased or leased.[7]  Agreement, ¶ III.B.  The Enhanced Rebate Program doubles this incentive, providing a rebate of $500 to $2,000 (again, depending upon the new Hyundai vehicle purchased or leased) for those who have experienced at least two 929A Condition stalls, with at least one occurring after the Class Vehicle received the 929A

---

[7] Rebate Certificate values  are as follows: Tier 1 ($250) – Hyundai Accent; Tier 2 ($400) - Hyundai Elantra, Elantra GT, Veloster, Sonata (non-hybrid); Tier 3 ($600) - Hyundai Tucson, Santa Fe, Sonata Hybrid/Plug-in Hybrid, Genesis Coupe (or its functional equivalent at the time of purchase); Tier 4 ($750) - Hyundai Azera, Genesis Sedan (or its functional equivalent at the time of purchase); Tier 5 ($1,000) - Equus (or its functional equivalent at the time of purchase).  Agreement, ¶ III.B.

Service Campaign software update.[8]  *Id.*, ¶ III.C.  Hyundai has the right to contest the Class Member's claim for an Enhanced Rebate Certificate if there is evidence in the submitted documentation, Hyundai's records, or through third party records to suggest that the claimed 929A Condition stall that post-dates the installation of the Campaign 929A Software Update on the Class Vehicle was the result of the improper or incomplete installation of the Campaign 929A Software Update.  *Id.*  Thus, rebate certificates can be claimed through a simple claim process with minimal documentary proof requirements.

Rebate Certificates and Enhanced Rebate Certificates can be redeemed by sending proof of a new Hyundai vehicle purchase or lease within one year of the Rebate Certificate's issuance. Agreement, ¶¶ III.B, C.  Because the Certificates are paid by Hyundai, and because any particular Class Member's possession of a Certificate will be unknown to the dealer, there is no danger of the Certificate's value being factored into the vehicle price offered by the dealer (*i.e.*, of the dealer offsetting the value of the certificate during price negotiations).  Moreover, any additional dealer or customer incentives that otherwise would be available to the Class Member at the time of the new vehicle purchase or lease will remain available notwithstanding availability of the Rebate Certificate or Enhanced Rebate Certificate.  *Id.*

### D.  Dissemination of Notice to the Settlement Class

A Mailed Notice will be sent to Class Members within one hundred twenty (120) days after the Court issues a Preliminary Approval Order. Class Members will be located through Hyundai's internal records, and through the use of R.L. Polk & Company (or like service),

---

[8] Enhanced Rebate Certificate values are as follows: Tier 1 ($500) – Hyundai Accent; Tier 2 ($800) - Hyundai Elantra, Elantra GT, Veloster, Sonata (non-hybrid); Tier 3 ($1,200) - Hyundai Tucson, Santa Fe, Sonata Hybrid/Plug-in Hybrid, Genesis Coupe (or its functional equivalent at the time of purchase); Tier 4 ($1,500) - Hyundai Azera, Genesis Sedan (or its functional equivalent at the time of purchase); Tier 5 ($2,000) - Equus (or its functional equivalent at the time of purchase).  Agreement, ¶ III.C.

which will work with state DMVs to locate the last known name and contact information for any and all owners and/or lessees of any Class Vehicles.[9]  Agreement, ¶ IV.A.  If any Class Notice is returned as undeliverable, the Claims Administrator will make reasonable efforts to review its records for any superior mailing address and resend them.[10]  *Id*.

The Class Notice will direct Class Members to the settlement website where more detailed information about the settlement is available. The website will be designed with the capability to permit Class Members to file a Claim Form online or print the Claim Form so it may be submitted by mail. Agreement, ¶ IV.D.  Hyundai will also establish an 800 toll-free number to address questions from class members.  *Id*.

Defendants' Counsel will provide notice of the Agreement and provide copies of other documents to governmental entities or agencies as required by the Class Action Fairness Act ("CAFA").  Agreement, ¶ IV.B.

### E.    Service Award and Attorneys' Fees and Costs

Plaintiffs' Counsel will apply for a service award for each of the Class Representatives in an amount not to exceed $2,500.00, which Defendants do not oppose. Agreement ¶ I.39. Plaintiffs' Counsel believe the award is appropriate and recognize the Class Representatives efforts during the action that resulted in the Settlement, including retaining counsel, reviewing and authorizing the filing of the complaint, responding to informational requests, reviewing the proposed Settlement, and keeping abreast of the litigation.

---

[9] The parties have agreed to a 120 day period due in part to the time that it takes to obtain information from state DMVs.

[10] The parties have agreed that Defendant HMA will act as Claims Administrator with vendor assistance as appropriate.  Agreement, ¶ V.A..

For the past two years, Class Counsel, Glancy Prongay & Murray LLP, have worked on a purely contingent basis. Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees and expenses in an amount not to exceed seven hundred forty five thousand dollars ($745,000). Agreement ¶, I.11. The Class Counsel's Fees and Expenses Award will be paid separately by Defendants. *Id.* at ¶ IX.A.

### F.    Release Provisions

If the Court grants final approval of the proposed Settlement, Class Members will be deemed to have released Defendants and Released Parties of all claims that were asserted or could have reasonably been asserted in this Action and that relate to the 929A Condition. Agreement, ¶ VIII.A.  Claims for personal injury, property damage, or claims for subrogation are not released. *Id.* at ¶VIII.B.

## IV.    CLASS CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In the Ninth Circuit, "there is an overriding public interest in settling and quieting litigation … particularly … in class action suits." *Von Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Electric Co.*, 361 F.3d 566, 576 (9th Cir. 2004). As a matter of sound policy, courts recognize that settlements of disputed claims are encouraged and a settlement approval hearing should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (citation omitted).

Here, the Class is defined as: all residents of the United States and the District of Columbia (excluding U.S. territories), who currently own or lease, or previously owned or

leased, a Class Vehicle that was originally purchased or leased in the United States. *See* Agreement, ¶1.9.

The Settlement sets forth an identifiable class. Because it meets all the requirements of Rule 23 for a settlement class, as explained below, it should be certified for settlement purposes.

### A.    The Class Satisfies the Numerosity Requirement

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." *Id.* Numerorsity is undisputed. Based on Plaintiffs' investigation and Defendants' representations, approximately 77,331 Class Vehicles were sold or leased nationwide. Although Plaintiffs do not know the precise number of Class Members, the approximate number of Class Vehicles sold or leased nationwide supports numerosity and Class Members are readily ascertainable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

### B.    The Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." *Id.* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the class members' claims "must depend on a common contention…of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This requirement is also satisfied.

Plaintiffs contend that the commonality requirement is met for the Settlement Class because the claims of all Settlement Class Members arise from the same contention, namely,

that Defendants failed to disclose and concealed the defective nature of the Class Vehicles. Thus, the determination of whether the Defendants were aware of and intentionally concealed the Stalling Defect will resolve a central issue on a class-wide basis in "one stroke."

**C.     Plaintiffs Meet the Typicality Requirement**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." This requirement is also satisfied.

Courts consistently find that the typicality requirement is met if the claims arise from a common course of conduct. Typicality does not require the claims to be substantially identical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Rather, the Ninth Circuit has found typicality if the requisite claims "'share a common issue of law or fact'…and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted), *amended*, 937 F.2d 465 (9th Cir. 1991).

Plaintiffs, like other Class Members, purchased or leased a Class Vehicle designed, manufactured, and/or distributed by Defendants and subject to the Stalling Defect. Because Plaintiffs are members of the proposed Class, and assert consumer fraud claims on behalf of themselves and all absent Class Members based upon Defendants' uniform misconduct, their claims are typical of the Class.

**D.     Plaintiffs Satisfy the Adequacy Requirement**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiff and their counsel have any conflicts of interest with other class members, and

1    (2) will the name plaintiff and their counsel prosecute the action vigorously on behalf of the

2    class?" *Hanlon*, 150 F.3d at 1020.

3         There are no conflicts of interest alleged or that could possibly exist here. Plaintiffs seek

4    the exact same remedies as all Class Members: namely, relief to address the claims that

5    Defendants failed to disclose and intentionally concealed the Stalling Defect found in Class

6    
7    Vehicles. Plaintiffs' interests, therefore, are perfectly aligned with the interests of the Class.

8         The adequacy of Plaintiffs and their counsel is evidenced by Plaintiffs' counsel largely

9    defeating Defendants' motions to dismiss and to strike, as well as the Settlement negotiated

10   with Defendants, which provides important relief to the Class and the public at large. Further,

11   counsel for Plaintiffs are highly experienced in class action litigation and have been involved in

12   many class action settlements, which further warrants preliminary approval of the Agreement.

13   
14   *See* Greenstone Decl. ¶ 9 and Exh. C.

15        **E.      Plaintiffs and Class Members Are Ascertainable**

16        There is no explicit requirement in Rule 23 about the class definition. Nevertheless,

17   courts have held that a class must be ascertainable before proceeding. "A class definition should

18   
19   be precise, objective, and presently ascertainable," though "the class need not be so

20   ascertainable that every potential member can be identified at the commencement of the action."

21   *Lamumba Corp. v. City of Oakland*, 2007 WL 3245282 at *3 (N.D. Cal. November 2, 2007);

22   
23   *Deitz v. Comcast Corp.*, No. C 06–06352(WHA), 2007 WL 2015440, at *8 (N.D.Cal. July 11,

24   2007); *see also Wolph v. Acer Am. Corp.*, No. 09–1314, 2012 WL 993531, at *1–2 (N.D.Cal.

25   Mar. 23, 2012) (A class is ascertainable if the class is defined with "objective criteria" and if it

26   is "administratively feasible to determine whether a particular individual is a member of the

27   class.")

28

Plaintiffs have defined the proposed Class based on objective criteria: all residents of the United States and the District of Columbia (excluding U.S. territories), who currently own or lease, or previously owned or leased, a Class Vehicle that was originally purchased or leased in the United States. Agreement, ¶ I.9.   Such objective criteria sufficiently meets the ascertainablility requirement for this Settlement Class.

**F.    <u>The Class Satisfies the Criteria of Rule 23(b)</u>**

To certify a class under Rule 23(b)(3), this Court must find that the questions of law and fact common to class members predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

Both criteria are met in this case. The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them.

**1.    Common Questions Predominate**

"The predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). The predominance inquiry considers whether "questions of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses." *Amgen Inc. v. Conn. Retirement Plans & Trusts Funds*, 133 S. Ct. 1184, 1195 (2013).   Accordingly, the predominance analysis "focuses on the relationship between common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538,

545 (9th Cir. 2013) (internal quotation marks omitted). This analysis starts with the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 133 S. Ct. 2179, 2184 (2011).

In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the claims can be done through common evidence applicable to the class as a whole, or whether proof will be overwhelmed by individual issues. *See Hanlon*, 150 F.3d at 1022. As the Supreme Court has noted, predominance is readily met in cases alleging consumer fraud. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

The legal and factual issues central to each Plaintiffs' claims are common to all Class Members. Plaintiffs' claims here center on the following questions: (1) whether the Stalling Defect exists in the Class Vehicles; (2) whether Defendants were aware of the Stalling Defect in the Class Vehicles at the time of sale; (3) whether Defendants had a duty to disclose the Stalling Defect to Plaintiffs and Class Member; and (4) whether the undisclosed Stalling Defect constituted a material fact to reasonable consumers. These common questions clearly predominate over individual questions because Defendants' alleged misconduct affected all Class Members in the same manner as these were mass produced vehicles sold nationwide subject to the same alleged Stalling Defect. This weighs in favor of finding the requirements of Rule 23(b)(3) satisfied. *Moshogiannis v. Security Consultants Group, Inc.*, 2012 WL 423860, at *4 (N.D.Cal. Feb. 8, 2012); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196-97 (6th Cir. 1988).

Under the consumer protection laws at issue, whether consumers were likely to be deceived is an objective standard, and, most importantly, the focus is on the Defendants' conduct, not the Plaintiffs'. *Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010); *Ackerman v. Coca-Cola*

*Co.*, 2013 WL 7044866 at 19 (E.D.N.Y. July 18, 2013). Given the objective standard and focus on Defendants' conduct, common questions of law and fact predominate.

### 2. A Class Action Is the Superior Method for the Fair and Efficient Adjudication of This Controversy

This case also meets the second requirement of Rule 23(b)(3): that a class action be "superior to other available methods of the fair and efficient adjudication of the controversy." To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) [T]he interest of members of the class in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by…members of the class; (C) the desirability…of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.* Each of these factors weighs in favor of certifying the Class.

### a. The Individual Class Members' Interest in Controlling the Litigation

First, there is little interest or incentive for Class Members to individually control the prosecution of separate actions. Each Class Member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

### b. Extent and Nature of Litigation Already Commenced by Class Members

Second, Plaintiffs are unaware of any other pending actions by Class Members against Defendants asserting similar claims as here. This factor also weighs in favor of certification.

**c.      The Desirability of Concentrating the Litigation In a Particular Forum**

Third, certification would be superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency." *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 493 (C.D. Cal. 2006).

**d.      This Case is Manageable As a Class Action**

Fourth and finally, the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J. 1997).  As the Supreme Court has held, manageability issues will not foreclose certification for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Therefore, there are no serious manageability difficulties presented by conditionally certifying this case for settlement purposes, such as choice of law issues. A number of recent decisions from the district courts within the Ninth Circuit have certified nationwide classes under California law for litigation and settlement purposes. *See, e.g., Order, Pappas, et al. v. Naked Juice Co. of Glendora, Inc., et al.*, Case No. 11-cv-08276-JAK-PLA, Dkt. No. 184 (C.D. Cal. Jan. 2, 2014) (granting final approval of nationwide class certified for settlement purposes under California law); *Arnold v. FitFlop USA, LLC*, 2014 U.S. Dist. LEXIS 58800, at *6 (S.D. Cal. Apr. 28, 2014) (same); *Miller v. Ghirardelli Chocolate Co.*, 2015 U.S. Dist. LEXIS 20725 (N.D. Cal. Feb. 20, 2015) (same); *Kent v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 106831

1   (N.D. Cal. Sept. 20, 2011) (same). As this case will not go to trial if finally approved, all that

2   would remain is the claims administration if the Settlement is granted final approval. Hence,

3   Plaintiff have satisfied the requirements of Rule 23(b)(3).

4   **V.    PRELIMINARY APPROVAL IS APPROPRIATE**

5       **A.    The Settlement Approval Process**

6

7       The law favors settlement, particularly in class actions and complex cases where

8   substantial resources can be conserved by avoiding the time, costs, and rigors of prolonged

9   litigation. *Van Bronkhorst*, 529 F.2d at 950; CONTE & NEWBERG, NEWBERG ON CLASS

10  ACTIONS § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of

11  outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to

12  compromise.").

13

14      Where, as here, the parties propose to resolve the claims of a certified class through

15  settlement, they must obtain court approval. Fed. R. Civ. Proc. 23(e). The typical process for

16  approving class action settlements is described in the FEDERAL JUDICIAL CENTER,

17  MANUAL FOR COMPLEX LITIGATION §§ 21.632-.635 (4th ed. 2004): (1) preliminary

18  approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or

19  published notice of the settlement to all affected class members; and (3) a "formal fairness

20  hearing," or final approval hearing, at which evidence and argument concerning the fairness,

21  adequacy, and reasonableness of the settlement is presented. *Id.* This procedure, commonly

22  employed by federal courts, serves the dual function of safeguarding class members' procedural

23  due process rights and enabling the court to fulfill its role as the guardian of class members'

24  interests.

25

26

27

28

Plaintiffs ask that the Court grant preliminary approval of the proposed Settlement. At this stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION § 21.632. The Court should grant preliminary approval if the settlement has no obvious deficiencies and "falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 11.25.

At the next stage of the approval process, the formal fairness hearing, courts consider arguments in favor of and in opposition to the settlement. According to the Ninth Circuit, the fairness hearing should not be turned into a "trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Id.* Rather, the inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

**B.      The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval**

Courts generally employ a multi-prong test to determine whether preliminary approval is warranted. A proposed class action settlement is presumptively fair and should be preliminarily approved if the Court finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment on the merits of the claims; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objects. *Young v. Polo*

*Retail*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also* NEWBERG § 11.41. The Settlement easily satisfies these requirements.

### 1. The Settlement Negotiations Were at Arm's Length

First, negotiations leading to the Settlement were hard fought and overseen by Hon. Edward Infante. Greenstone Decl. ¶ 6. The parties appeared in person to attend a full-day mediation after submitting mediation statements and exchanging both formal and informal discovery. *Id.* Subsequent to the mediation session, the parties continued negotiations with the assistance for Judge Infante for approximately three months before reaching the Settlement. *Id.* Given the extensive motion practice on both Defendants' Rule 12(b)(6) and 12(f) motions, the briefing of mediation statements, the information exchanged in connection with the mediation, and the time taken to arrive at an agreement, both parties were able to articulate the strengths of their claims and defenses and weaknesses of each other's position. *Id.* They ultimately reached the Settlement after carefully weighing the facts, the applicable law, and the risks of continued litigation. *Id.* These facts support a presumption of fairness. NEWBERG ON CLASS ACTIONS § 11.41.

### 2. Plaintiffs' Counsel Had Adequate Discovery to Make an Informed Judgment on the Merits of the Claims

Second, the parties had adequate discovery to make an informed judgment on the claims. The parties exchanged initial disclosures. Greenstone Decl. ¶ 7. Plaintiffs served sets of special interrogatories and document requests on Defendants regarding, among other things: warranty data regarding stalling complaints of Class Vehicles, customer relations records, Quality Information Reports regarding the Stalling Defect, owner's manuals and warranty booklets for Class Vehicles, communications with suppliers of alternators and throttle bodies for Class Vehicles, communications between Defendants' employees regarding the Stalling

Defect, communications between Defendants' employees and third parties regarding the Stalling Defect, marketing brochures for Class Vehicles, FSE reports regarding the Stalling Defect on Class Vehicles, and sales information regarding the Class Vehicles. *Id.*  In response, Defendants produced and Plaintiffs' counsel reviewed quality information reports generated in connection with Defendants' analysis of the Stalling Defect, warranty claims data technical service bulletins, Class Vehicle manuals and brochures, consumer complaints, field service reports, and other related information.  *Id.*

In addition, Plaintiffs' counsel performed extensive pre- and post- filing investigation which included interviewing in excess of two hundred putative class members, review of repair orders, publicly available complaints, technical service bulletins, and other information. Greenstone Decl., ¶8.

> ### 3. Plaintiffs' Counsel, Who Are Highly Experienced in Consumer Fraud Cases and Class Action Procedure, Believe the Settlement is Fair, Reasonable, and Adequate

Third, the law firm of Glancy, Prongay & Murray LLP is highly experienced in class action litigation involving claims for violations of consumer statutes throughout the country. Greenstone Decl. ¶ 9 and Exh. C.  For example, Glancy, Prongay & Murray LLP has been appointed as sole lead or co-lead counsel in a number of class action cases, including *Shin, et al., v. BMW of North America*, Case No. 09-398 AHM (AJWx) (C.D. Cal.); *Lilly v. Jamba Juice Company*, Case No. 13-02998 (N.D. Cal.); *Peterson v. CJ America, Inc.* Case No. 14-02570 (S.D. Cal.); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.); *In re Bank of America Credit Protection Marketing and Sales*

1  *Practices Litigation*, Case No. 11-md-2269 (N.D. Cal.). *See id.* On the other side, Defendants

2  are represented by Lewis, Brisbois Bisgaard & Smith LLP, a national defense firm with lawyers

3  experienced in class action procedure.

### 4.    The Reaction to the Proposed Settlement

Plaintiffs and their counsel fully support the Settlement as fair, reasonable and adequate.

Greenstone Decl. ¶ 10. It is too early to tell how the Class will react to it, since notice of the

Settlement has not yet been sent.

In light of the factors discussed above, the proposed Settlement merits preliminary

approval.

## VI.    <u>NOTICE</u>

Class notice must be "reasonably calculated, under all circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections." *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950). Notice must also

satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the

following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
> claims, issues, or defenses; (iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the court will exclude from
> the class any member who requests exclusion; and (vi) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Here, the Class Notice advises Class Members of the information required by Rule

23(c)(2)(B) and is written in plain English. Agreement, Exh. B.  In addition to being mailed, the

Class Notice will be made available on a Settlement Website which will also contain copies of

the Claim Form and Settlement Agreement, provide instructions on how to contact Class

Counsel for assistance, provide information on how to file claims, and that will be designed with the capability to permit Class Members to file a claims online using a desktop or mobile device.  Agreement, ¶ IV.D.

Moreover, the method for disseminating notice, Mailed Notice and an accompanying website, are reasonable under the circumstances. Agreement, ¶¶ IV.A, D.  *See, e.g., Covillo v. Specialtys Café*, 2013 WL 5781574, *8 (N.D. Cal. 2013) (mailing of notice via first class mail and maintenance of settlement website with significant case-related documents satisfied Rule 23(c)(2)(B) requirements); *Manner v. Gucci America, Inc.*, 2016 WL 1045961, *7 (S.D. Cal. 2016) (granting preliminary approval where settlement agreement provided for mailed notice with accompanying settlement website).  Accordingly, the forms of notice and plan of dissemination should be approved.

## VII.   PROPOSED SCHEDULE

Plaintiffs propose the following schedule, which has been approved by Defendants, for the approval process. If the Court grants preliminary approval, these dates will be incorporated in the [Proposed] Order Preliminarily Approving Class Action Settlement, Provisionally Certifying a Settlement Class for Settlement Purposes, Appointing Class Counsel, Directing the Issuance of Notice to the Class and Scheduling a Fairness Hearing.[11]

| Event | Date |
|---|---|
| Mailed notice of settlement to be disseminated (120 days from Court's order granting preliminary approval) | 11/30/16 |
| Class Counsel to file motion for final approval and fee application (20 days before expiration of objection and opt-out period) | 1/9/16 |

---

[11] This schedule assumes preliminary approval is granted at the hearing on this Motion.

| | |
|---|---|
| Objection and opt-out deadline (60 days after dissemination of mailed notice) | 1/29/17 |
| Replies in support of final approval/response to objectors (7 days after objection & opt-out deadline) | 2/7/17 |
| Final approval hearing | 2/14/17 |
| Settlement becomes final, non-appealable ("Effective Date") (30 days from final approval) | 3/16/17 |
| Deadline to submit a claim form (120 days after dissemination of mailed notice) | 3/29/17 |
| Deadline for payment of reimbursement claims and issuance of rebate certificates (60 days after the Effective Date) | 5/16/17 |

## VIII. **CONCLUSION**

For the reasons set forth above, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement, Provisionally Certifying a Settlement Class for Settlement Purposes, Appointing Class Counsel, Directing the Issuance of Notice to the Class and Scheduling a Fairness Hearing, which: (1) approves the Settlement; (2) directs dissemination of notice to Class; and (3) sets a date of February 14, 2017 for the final approval hearing and the other associated dates proposed herein.

DATED:  June 21, 2016              GLANCY PRONGAY & MURRAY LLP


By:  *s/ Mark S. Greenstone*
Lionel Z. Glancy
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

1

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

2

3

I, the undersigned, say:

4

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

5

6

On June 21, 2016, I served the following documents:

7

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

8

9

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, PROVISIONALLY CERTIFYING A SETTLEMENT CLASS FOR SETTLEMENT PURPOSES, APPOINTING CLASS COUNSEL, DIRECTING THE ISSUANCE OF NOTICE TO THE CLASS, AND SCHEDULING A FAIRNESS HEARING**

10

11

12

By posting the documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as listed on the attached Court's ECF Service List.

13

14

15

And on any non-ECF registered parties:

16

By U.S. Mail:  By placing true and correct copies thereof in individual sealed envelope: with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence or mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

17

18

19

20

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 21, 2016, at Los Angeles, California.

21

22

23

*s/ Mark S. Greenstone*
Mark S. Greenstone

24

25

26

27

28

## Mailing Information for a Case 4:14-cv-03612-CW Reniger et al v. Hyundai Motor America et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Thanh Chung**
  Kimberly.Chung@lewisbrisbois.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com

- **Michael K. Grimaldi**
  michael.grimaldi@lewisbrisbois.com,bonnie.reinhard@lewisbrisbois.com

- **Eric Y Kizirian**
  eric.kizirian@lewisbrisbois.com,cynthia.snyder@lewisbrisbois.com,Bonnie.Reinhard@lewisbrisbois.com,michael.grimaldi@lewisbrisbois.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)