GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Mark S. Greenstone (#199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA RENIGER, GREG BATTAGLIA, LUCIA SAITTA and ANN MANCUSO, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:14-cv-03612-CW |
| Plaintiffs, | **FOURTH AMENDED CLASS ACTION COMPLAINT FOR:** |
| v. | (1) Violations of California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); |
| HYUNDAI MOTOR AMERICA, a California corporation, and HYUNDAI MOTOR COMPANY, a foreign corporation, | (2) Violations of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*); |
| Defendants. | (3) Violations of New York Deceptive Practices Act (N.Y. Gen. Bus. L. § 349 *et seq.*); |
| | (4) Breach of Implied Warranty Pursuant to California Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*); |
| | (5) Breach of Implied Warranty Pursuant to New York Uniform Commercial Code (N.Y. U.C.C. §2-314); |
| | (6) Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*); and, |
| | (7) Common Law Fraud. |
| | **DEMAND FOR JURY TRIAL** |

1.     Plaintiffs Julia Reniger, Greg Battaglia, Lucia Saitta and Ann Mancuso ("Plaintiffs") bring this action individually and on behalf of all persons in the United States who purchased or leased any 2010 through 2012 Hyundai Santa Fe vehicle with a 3.5L engine ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted and serviced by Hyundai Motor America and Hyundai Motor Company ("Defendants"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.     NATURE OF THE CASE & COMMON ALLEGATIONS OF FACT

### A.     Defendants Have Actively Concealed a Safety Defect Which Causes the Class Vehicles to Stall Unexpectedly

2.     This case concerns a serious safety defect in the Class Vehicles which causes unexpected stalling that results in total loss of power, including braking and steering, posing a risk of injury or death to both passengers and pedestrians ("Stalling Defect"). On information and belief, in an egregious breach of their duties under the law, Defendants have been aware of and intentionally failed to disclose the Stalling Defect for years.

3.     The Stalling Defect has been documented to occur under a multitude of driving conditions. Some owners have reported the Class Vehicles shutting off completely without warning when driving at low speeds, turning or coming to a stop. Some owners have reported their vehicles shutting down while driving at full speed on city streets and highways. Stalls have been reported to occur on both uphill and downhill grades, when accelerating and/or decelerating, when at a stop, and even when going in reverse.

4.     Accounts posted on the Internet by Class Vehicle owners over a period of several years vividly illustrate the extreme danger posed by the Stalling Defect. The

following incident reports posed on the National Highway Traffic Safety Administration ("NHTSA") website safercar.gov are typical examples:[1]

Complaint Filed February 4, 2013 (**NHTSA ID Number:** 10496377)

AS I WAS DRIVING VEHICLE LOST ALL POWER ON A HIGHWAY VERY DANGEROUS SITUATION. AGAIN THIS HAS HAPPENED A SECOND TIME NOW WITH 17000 MILES. DEALERSHIP SAID COMPUTER UPDATE THE FIRST TIME NOW THROTTLE BODY I DON'T THINK THERE IS AN ANSWER VERY DANGEROUS. *TR

Complaint Filed October 16, 2013 (**NHTSA ID Number:** 10548164)

DRIVING ON A 2 LANE HIGHWAY ABOUT 40MPH & THE CAR JUST STALLED. LOST POWER STEERING & BRAKES & WAS ALMOST HIT FROM BEHIND. I WAS ABLE TO PULL OVER WITHOUT INCIDENT. SECOND TIME, I WAS TURNING INTO MY DRIVEWAY & VEHICLE STALLED AGAIN. I WAS UNABLE TO COMPLETE TURN BECAUSE OF LOSS OF POWER STEERING & CAME WITHIN INCHES OF HITTING MY MAILBOX. BOTH TIMES I TOOK THE VEHICLE INTO THE HYUNDAI DEALER & WAS TOLD THAT THEY COULD NOT REPLICATE THE PROBLEM & THE CAR WAS DRIVING FINE. I WILL BE FOLLOWING UP WITH HYUNDAI COMPLAINTS DEPARTMENT.

Complaint Filed August 7, 2012 (**NHTSA ID Number:** 10469577)

THE VEHICLE ENGINE STALLED RANDOMLY DURING DRIVING, TOTAL 4 TIMES, ALMOST CAUSING 4 ACCIDENTS. THE DEALER MECHANIC INSPECTED THE VEHICLE BUT COULD NOT FIND THE CAUSES FOR THIS PROBLEM AND THEREFORE WAS UNABLE TO FIX IT, LEAVING THE VEHICLE IN A STATUS WITH TREMENDOUS SAFETY CONCERNS. *TR

Complaint Filed March 23, 2014 (**NHTSA ID Number:** 10574284)

DURING THE PAST 6 MONTHS, OUR VEHICLE HAS STALLED THREE TIMES. THE MOST RECENT INCIDENT OCCURRED WHILE WE WERE EXITING THE FREEWAY. THE VEHICLE JUST STALLED AND WE ALMOST LOST TOTAL CONTROL OF THE CAR ( VERY SCARY). THE FOLLOWING DAY, WE TOOK THE CAR TO THE LOCAL HYUNDAI DEALER AND THEIR SERVICE DEPARTMENT REPLACED THE THROTTLE BODY AND CLEANED ALL THE GROUNDS IN THE ENGINE

---

[1] All quotations of consumer comments posted on NHTSA and elsewhere are reproduced with spelling and grammatical errors as found in the original.

COMPARTMENT. WE HOPE THIS WAS AN ISOLATED INCIDENT AND THEIR REPAIR SOLVES THE PROBLEM.

5.　　　Scores of similar complaints documenting the Stalling Defect have been submitted to NHTSA as well as other websites and owner forums.  On information and belief, these complaints represent a small fraction of the number of actual incidents experienced by consumers.  At least one death possibly related to the Stalling Defect has been reported to NHTSA:

Complaint Filed January 7, 2011 (**NHTSA ID Number:** 10375848)

Crash:  Yes　　Fire:  No　　　Number of Injuries:  2　　　Number of Deaths:  1

VEHICLE STOPPED ON INCLINE OF A HILL, THEN REVERSED (GEAR SHIFT IN DRIVE) BACK DOWN 600 FEET THE HILL AND CRASHED AGAINST A CONCRETE WALL CORNER. HAVE 2 WITNESSES THAT SWITCHED OFF THE ENGINE, INSPECTED WRECK, FOUND NO FAULT CODES WITH A LAUNCH 431-READER BUT FIGURED THAT BATTERY WAS DRAINED AFTER 2 MONTHS. SURVIVING DAUGHTER SUFFERS FROM MEMORY LOSS BUT AT THE TIME OF THE ACCIDENT CLAIMS THE BRAKES FAILED.

6.　　　Consumers who have complained to Defendants concerning the Stalling Defect have either been told that nothing was wrong with their vehicles, that the problem could not be replicated and therefore could not be addressed, or provided with ineffective "fixes" that failed to solve the problem.  On information and belief, and based upon the investigation of counsel, Defendants at all times relevant to this Complaint were aware of the Stalling Defect and even went so far as to place data monitoring devices in certain vehicles to study its manifestations.  Defendants intentionally concealed this information from consumers to protect their own financial interests.

**B.    Defendants Have Issued a Series of Technical Service Bulletins that Have Been Implemented Unsuccessfully to Address the Stalling Defect**

7.    Dating back to 2010 Defendants have issued multiple Technical Service Bulletins ("TSBs") describing procedures that have been implemented by dealers to remedy the Stalling Defect without success.  This series of TSBs evidences Defendants' knowledge and active concealment of the problem.

8.    In July 2010 Defendants issued TSB 10-FL-009 which describes the procedure to clean the Electronic Throttle Control ("ETC") throttle body, a true and correct copy of which is attached hereto as Exhibit A.  TSB 10-FL-009 purports to apply to the 2010 Santa Fe with 2.4 liter engine and to address no start issues, "Rough idle or fluctuating engine speed at idle," and "Range/Performance" and "Limited Power" issues relating to the throttle actuator control.  TSB 10-FL-009 specifically states that the procedure described therein is to be performed prior to replacement of the ETC throttle body assembly.  TSB 10-FL-009 was superseded by TSB 13-FL-002 in April of 2013 which purports to apply to the 2010-2012 Santa Fe with 2.4 liter engine and to address the same conditions as its predecessor.  A true and correct copy of TSB 13-FL-002 is attached hereto as Exhibit B.  At the recommendation of the Hyundai techline, Mission Hills Hyundai cleaned Plaintiff Reniger's throttle body in an attempt to cure the Stalling Defect.  Further, the NHTSA records are replete with attempts to address the Stalling Defect through replacement of the throttle body (*see*, *e.g.*, NHTSA ID Nos. 10492412; 10513363; 10549692; 10556649 *infra*).

9.    Defendants have also issued a series of TSBs updating the Class Vehicles' Engine Control Module ("ECM") to address engine power issues.

10.    In January 2011 Defendants issued TSB 11-AT-001 which purports to provide an ECM update for 2010-2011 Santa Fe vehicles with 3.5 liter engine and which states that its

purpose "is to improve the 1-2 shift quality at light throttle and when coasting to a stop after a cold engine start." A true and correct copy of TSB 11-AT-001 is attached hereto as Exhibit C. As discussed below, Defendants would later state that the Stalling Defect manifests when coming to a stop during braking at low speed. In April 2012 Defendants issued TSB 12-FL-004 which purports to provide an ECM update for 2010-2012 Santa Fe vehicles with 3.5 liter engine that may experience a check engine light on and/or a "limp home" condition caused by performance/power issues. And in November 2012 Defendants issued TSB 12-FL-008 which purports to provide an ECM software update for 2011-2012 Santa Fe vehicles with 3.5 engine experiencing a "Contribution/Balance" code associated with any of the vehicle's six cylinders. True and correct copies of TSB 12-FL-004 and 12-FL-008 are attached hereto as Exhibits D and E, respectively.

11. On information and belief, references in publicly available consumer complaints to attempts to address the Stalling Defect with ECM updates are references to implementation of the above TSBs. *See, e.g.*, NHTSA ID Nos. 10549692; 10578264; 10556649. For example, one consumer explained: "My 2011 Santa Fe stalled while I was going 60 mph on a major freeway at 10:30 pm…The 'malfunction light' came on and the dealership said it had a code of P0638. They were aware of the problem and performed a software update."[2] This same code and event description are called out in TSB 12-FL-004 (*see* Exh. D, p. 1) which is also specifically identified in various consumer complaints (*see, e.g.*, NHTSA ID No. 10504079, *infra*).

---

[2] *See* http://www.hyundai-forums.com/cm-2007-2012-santa-fe/148635-2011-santa-fe-stall-problem.html

**C.  Defendants' Voluntary Service Campaign Announced in August 2014 – Which Provided Yet Another ECM Update – is False and Misleading, and Inadequate on its Face**

12.  In about July 2014 Defendants issued another ECM upgrade, TSB 14-01-028, a true and correct copy of which is attached hereto as Exhibit F.  This time, however, to create the illusion of a cure Defendants implemented the upgrade under the guise of a voluntary service Campaign which purports to resolve the Stalling Defect (the "Service Campaign"). Both this TSB as well as Defendants' "Service Campaign Notification" letter which was mailed in the beginning of August 2014 to some Santa Fe owners with 3.5 liter engines,  are materially false and misleading and propose a "fix" which, on its face, fails to address many manifestations of the Stalling Defect and, on information and belief, does not remedy the Stalling Defect.  Furthermore, Defendants' Service Campaign was limited to an undisclosed subset of Class Vehicles and, on information and belief, was not made available to thousands of class members, including Plaintiff Greg Battaglia.

13.  Defendants' "Service Campaign Notification" is a two page letter that states, in pertinent part:

> Hyundai has determined that during a specific set of operating conditions when coming to a stop during braking at low speed, the load placed on the engine by the alternator may momentarily result in a reduction in the engine rpm.  This, combined with an additional, simultaneous load on the engine may cause the vehicle's engine to stall.  The vehicle can be restarted immediately.

This language essentially parrots the language of the TSB.  A true and correct copy of Defendants' "Service Campaign Notification" is attached hereto as Exhibit G.

14.  Defendants' statement that the Stalling Defect is limited to a narrow "specific set of operating conditions" is false and misleading.  A significant number of publicly available complaints document the Stalling Defect to occur under a multitude of other driving

conditions as well, including, but not limited to: while driving at a constant speed on city streets; while accelerating from a constant speed (*e.g.*, while accelerating onto a highway); while driving full speed on the highway; while turning at various speeds; while driving on an incline or decline; and, while accelerating from a stop.

15. Defendants' "Service Campaign Notification" contains a link to a website set up by Defendants to provide information regarding the Campaign which can be found at www.HyundaiUSA.com/Campaign929. This website explains that the Campaign is not a safety recall and contains materially false and misleading statements that attempt to mask the seriousness and extensiveness of the Stalling Defect.

16. For example, on the website's "Frequently Asked Questions" page under the heading "Is my car safe to drive?" Defendants state: "Yes. The reported stalling incidents occur at very low speed and the vehicle can be restarted immediately. There have been no injuries or accidents associated with the issue covered by this recall." Under the heading "Shouldn't you pull all the potentially affected cars off the road?" Defendants repeat this representation, stating in pertinent part: "No, that is not necessary. The reported incidents occur at very low speed and the vehicle can be restarted immediately…" A true and correct printout of Defendants' "Frequently Asked Questions" page is attached hereto as Exhibit H.

17. These statements are also false and misleading. As noted above and described in more detail below, reports documented on NHTSA's website and elsewhere include accounts of vehicles stalling at highway speeds and under various other circumstances. At least one report documents a death which appears to be related to the Stalling Defect. These reports clearly document the dangerous nature of the Stalling Defect (even for those who have experienced it at low speeds) and the many "near misses" the Defect has caused. Defendants'

false statements and half-truths obscure the issue and further conceal the true nature of the Stalling Defect.

18.     Moreover, as discussed above, various consumer complaints suggest that Defendants' proposed "fix" – reprogramming of the ECM – is an ineffective remedy which has failed to solve the problem in the past.  *See, e.g.,* NHTSA Complaints Nos. 10549692, 1056649, 10578264, 10597317 *infra* (documenting failure of ECM upgrades to cure Stalling Defect).  The fact that Defendants' "fix" targets only one of numerous conditions under which the defect manifests also suggests it is ineffective to remedy the problem.  Further, Defendants do not offer to reimburse vehicle owners for the cost of needless and ineffective repairs done at the suggestion of Defendants' authorized dealers, for loss in value experienced as a result of the defect, or for loss of use and enjoyment.  Defendants do make clear that owners are responsible for transporting their vehicles to dealerships for servicing and that roadside assistance will not be provided (*see* Ex. H).

### D.     Failure Reports Continuing to Flow in After Initiation of Defendants' Service Campaign Show the Ineffectiveness of Defendants' Purported Fix

19.     In the short time since Defendants' announced the Service Campaign that supposedly puts an end to the Stalling Defect, stalling complaints have continued to roll in unabated.  Tellingly, this includes complaints specifically documenting the failure of Defendants' purported fix.  Plaintiffs Saitta and Mancuso both had Defendants' Service Campaign performed but continued to experience the Stalling Defect thereafter.  Similarly, the following complaint was posted on the NHTSA website:

Complaint Filed August 26, 2014 (**NHTSA ID Number:** 10628301)

DRIVING ON INTERTATE 1 HOUR EAST OF ASHEVILLE, NC IN HEAVY TRAFFIC.  **AT APPROXIMATELY 230 PM ON 8/20/2014 THE CHECK ENGINE LIGHT CAME ON, THE CAR SHUDDERED AND LOST ALL**

**ACCELERATION. COMPLETE LOSS OF POWER** MANAGED TO COAST TO THE SIDE OF THE ROAD AND TURNED CAR OFF. RESTARTED AND **DROVE TO HYUNDAI DEALERSHIP IN ASHEVILLE, NC ABOUT 30 MILES AWAY. THEY PERFORMED A SOFTWARE UPDATE AND STATED PROBLEM WAS RESOLVED. CONTINUED DRIVING ON THE HIGHWAY (TRAVELLING BACK TO DAYTON OH), AND WITHIN 1 HOUR CHECK ENGINE LIGHT CAME ON, AT ABOUT 700 PM, A COMPLETE LOSS OF POWER AND NO ACCELERATION**, AND HAD TO COAST TO THE SIDE OF THE ROAD, RESTART THE ENGINE, ETC. AGAIN, INCREDIBLY DANGEROUS SITUATION ON A BUSY INTERSTATE. THE SAME EXACT SITUATION HAPPENED 2 MORE TIMES ON OUR WAY HOME ON THE INTERSTATE, UNTIL WE COULD FINALLY TAKE IT TO OUR DEALER WHERE THEY REPLACED THE THROTTLE CONTROL ASSEMBLY AND DID ANOTHER SOFTWARE UPDATE. THIS WAS INCREDIBLY DANGEROUS, COULD EASILY HAVE RESULTED IN A VERY BAD ACCIDENT AND MERITS INVESTIGATION. PLEASE CONTACT ME IF I CAN PROVIDE ADDITIONAL INFORMATION. THANK YOU FOR YOUR CONSIDERATION. (Emphasis added).

20.     Another individual made the following post on a well-known owner forum on August 27, 2014:

> I have a 2012 Santa Fe, 20500 miles. Had no problems with this stalling issue, didn't even know about it – UNTIL today. **Stalled, lost all power as I was slowing down to make a right hand turn. Extra troubling thing is that I had a regular maintenance visit 7 days ago – and they performed the 929 idle improvement recall.** Again, no problems before this recall work done, 7 days later, problem occurred. I use my Santa Fe for work, and can't afford to have it out of commission. I'm going to contact the dealer tomorrow and see what they say.[3] (Emphasis added).

21.     In addition to complaints specifically documenting the failure of Defendants' supposed fix, other less specific stalling complaints which do not indicate whether Defendants' latest ECM update was performed, but which post-date its announcement, have continued to flow in. For example, the following additional complaints were recently posted on the NHTSA site:

---

[3] *See* http://www.hyundai-forums.com/cm-2007-2012-santa-fe/296257-2010-2012-santa-fe-service-campaign-stalling-2.html

Date Complaint Filed August 11, 2014 (**NHTSA ID Number**: 10621330)

I WAS SLOWING DOWN TO MAKE A LEFT HAND TURN, WHEN THE CAR COMPLETELY SHUT DOWN. NO POWER STEERING, NO POWER BRAKES. WAS ABLE TO COMPLETE THE TURN AND PULL OVER. PUT THE CAR IN PARK AND WAS ABLE TO RESTART AND CONTINUE DRIVING WITH NO PROBLEMS. THIS IS THE 4TH TIME THIS HAS HAPPENED SINCE WE GOT THE CAR. SINCE IT IS SPORADIC, DEALER CANNOT FIND WHAT IS WRONG. WORRIED THAT INCIDENT MIGHT OCCUR WHILE DRIVING ON HIGHWAY AND GET REAR-ENDED.

Date Complaint Filed September 29, 2014 (**NHTSA Number**: 10637929)

ON TWO SEPARATE OCCASIONS, MY 2012 HYUNDAI SANTA FE STALLED, FOR NO APPARENT REASON, CAUSING LOSS OF STEERING, WHEEL CONTROL, AND BRAKES. ON THE FIRST OCCASION, I WAS DRIVING THROUGH A MALL PARKING LOT. WHILE MAKING A LEFT TURN AND ATTEMPTING TO DRIVE DOWN A ROW OF PARKING SPOTS, MY CAR STALLED AND I WAS UNABLE TO TURN THE STEERING WHEEL, BRAKE OR GUIDE THE VEHICLE. ON THE SECOND OCCASION, I WAS TURNING LEFT DOWN THE STREET TO MY HOME. AGAIN, WITHOUT WARNING, THE CAR STALLED, VARIOUS LIGHT ELIMINATED ON THE DASH, AND I LOST COMPLETE CONTROL OF THE VEHICLE. I HAD NO ADVANCED WARNING AND THE CAR OTHERWISE SEEMED TO BE RUNNING NORMALLY.

Date Complaint Filed November 11, 2014 (**NHTSA Number**: 10654282

DRIVING DOWN THE STREET AND WITHOUT WARNING THE CAR JUST DIED. I DIDN'T KNOW WHAT WAS GOING ON AS NO LIGHTS APPEARED BUT THE STEERING WAS VERY DIFFICULT AND I REALIZED THE CAR JUST STOPPED RUNNING FOR NO REASON. IT WAS VERY ALARMING SINCE I WAS IN THE MIDDLE OF THE ROAD DRIVING. NOT STOPPED OR TURNING. LUCKILY THERE WERE NO CARS BEHIND ME BUT HAD I BEEN ON A BUSIER ROAD OR GOING AT A HIGHER SPEED, IT COULD HAVE BEEN EXTREMELY DANGEROUS AND EVEN MORE SO FOR AN INEXPERIENCED DRIVER. I AM VERY CONCERNED ABOUT THE SAFETY OF THIS CAR NOW.

Date Complaint Filed November 21, 2014 (**NHTSA Number**: 10660136)

WAS MAKING LEFT HAND TURN, CAR JUST DIED, NO WARNING AND NO LIGHTS CAME ON. COASTED TO STOP AND CAR STARTED RIGHT UP[. ANOTHER TIME LEAVING PARKING LOT CAR STARTED WAS RUNNING FINE THEN LOST SPEED, COULDN'T GO OVER 25 MPH TOOK CAR TO HYUNDAI SHOP AND THEY CHECK CAR AND THEY

DID ALL THE CHECKS AND REPAIRS AND SAID CAR SHOULD BE OK. TICKET #K1CS220981. ALSO CALLED HYUNDAI COMPANY AND REPORTED THE INCIDENT TO THEM,, CASE #7241533.

22.     On information and belief, ongoing complaints of this nature, many of which bemoan the lack of a fix, evidence the fact that Defendants' Service Campaign did not work. Regardless of the reason, it is clear there was an ongoing safety-related problem impacting a significant number of owners which Defendants failed to address.

**E.     Failure Reports Concerning the Kia Sorento, the Santa Fe's "Sister" Vehicle, Also Provide Strong Evidence that Defendants' Purported Fix is Ineffective**

23.     Defendant Hyundai Motor Company owns approximately thirty-two percent of Kia Motor Group ("Kia"). Together, the two companies comprise the Hyundai Motor Group which is one of the world's largest automakers.[4] Not surprisingly, there is a significant amount of crossover between the vehicles manufactured by these two closely related entities.

24.     The Kia Sorento is often referred to as the Hyundai Santa Fe's "sister" vehicle. On information and belief, the 2010-2012 Hyundai Santa Fe and 2011-2013 Kia Sorento are substantially similar vehicles with the same or substantially similar engine/drivetrain combinations and component parts. For example, the six cylinder models of both vehicles are equipped with Hyundai's 3.5 liter Lambda II engine.[5] Edmunds reports that each vehicle during the model years in question comes with either a 2.4 liter engine that puts out 175 hp

---

[4] *See* http://en.wikipedia.org/wiki/Hyundai_Motor_Company
[5] *Compare* http://en.wikipedia.org/wiki/Hyundai_Santa_Fe
*with* http://en.wikipedia.org/wiki/Kia_Sorento

and 169 pound-feet of torque, or a 3.5 liter engine that puts out 276 hp and 248 pound-feet of torque.[6]

25.    Like the 2010-2012 Santa Fe, the 2011-2013 Sorento has received scores of stalling complaints.  For example, of the 100+ complaints concerning the 2013 Sorento filed with NHTSA, over forty concern unexplained loss of power.  These complaints are markedly similar to those concerning the Santa Fe, describing random stalling accompanied by complete loss of power occurring under a multitude of circumstances.  And like Defendants, Kia has released a series of TSB's regarding the throttle body and ECM which, on information and belief, have been implemented unsuccessfully to address the problem.  For example, in March 2012 Kia released TSB 018  which provides information on how to clean the ETC and applies to Sorentos with 2.4 liter engine (similar to Hyundai TSB 10-FL-009, *see* Ex. A).   In April 2012 Kia released TSB 116 which provides an ECM software update for certain 2011-2012 Sorentos with 3.5 liter engines which may experience a "Malfunction Indicator Lamp Illuminated" with code "P0638" related to "Throttle Actuator Control Range/Performance (Bank 1)."  This same exact code is called out in Hyundai TSB 12-FL-004 (*see* Ex. D).  And in May 2013, Kia issued TSB 023 providing an ECM software update for 2012-2013 Sorentos experiencing a "Contribution/Imbalance" code with any of the vehicle's six cylinders (same issue identified in Hyundai TSB 12-FL-008 which uses the same trouble code numbers).

26.    In May 2014, Kia released a bulletin describing voluntary Service Campaign SC106 to address the stalling issue, which was followed by a notification letter mailed on

---

[6] *Compare, e.g.*, http://www.edmunds.com/hyundai/santa-fe/2012/?sub=suv&ps=used#overview-pod-anchor *with* http://www.edmunds.com/kia/sorento/2012/?sub=suv&ps=used#overview-pod-anchor.

June 3, 2014 to an unspecified number of vehicle owners. True and correct copies of SC106 and Kia's "Voluntary Service Campaign" letter are attached hereto as Exhibits I and J, respectively. The description in SC106 and Kia's letter are virtually identical to the description contained in the TSB and customer letter Hyundai would issue two months later in connection with the Santa Fe's August 2014 Service Campaign. Kia's June 3, 2014 customer letter states:

**Why is Kia conducting this service campaign?**

Kia has become aware that during a specific set of operating conditions, it is possible under rare circumstances when braking the vehicle to a stop, for the engine to also stop. Although the engine can be restarted immediately, Kia wants to eliminate that inconvenience to its customers. (Ex. J).

Hyundai's August, 2014 Service Campaign letter states:

**What is the purpose of the service campaign?**

Hyundai has determined that during a specific set of operating conditions when coming to a stop during braking at low speed, the load placed on the engine by the alternator may momentarily result in a reduction in the engine rpm. This, combined with an additional simultaneous load on the engine may cause the vehicle's engine to stall. The vehicle can be restarted immediately. (Ex. G.)

The Hyundai TSB provides additional details including that the issue relates to vehicles with 3.5 liter engines utilizing a "Remy" brand alternator. (Ex. F). Kia's bulletin also specifies vehicles with 3.5 liter engines and, on information and belief, also relates to those vehicles utilizing a "Remy" brand alternator. (Ex. I). The "FAQ" section of the Hyundai website set up in conjunction with Hyundai's Service Campaign states that the affected vehicles were manufactured by a Hyundai plant in Alabama and a Kia plant in Georgia. (Ex. H).

27. As with the Santa Fe, stalling complaints regarding the Sorento have continued to flow in notwithstanding Kia's Service Campaign, including complaints which specifically

document the failure of the Campaign to cure the problem. For example, the following

complaints were reported to NHTSA:

Date Complaint File August 7, 2014 (**NHTSA ID Number**: 10618409)

**I WAS GOING DOWN THE HIGHWAY AT 55 MPH AND IT JUST CUTS OFF, THE ENGINE STOPS**. IT HAS DOWN THIS SEVERAL TIMES ON THE HIGHWAY JUST CUTS OFF. WONT GO, AND ENGINE LIGHT COMES ON. I PULL OFF THE ROAD AND LET IT SIT FOR AWHILE AND THEN START THE CAR AND IT DOES FINE FOR AWHILE. UNTIL THE NEXT TIME IT DOES IT AGAIN, I HAVE HAD IT TO THE KIA DEALER THREE TIMES. THE FIRST TIME I HAD IT TOWED THERE, IT IS STILL UNDER WARRANTY. THEY CANT SEEM TO FIGURE IT OUT. I HAVE **RECEIVED A LETTER FROM KIA TELLING ME THAT OTHER KIA OWNERS ARE HAVING THIS PROBLEM AND I SHOULD TAKE IT IN TO HAVE IT CHECKED. I HAVE DONE SO BUT STILL NOT FIXED**. I GOT REAR ENDED BECAUSE THE ENGINE JUST STOPPED, THIS IS VERY DANGEROUS PROBLEM!!! (Emphasis added).

Date Complaint Filed October 9, 2014 (**NHTSA ID Number**: 10648337)

**ENGINE SIMPLY STOPPED WHILE DRIVING RESULTING IN LOSS OF BRAKING AND STEERING CONTROL**. ALL INDICATOR LIGHTS ON DASHBOARD CAME ON WHEN THE ENGINE SHUT OFF. COASTED TO A STOP, BUT TRANSMISSION IN PARK AND WAS ABLE TO RESTART THE ENGINE. **TOOK THE CAR TO KIA DEALER WHO SAID IT NEEDED A SOFTWARE UPDATE WHICH WAS PERFORMED. THE SAME PROBLEM OF THE ENGINE SHUTTING OFF HAPPENED THE VERY NEXT DAY**. TAKING THE CAR BACK TO THE DEALER NOW.

(Emphasis added).

28.     In addition, On August 20, 2014, the following posting was made on a Kia

Sorento forum discussing the recent Service Campaign: "My Dad took his in for this fix 2

weeks ago, after it quit on him multiple times…including on the freeway in the middle of the

night. This morning it quit on him while driving 45 on a winding road. Obviously the fix

does NOT work."[7]

---

[7] *See* http://www.kia-forums.com/2011-2013-xm-sorento-forum/93898-2012-sorento-sx-shuts-down-while-4.html

29.     On information and belief, because of their close relationship with Kia and the overlap between their products, Defendants monitor and are aware of issues arising with Kia vehicles, including the Sorento.  The issues encountered by the Sorento provide further evidence of Defendants' knowledge of the Stalling Defect in the Santa Fe, and the inadequacy of Defendants' purported fix.

**F.      Defendants' Conduct Violates Federal Law Regarding Safety Recalls, and by Extension California Law**

30.     Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act") and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect it must promptly and accurately notify the vehicle owners as well as the Secretary of Transportation.  49 U.S.C. § 30118(c).  Defendants violated and continue to violate the TREAD Act by failing to disclose the true nature and extent of the Stalling Defect, and by failing to offer an adequate remedy for all manifestations of the defect. Defendants' violations of the TREAD Act also constitute violations of California's Unfair Competition Law (California Business & Professions Code § 17200, *et seq.*) and California's Consumers Legal Remedies Act (California Civil Code § 1750, *et seq.*).

## II.    PARTIES

31.     PLAINTIFF JULIA RENIGER is a California citizen who resides in Granada Hills, California.  In or around March 2012, Ms. Reniger purchased a new 2012 Hyundai Santa Fe Limited from Keyes Hyundai in Van Nuys, California.  Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed and warranted by Defendants.

32.     PLAINTIFF GREG BATTAGLIA is a California citizen who resides in Sonoma, California.  In or around July 2011, Mr. Battaglia purchased a new 2011 Hyundai

Santa Fe from Petaluma Hyundai in Petaluma, California. Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed and warranted by Defendants.

33. Plaintiff LUCIA SAITTA is a California citizen who resides in Brea, California. In or around the end of January 2014, Ms. Saitta purchased a used 2012 Hyundai Santa Fe from a North County Hyundai in Carlsbad, California. Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed and warranted by Defendants.

34. Plaintiff ANN MANCUSO is a New York citizen who resides in Queens, New York. In or around the end of April 2010, Ms. Mancuso purchased a new 2010 Hyundai Santa Fe from Star Hyundai in Bayside, New York. Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed and warranted by Defendants.

35. DEFENDANT HYUNDAI MOTOR AMERICA is a California corporation with its principal place of business in Fountain Valley, California.

36. DEFENDANT HYUNDAI MOTOR COMPANY is a South Korean corporation with its principal place of business in Seoul, South Korea.

37. In conjunction with marketing and distributing the Class Vehicles, Defendants have personally availed themselves of the laws of the state of California, and established such contacts, as to be subject to personal jurisdiction for the claims set forth herein.

III. PLAINTIFFS' FACTS

A. **Plaintiff Julia Reniger**

38. Plaintiff Julia Reniger acquired her vehicle primarily for personal, family, or household use. Prior to purchase, Plaintiff researched her vehicle by, among other things, reviewing information regarding the vehicle's safety on Defendants' website and by reviewing vehicle reviews on other websites. At the time of purchase Plaintiff spoke with the

dealer's salesperson at length about the vehicle, reviewed the informational sticker (aka the "Monroney sticker") posted on the window of the vehicle, and test drove the vehicle.

39. Subsequent to purchase, Plaintiff's vehicle stalled on multiple occasions under a multitude of driving conditions. For example, Plaintiff's vehicle stalled while driving with the flow of traffic on a major city street, while driving over a speed bump in a parking lot, and while slowing to make a right turn. The first stall occurred within a few months of purchase. Each time Plaintiff's vehicle stalled it experienced an accompanying loss of power to the steering and brakes.

40. In about the beginning of March 2014, Plaintiff's vehicle stalled twice in one day. In addition, Plaintiff was experiencing a noise emanating from the vehicle's power steering. Plaintiff brought her vehicle to Mission Hills Hyundai three times during March 2014 to have the Stalling Defect repaired and multiple "fixes" were attempted including, among other things, cleaning the throttle body and changing the battery. Each time, however, shortly after Plaintiff picked up her vehicle, it stalled again. During one of Plaintiff's three visits in March 2014 it was recommended that Plaintiff have a servicing performed, for which Plaintiff was charged $108.52. This servicing included: replacement of engine oil and filter; topping off of engine compartment fluids; checking and adjustment of tire pressure; multi-point inspection; inspection of fuel lines, fuel hoses and connections; inspection of suspension mounting bolts; inspection of steering gear box, linkage and boots and lower arm ball joint; inspection of air cleaner filter; inspection of driveshaft and boots; and, rotation of tires. Plaintiff authorized and paid for this servicing with the reasonable understanding it was recommended both as part of routine maintenance and because it might help with the issues she was experiencing, including the Stalling Defect.

41.     Because the Hyundai dealer was unable to remedy the Stalling Defect after repeated attempts, and because the defect was a serious safety issue which impacted Plaintiff's use and enjoyment of her vehicle, Plaintiff subsequently sold her vehicle to CarMax very shortly after her last visit to the Hyundai dealer.  Plaintiff's odometer read 24,104 miles at the time of sale.

42.     Plaintiff would never have paid for the above-referenced servicing had she known that the Stalling Defect would recur and that she would be replacing her vehicle shortly thereafter.  Plaintiff would also not have paid $244 in advance to renew her registration, which was due on March 28, 2014, had she known she would be compelled to sell her vehicle prior to this date as a result of the Stalling Defect.

43.     Indeed, had Plaintiff known of the Stalling Defect, Plaintiff would never have purchased the subject vehicle in the first place.  Plaintiff purchased her vehicle with the intent to own it for a period of five or more years.  By trading her vehicle in prematurely, Plaintiff was forced to absorb the significant depreciation experienced by motor vehicles during the first two years of ownership, without receiving the benefit of subsequent years of ownership as Plaintiff had planned and intended at the time of purchase.

44.     At all times Plaintiff drove her vehicle in a reasonably foreseeable manner and in the manner it was intended to be used.

**B.     Plaintiff Greg Battaglia**

45.     Plaintiff Greg Battaglia acquired his vehicle primarily for personal, family, or household use.  Prior to purchase, Plaintiff researched his vehicle by, among other things, reviewing information regarding the vehicle's reliability on Defendants' website and by reviewing consumer reviews on other websites.  At the time of purchase Plaintiff spoke with

the dealer's salesperson at length about the vehicle, reviewed the informational sticker (aka the "Monroney sticker") posted on the window of the vehicle, and test drove the vehicle.

46. Subsequent to purchase, Plaintiff's vehicle stalled randomly on at least three occasions.

47. In or about October 2013, Plaintiff was driving at night in a mountainous area in Willow Creek, California. While making a sharp turn, Plaintiff's vehicle shut off completely without warning losing both power steering and braking. Plaintiff slammed down on the brake pedal as hard as he could, using extreme force to stop the vehicle at the edge of a steep cliff.

48. In July 2014, Plaintiff's vehicle shut off again while turning into a convenience store driveway.

49. In September 2014, Plaintiff's vehicle stalled again while Plaintiff was driving on a roundabout in Reno. Plaintiff was moving at approximately 15 miles per hour and was not breaking. Plaintiff's vehicle stalled and lost all power forcing Plaintiff to again apply extreme pressure to the brakes to stop and re-start the vehicle which almost resulted in Plaintiff being rear-ended. Plaintiff's odometer read approximately 40,000 miles at this time.

50. Plaintiff's vehicle remains unfixed, and continues to suffer from a defect for which Defendants have offered no remedy. Plaintiff did not receive any notice from Defendants advising him that a Service Campaign had been initiated to address the Stalling Defect. Further, when Plaintiff's VIN is input into the "VIN Validation" field on the website set up by Defendants to administer the Service Campaign, https://www.hyundaiusa.com/campaign929/, the result provides "**Your vehicle is NOT**

**affected**" (emphasis in original).  Attached hereto as Exhibit K is a true and correct printout of the message displayed on Defendants' website when Plaintiff's VIN is entered.

51.    Plaintiff narrowly averted two serious accidents caused by the Stalling Defect. Had Plaintiff known of the Stalling Defect, Plaintiff would never have purchased the subject vehicle.

52.    At all times Plaintiff has driven his vehicle in a reasonably foreseeable manner and in the manner it was intended to be used.

### C.    Plaintiff Lucia Saitta

53.    Plaintiff Lucia Saitta acquired her vehicle primarily for personal, family, or household use.  Prior to purchase, Plaintiff researched the vehicle for several months by, among other things, reviewing articles and consumer reviews regarding the vehicle on the Internet.  At the time of purchase Plaintiff spoke with the dealer's salesperson at length about the vehicle, reviewed the informational sticker (aka the "Monroney sticker") posted on the window of the vehicle, and test drove the vehicle.

54.    Plaintiff's vehicle first stalled in or around the beginning of August 2014.  On August 14, 2014, Plaintiff brought the vehicle to Garden Grove Hyundai which performed the recent  Service Campaign implemented by Defendants to address the Stalling Defect.  A true and correct copy of the invoice from this visit is attached hereto as Exhibit M.

55.    Plaintiff's vehicle  thereafter stalled again and, consequently, Plaintiff brought the vehicle back to Garden Grove Hyundai on September 22, 2014.  A diagnostic was run but no diagnostic trouble codes were found and the ECM was reset.  A true and correct copy of the invoice from this visit is attached hereto as Exhibit N.   Plaintiff's vehicle has continued to stall since this visit.

56.     During her short period of ownership, Plaintiff's vehicle has stalled under a multitude of driving conditions including while coming to a stop, while waiting for a red light and while driving at a steady speed.  Each time Plaintiff's vehicle stalled it experienced an accompanying loss of power to the steering and brakes.

57.     Notwithstanding multiple repair attempts, Plaintiff's vehicle remains unfixed today.  Had Plaintiff known of the Stalling Defect, Plaintiff would never have purchased the subject vehicle.

58.     At all times Plaintiff drove her vehicle in a reasonably foreseeable manner and in the manner it was intended to be used.

**D.      Plaintiff Ann Mancuso**

59.     Plaintiff Ann Mancuso acquired her vehicle primarily for personal, family, or household use.  Prior to purchase, Plaintiff's husband researched the vehicle by, among other things, reviewing information regarding the vehicle on Defendants' website and by reviewing vehicle reviews on other websites.  Also prior to purchase both Plaintiff and her husband learned of Hyundai's ten year warranty through print and television ads placed by Defendants which touted the reliability of Defendants' vehicles, and which were a significant factor in Plaintiff's decision to purchase her vehicle.  At the time of purchase Plaintiff and her husband spoke with the dealer's salesperson at length about the vehicle, reviewed the informational sticker (aka the "Monroney sticker") posted on the window of the vehicle, and test drove the vehicle.

60.     During the period beginning approximately two years after purchase to the present, Plaintiff's vehicle has stalled on multiple occasions under a multitude driving conditions.  For example, Plaintiff's vehicle has stalled while coming to a stop, while turning

and while driving at a steady speed on the highway.  Each time Plaintiff's vehicle stalled it experienced an accompanying loss of power to the steering and brakes.

61.     Plaintiff's vehicle was brought to Hyundai dealerships multiple times to address the Stalling Defect and various fixes were attempted, but to no avail.  For example, in May 2014 Plaintiff's vehicle was brought to Star Hyundai in Bayside, New York for stalling and received a new throttle body assembly and ECM update.  In September 2014 Plaintiff's vehicle stalled on a trip to upstate New York and was brought to Lia Hyundai in Albany where the Service Advisor stated that an update was available that would solve the problem, and proceeded to perform the recent Service Campaign implemented by Defendants to address the Stalling Defect.  A true and correct copy of the invoice from this visit is attached hereto as Exhibit O.

62.     Notably, Plaintiff did not receive any notice from Defendants advising her that a Service Campaign had been initiated to address the Stalling Defect.  Further, when Plaintiff's VIN is input into the "VIN Validation" field on the website set up by Defendants to administer the Service Campaign, https://www.hyundaiusa.com/campaign929/, the result provides "**Your vehicle is NOT affected**" (emphasis in original).  Attached hereto as Exhibit P is a true and correct printout of the message displayed on Defendants' website when Plaintiff's VIN is entered.  It was only when Plaintiff went to the Hyundai dealership to complain yet again about stalling problems that she was informed of Defendants' alleged fix for the Defect.

63.     Following the implementation of this latest ECM update, Plaintiff's vehicle stalled again on multiple occasions and, consequently, was brought back to Star Hyundai in mid-September 2014.  Plaintiff was informed that Hyundai was sending a "tech specialist" to

check the vehicle, and shortly thereafter was told that a new engine was needed. The vehicle was kept for approximately one month while the engine was replaced. However, Star Hyundai never identified the cause of the Stalling Defect and never explained why a new engine was needed or would solve the problem. On information and belief, at most one defective component was replaced with another, and Plaintiff's vehicle remains unfixed and continues to suffer from a defect for which Defendants have offered no remedy.

64.     Because of the Stalling Defect Plaintiff's vehicle now has a long repair history which can easily be accessed by subsequent purchasers. As a result, the resale value of Plaintiff's vehicle has been significantly diminished. Further, because of the Stalling Defect Plaintiff's husband was forced to pay for cab fare to and from Star Hyundai on multiple occasions, in addition to taking vacation days from work. Had Plaintiff known of the Stalling Defect, Plaintiff would never have purchased the subject vehicle.

65.     At all times Plaintiff drove her vehicle in a reasonably foreseeable manner and in the manner it was intended to be used.

## IV.     JURISDICTION & VENUE

66.     This is a class action.

67.     At least some members of the proposed class are citizens of states different from the home state of the Defendants.

68.     On information and belief, the aggregate claims of individual class members exceed $5,000,000.00 in value, exclusive of interest and costs.

69.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d).

70.     A substantial part of the events or omissions giving rise to Plaintiffs' claims took place in this district. Venue is therefore proper pursuant to 28 U.S.C. § 1391(b)(2).

## V. THE STALLING DEFECT POSES AN UNREASONABLE SAFETY RISK OF WHICH DEFENDANTS HAD EXCLUSIVE PRESALE KNOWLEDGE THAT THEY ACTIVELY CONCEALED

71.     The Stalling Defect poses an obvious and serious safety risk.

72.     On information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced problems with their vehicles stalling unexpectedly. Complaints filed by consumers with NHTSA, as well as other publicly available complaints posted online, demonstrate that the defect is widespread and dangerous, and manifests without warning.

73.     The following are some of the complaints relating to the Stalling Defect posted on NHTSA's website:

Complaint Filed July 31, 2010 (NHTSA ID Number: 10346453)

HYUNDAI SANTE FE 2010 WAS PURCHASED NEW IN FEBRUARY 2010. WITHIN 3 MONTHS THE VEHICLE STALLED AND DIED TWICE WHILE IN ROUTE.AND DISPLAYED DIFFICULTY UP-SHIFTING AND DOWN=SHIFTING, 1ST - 3RD AND 3RD - 1ST. RETURNED TO SERVICE DEPT OF DEALER. SERVICE DEPT UNABLE TO DETERMINE CAUSE OF INCIDENTS. WITHIN 2-3 MONTHS POST THESE INCIDENTS, THE VEHICLE "CLANGED AND BANGED"AND CONTINUED PROBLEMS WITH ACCELERATION AND SHIFTING GEARS. ALSO BEGAN AN INTERMITTENT LOUD "VACUUM CLEANER" NOISE DURING GEAR CHANGES. RETURNED VEHICLE TO DEALER SERVICE CENTER AND AFTER 4 HOUR REVIEW, WAS INFORMED THE TRANSMISSION WOULD NEED TO BE REPLACED. WHEN THE VEHICLE WAS REPORTED AS REPAIRED, AND WAS REQUIRED TO BE PICKED-UP, NO STATEMENT OR DOCUMENT WAS PROVIDED TO INDICATE REPAIRS OR DAMAGES. NOT UNTIL THE DEALERSHIP AND MANUFACTURER WERE CONTACTED WAS THE STATEMENT OFFERED, ONE WEEK LATER. HAVEN'T SEEN THE STATEMENT YET AS IT WILL BE ACCESSED THROUGH THE DEALER THIS WEEK. I WAS INFORMED THE VEHICLE WAS REPAIRED BY REPLACING THE CURRENT DEFECTIVE TRANSMISSION WITH THE A NEW SAME-MODEL TRANSMISSION. WHAT IS THAT ABOUT? REPLACE THE DEFECTIVE TRANSMISSION WITH A NEWER DEFECTIVE MODEL, I DON'T THINK SO! I AM A WIDOW WITH ONE CAR TO DRIVE FOR WORK. IN MY LINE OF WORK, I AM ALONE ON THE ROAD SEVERAL WEEKS A YEAR. PLEASE CAN YOU ASSIST ME WITH THIS ISSUE? THANK YOU FOR YOUR CONSIDERATION. *TR

Complaint Filed July 25, 2010 (**NHTSA ID Number:** 10345212)

ON TUESDAY, JUNE 8, 2010 I WAS ON A BUSY INTERSTATE HIGHWAY WITH FAST MOVING TRAFFIC AND MY CAR LOST ALL POWER WHILE TRAVELING AT 70 MPH. FORTUNATELY, I WAS ABLE TO BARELY GLIDE THE SANTE FE TO THE SHOULDER AND STOP WITHOUT INCIDENT. FOLLOW UP: 3 PM VISITED HYUNDAI SERVICE CENTER AND WAS TOLD THAT IT WAS NOT A THROTTLE PROBLEM. THEY ARE IN CONTACT WITH CA SERVICE TO DETERMINE CAUSE OF PROBLEM. FRIDAY, 6-11-10 AFTER COMPLETE TESTING OF ALL CIRCUITS, HYUNDAI DECLARES NO SOURCE OF PROBLEM. AUTO WAS PICKED UP AT 4:30 PM HYUNDAI ASSISTANT SERVICE MANAGER: BOB WOOD HYUNDAI CASE # 3982284 THE SPECIFICS ARE: ? SUV WAS PURCHASED 8/09 AND CURRENTLY HAS 5200 MILES. ? CRUISE CONTROL WAS ON BUT NOT ENGAGED. ? GAS TANK INDICATOR ON ONE-HALF. ? WITH MY FOOT ON GAS PEDAL THE INITIAL INSTINCT WAS THAT THE ENGINE HAD LOST ALL POWER. O PRESSING HARDER ON GAS PEDAL HAD NO REACTION. O THERE WAS AN OPENING IN TRAFFIC AND WITH THE SUV FORWARD INERTIA I WAS ABLE TO JUST REACH THE ROAD SHOULDER. O OBSERVED THAT RED INDICATORS WERE ON (BATTERY, OIL) ? RESET TRANSMISSION SELECTOR TO PARK, TURNED OFF KEY. O FIRST RESTART-NOTHING HAPPENED O SECOND RESTART SUV STARTED AND I DID NOT TURN OFF UNTIL REACHING HOME. OBVIOUSLY, THIS IS A SERIOUS LIFE THREATENING SITUATION THAT NEEDS TO BE RESEARCHED THOROUGHLY AND CORRECTED. *TR

Complaint Filed August 26, 2010 (NHTSA ID Number: 10352192)

REPORT DATE: 08/26/2010. PURCHASED HYUNDAI SANTA FE 08/14/2010. VEHICLE HAS 1190 MILES TO DATE. VEHICLE HAS MOMENTARILY STALLED 5 TIMES - 2 IN TRAFFIC SITUATION WHICH COULD HAVE RESULTED IN CRASH. ALL STALLS HAVE OCCURRED AFTER SITTING AND IDLING AT TRAFFIC LIGHTS OR TURNS ON BOTH LEVEL SURFACE AND INCLINES. WHEN BRAKE IS RELEASED AND ACCELERATOR PUSHED VEHICLE STARTS MOVING SLUGGISHLY AND THEN STALLS FLAT FOR SEVERAL SECONDS AND THEN ENGINE RE-ENGAGES. NO WARNING LIGHTS ACTIVATED. ENGINE DOES NOT DIE REQUIRING AN IGNITION RESTART. IMMEDIATELY TOOK TO DEALER AFTER STALLING ON INCLINE 3 TIMES AT 677 MILES ON 08/18/2010. SERVICE TECH RAN COMPLETE COMPUTER DIAGNOSTIC IN IDLE MODE IN SHOP AND FOUND ALL SYSTEMS WITHIN TECHNICAL SPECIFICATIONS. SUSPECT DRIVE-BY-WIRE / COMPUTER LINKAGE. VEHICLE RUNS SMOOTHLY, DOWNSHIFTS AND ACCELERATES ON DEMAND NORMALLY AT ALL

OTHER SPEEDS LESS THAN 10 MPH. THIS CONDITION OCCURS AFTER A STOP AND AFTER BRAKE IS RELEASED AND ACCELERATOR ENGAGED (2 TIMES); WHEN MOVING SLOWLY AND HARD ACCELERATION DEMANDED (2 TIMES); OR WHEN TRANSMISSION INITIALLY ENGAGED IN DRIVE FROM PARK MODE (2 OCCASIONS). *TR

Complaint Filed September 1, 2010 (NHTSA ID Number: 10353417)

BRAND NEW 2010 HYUNDAI SANTA FE LIMITED 6 SPEED AUTO TRANSMISSION. VEHICLE SOMETIMES MAKES A LOUD BANG FROM TRANSMISSION AT START UP. VEHICLE LURCHES FORWARD WHEN STARTED UP IN PARK. ALSO LOUD BAND WHEN ENGAGING REVERSE. HAS A PROBLEM SHIFTING SOMETIMES FROM 2ND TO 3RD GEAR,A SLIGHT HESITATION SOMETIMES. CAR HAS ALSO DIED ON ME FOR NO REASON WHEN PULLING OUT OF A JUNCTION. WILL BE TAKEN THE VEHICLE TO MY LOCAL HYUNDAI DEALER ASAP. LOVE THE VEHICLE BUT SERIOUSLY WORRIED WITH THE TRANSMISSION ISSUES. MOST OF THE ISSUES ARE HAPPENING DAILY APART FROM THE STALLING ISSUE WHICH HAS ONLY OCCURRED ONCE. *TR

Complaint Filed April 8, 2011 (NHTSA ID Number: 10395283)

TL*THE CONTACT OWNS A 2010 HYUNDAI SANTA FE. WHILE DRIVING APPROXIMATELY 30 MPH, THE CONTACT STATED THAT THE VEHICLE SUDDENLY STALLED WITHOUT WARNING. HE ALSO NOTICED THAT THE RPMS WOULD INCREASE AND DECREASE WITHOUT APPLYING PRESSURE TO THE ACCELERATOR PEDAL. THE DEALER MADE FOUR ATTEMPTS TO DUPLICATE THE FAILURE. THE MANUFACTURER ADVISED THE CONTACT THAT SINCE THE COMPUTER DID NOT DISPLAY ANY ERROR CODES THEN THEY WERE UNABLE TO DIAGNOSE THE FAILURE OR REPAIR THE VEHICLE. THE CURRENT MILEAGE WAS APPROXIMATELY 18,000. THE FAILURE MILEAGE WAS APPROXIMATELY 10,000. THE VIN WAS UNAVAILABLE.

Complaint Filed August 28, 2011 (NHTSA ID Number: 10422339)

PURCHASED 2010 HYUNDAI SANTA FE IN FEB 2010. DROVE TO DALLAS, TX IN MAY 2010 THE CAR STARTED STALLING AFTER BEING IDLE AT TRAFFIC LIGHT, ON TURNS AND FROM PULLING OUT AFTER BEING STOPPED. YOU WOULD THE THINK IT WAS GOING DEAD BUT WOULD CATCH UP. THIS OCCURED NUMEROUS TIMES DURING THE TRIP TO & FROM. IMMEDIATELY TOOK TO DEALERSHIP ON RETURN BUT THEY FOUND NO PROBLEMS. HAS

HAPPENED NUMEROUS TIMES SINCE THEN, ONCE AT 20 MPH MERGEING IN TRAFFIC AND TWICE TODAY. HAVE TAKEN IT IN 3 TIMES BUT THEY NEVER FIND ANYTHING AND COULD NOT DUPLICATE PROBLEM. I DON'T KNOW WHEN THIS WILL HAPPEN AND DON'T DARE PULL OUT IN TRAFFIC UNLESS I HAVE PLENTY OF CLEARANCE FROM OTHER CARS! I FEEL AT RISK EVERYTIME THE CAR IN DRIVEN AND FEEL IT IS A VERY DANGEROUS SAFETY PROBLEM AND NEEDS TO BE INVESTIGATED. *TT

Complaint Filed September 19, 2011 (NHTSA ID Number: 10426280)

WHEN SLOWING DOWN FOR TRAFFIC LIGHTS, TURNS OR MERGING INTO TRAFFIC LANES, WHEN THE BRAKE IS RELEASED AND THE ACCELERATOR IS PUSHED, AT RANDOM TIMES THE CAR HESITATES AND ALL POWER IS LOST MOMENTARILY. THE VEHICLE SEEMS AS IF IT HAS OR IS IN THE PROCESS OF STALLING OUT. AT FIRST, IT FEELS AS IF ALL POWER HAS BEEN LOST AND THAT THE VEHICLE SHOULD BE STEERED TO THE SIDE OF THE ROAD. HOWEVER, THEN THE ENGINE SUDDENLY RE-ENGAGES AND THE VEHICLE LUNGES FORWARD. THE ENGINE WARNING LIGHT DOES NOT COME ON, AND THE ENGINE APPARENTLY DOES NOT "DIE," SINCE THERE IS NO REQUIREMENT FOR AN IGNITION RE-START. THE PROBLEM HAPPENS SPORADICALLY (ABOUT ONCE OR TWICE A WEEK--BUT SOMETIMES ONCE OR MORE IN THE SAME DAY). THE VEHICLE STARTS WELL, IDLES WELL AND OTHERWISE PERFORMS IN AN OKAY FASHION. THE DEALER CANNOT FIND ANYTHING WRONG. THE CAR DID NOT DO THIS FOR THE FIRST 20,000 OR SO MILES. ON AT LEAST TWO OCCASIONS, THIS "STALLING OUT" HAS ALMOST CREATED AN ACCIDENT SITUATION. *KB

Complaint Filed December 22, 2011 (NHTSA ID Number 10440956)

TL* THE CONTACT OWNS A 2010 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE VEHICLE WOULD SPORADICALLY STALL WITHOUT WARNING. THE DEALER WAS UNABLE TO DIAGNOSE THE FAILURE. THE MANUFACTURER WAS IN THE PROCESS OF ASSISTING THE CONTACT WITH THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 3 AND THE CURRENT MILEAGE WAS 7,650.

Complaint Filed June 5, 2012 (**NHTSA ID Number:** 10460671)

TL* THE CONTACT OWNS A 2011 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE VEHICLE STALLED WHILE DRIVING 15 MPH. THE CONTACT WAS ABLE TO SUCCESSFULLY RESTART THE VEHICLE AND CONTINUE DRIVING. THE VEHICLE WAS NOT TAKEN

TO HAVE THE FAILURE DIAGNOSED OR REPAIRED. THE
MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE
FAILURE MILEAGE WAS 15,500. THE VIN WAS UNAVAILABLE.

Complaint Filed July 18, 2012 (**NHTSA ID Number:** 10466481)

I HAVE HAD THE SAME PROBLEM WITH MY 2011 HYUNDAI SANTA
FE REPORTED IN OTHER ODI COMPLAINTS. SPECIFICALLY, MY
VEHICLE STALLS RANDOMLY WHILE TRAVELING AT LOW SPEEDS.
ODI ID #10460671, #10453272, AND #10412636, ALL SEEM TO REPORT
THE SAME PROBLEM I HAVE. OCCASIONALLY, WHILE BRAKING OR
ALLOWING THE CAR TO STOP, IT WILL STALL OUT. WHEN IT DOES,
ACCELERATING, POWER STEERING, AND POWER BRAKING ARE ALL
DISABLED. ONCE THE CAR GEAR IS SHIFTED TO PARK AND THE
IGNITION IS TURNED OFF, THE PROBLEM RESOLVES AFTER RE-
STARTING THE CAR LATER. THE DEALERSHIP SERVICE
DEPARTMENT HAD WORKED ON THIS CAR FOR THE SAME
PROBLEM FOUR TIMES WITHOUT BEING ABLE TO 1. DIAGNOSE THE
PROBLEM AND 2. COME UP WITH AN ADEQUATE REMEDY. EVEN
THOUGH THE TECHNICIANS HAVE NOT BEEN ABLE TO REPRODUCE
THE STALLING, THE FIRST THREE TIMES IT WAS IN THE SHOP,
THREE DIFFERENT REPAIRS WERE MADE. THEY HAVE ALL
INVOLVED COMPUTER FIXES, INCLUDING CHANGING OUT THE
CONTACTS, REPLACING THE JUNCTION BOX, AND UPDATING
SOFTWARE. HYUNDAI IS AWARE OF MY ISSUE AND THE PENDING
LEMON LAW ARBITRATION CLAIM THAT I HAVE MADE. HYUNDAI
HAS CURRENTLY MADE THE UNILATERAL DETERMINATION THAT
THIS VEHICLE DOES NOT QUALIFY AS A LEMON, WHICH I DISPUTE
BECAUSE 1. THIS DETERMINATION IS NOT CAPABLE OF BEING
MADE UNILATERALLY, AND 2. THIS IS A SERIOUS SAFETY DEFECT
AND MORE THAN A "REASONABLE" AMOUNT OF REPAIR ATTEMPTS
HAVE BEEN UNSUCCESSFUL. A MANAGING ENGINEER HAS
EXAMINED THE VEHICLE WITHOUT FINDING ANY PROBLEMS, AND
I'M CURRENTLY WORKING WITH HYUNDAI TO HAVE A "FLIGHT
RECORDER" INSTALLED TO RECORD DATA WHEN THE CAR STALLS
NEXT. THE MOST RECENT OCCURRENCE WAS WHILE I WAS
DRIVING IN HEAVY TRAFFIC WITHOUT A SHOULDER ON THE
FREEWAY--A LIFE-THREATENING SITUATION. I CONSIDER THIS CAR
TO BE AN UNRELIABLE SAFETY THREAT ON THE ROADWAYS AND
HAVE COMMUNICATED THIS TO HYUNDAI, BUT ITS
REPRESENTATIVE DO NOT HAVE THE SAME SENSE OF URGENCY I
HAVE. *TR

Complaint Filed August 13, 2012 (**NHTSA ID Number:** 10470435)

THE ENGINE STALLED THE 4TH TIME. DEALERSHIP COULD NOT REACH A DIAGNOSIS AND UNABLE TO FIX IT.. *TR

Complaint Filed August 19, 2012 (**NHTSA ID Number:** 10471442)

THE ENGINE SHUT DOWN TWICE WHILE DRIVING IT. FIRST SHUT DOWN ON 5/8/2012: AFTER BEGINNING TO ACCELERATE FOR A LEFT TURN AFTER BEING IDLE AT A LEFT TURN RED LIGHT THE CAR'S ENGINE LOST POWER BEFORE THE TURN WAS COMPLETED. POWER STEERING WENT OUT. GOT HONKED AT AS CARS BEHIND NOTICED SOMETHING WRONG. COASTED TO THE SIDE OF THE ROAD AFTER COMPLETING THE TURN AND HAD TO TURN THE IGNITION IN THE OFF POSITION TO TURN THE ENGINE BACK ON. SECOND SHUT DOWN ON 8/3/2012: WHILE TURNING LEFT IN A SHOPPING CENTER PARKING LOT THE CAR'S ENGINE LOST POWER. POWER STEERING WENT OUT. AFTER COMING TO A STOP HAD TO TURN THE IGNITION IN THE OFF POSITION TO TURN THE ENGINE BACK ON. *TR

Complaint Filed August 27, 2012 (**NHTSA ID Number:** 10472708)

THE ENGINE STALLED THE 5TH TIME DURING DRIVING! ALMOST CAUSED ANOTHER ACCIDENT! *TR

Complaint Filed September 17, 2012 (**NHTSA ID Number:** 10475736)

THIS IS THE 6TH ENGINE STALLING DURING DRIVING. THE ENGINE LIGHT, ENGINE OIL PRESSURE AND CHARGING SYSTEM LIGHTS WERE ON. THE DEALER COULD NOT DIAGNOSE OR FIX IT. *TR

Complaint Filed October 27, 2012 (**NHTSA ID Number:** 10482418)

WITHOUT ANY WARNING, THE ENGINE SHUT OFF WITH THE GEAR IN D - DRIVING ON A FLAT ROAD NORMALLY. THIS ALSO HAPPENED AROUND 3500 MILES AROUND JULY 20, 2012. *TR

Complaint Filed October 9, 2012 (**NHTSA ID Number:** 10479449)

TL* THE CONTACT OWNS A 2011 HYUNDAI SANTA FE. THE CONTACT STATED THAT WHILE SITTING AT A STOP LIGHT, THE VEHICLE STALLED WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER FOR INSPECTION WHERE THEY WERE UNABLE TO DETERMINE THE CAUSE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 1,500

Complaint Filed November 1, 2012 (**NHTSA ID Number:** 10482822)

VEHICLE STALLED AS TURNING INTO DRIVEWAY OF SHOPPING COMPLEX. THE STEERING WHEEL FROZE AS I WAS TRYING TO TURN LEFT. IN THE DASHBOARD, NO LIGHTS ON EXCEPT "MALFUNCTION INDICATOR" LIGHT WAS LIT. RESTARTED CAR AND DROVE ON, THE "MALFUNCTION LIGHT" GOT TURNED OFF, CAME HOME AND THEN CALLED DEALER. DROVE TO DEALER BUT THEY COULD NOT DIAGNOSE THE ISSUE SINCE THE LIGHT WAS NOT ON AND SO NO CODE CAN BE FOUND. CAR IS LESS THAN 3 MONTHS OLD AND NOT EVEN 3000 MILES ON THE CAR. I FEEL THIS CAR IS NOT SAFE UNLESS HYUNDAI TAKES CARE OF THE PROBLEM. NOT DIAGNOSING AND ADDRESSING THE ISSUE MAKES ME CONCERNED. IF CAR STALLS WHILE DRIVING THEN THAT IS VERY DANGEROUS AS IT CAN CAUSE AN ACCIDENT SUCH AS CAR HITTING FROM BEHIND. I AM VERY MUCH CONCERN WITH SUCH A PROBLEM FOR CAR AS NEW AS MINE. *TR

Complaint Filed November 5, 2012 (**NHTSA ID Number:** 10483428)

WHILE TURNING INTO A PARKING LOT, ENGINE DIED WITHOUT WARNING. THIS IS THE THIRD TIME THE ENGINE HAS DIED WITHOUT WARNING WHILE DRIVING AT LOW SPEEDS. WHEN THE ENGINE DIES, THE CAR LOSES STEERING AND BRAKES AND IS VERY UNSAFE. *TR

Complaint Filed November 21, 2012 (**NHTSA ID Number:** 10485450)

WITHOUT ANY WARNING, THE ENGINE SHUT OFF WHILE DRIVING NORMALLY. THIS IS THE THIRD TIME SINCE THE PURCHASE, AND PLEASE ADVISE ANY WAY TO TAKE ACTION ON THIS DANGEROUS ISSUE. I JUST KNOW THAT THE DEALER WILL JUST SAY THAT THEY WILL LOOK INTO IT, AND THEY WILL NOT BE ABLE TO FIX THIS. DO I HAVE TO GO THROUGH ALL THE VISITS TO THE DEALER AND BUILD A CASE FOR A LEMON? WHERE CAN I GET HELP? *TR

Complaint Filed January 14, 2013 (**NHTSA ID Number:** 10492412)

JUST GOT OUT OF A SHOPPING CENTER AND ONTO MIRA MESA BLVD, SAN DIEGO. CAR STALLED! I WAS GOING @ 30 MILES/HOUR OR SO. TOTAL MILES ON THE CAR WHEN THIS HAPPENED WERE 5177 MILES. WHEN IT STALLS, IT BEHAVES AS IF KEY IS MOVED TO ON POSITION BUT CAR HAS NOT BEEN STARTED. THIS IS THE 4TH TIME THE CAR HAS STALLED SINCE I BOUGHT NEW IN AUGUST (YES, IN 5 MONTHS AND WITHIN @ 5,000 MILES). PRIOR TWO TIMES WERE JUST A BEFORE CHRISTMAS ON 12/23/2012 (ON THE SAME DAY, @ 1

MINUTE APART). AT THIS TIME I WAS GOING SLOW SPEED @ 25 MILES/HOUR ON A WINDY DOWN HILL ROAD. FORTUNATELY, THERE WERE NO FAST MOVING CARS BEHIND ME IN ALL 4 CASES. I AM AFRAID THAT SOMEONE MAY HIT ME FROM BEHIND WHEN CAR STALLS LIKE THIS. CAR HAS BEEN TO DEALER TWICE FOR THE SAME ISSUE. THEY SEEMS TO HAVE NO CLUE. LAST TIME I WENT, JUST AFTER CHRISTMAS, THAT CHANGED THROTTLE BODY. I WAS HOPPING THAT IT WILL FIX THE ISSUE BUT I AM NOT THAT LUCKY AS IT CAME BACK IN JUST 3 WEEKS! I HAVE OPENED A CASE WITH HYUNDAI ALREADY RIGHT AFTER THE FIRST INCIDENT, WILL HAVE TO FOLLOW UP WITH THEM AGAIN. *TR

Complaint Filed January 20, 2013 (**NHTSA ID Number:** 10493564)

AT 2 TIMES IN THE LAST FEW MONTHS THE CAR ENGINE HAS SUDDENLY STOPPED WHILE DRIVING SLOWLY ON LEVEL GROUND. LOST POWER STEERING AND POWER BRAKES. CAR RESTARTED IMMEDIATELY. SO FAR DEALERSHIP UNABLE TO REPRODUCE OR HELP WITH PROBLEM. *TR

Complaint Filed January 21, 2013 (**NHTSA ID Number:** 10493630)

THIS IS THE FOURTH TIME SINCE THE PURCHASE IN APRIL, 2012. THE ENGINE JUST SHUTS OFF WHILE DRIVING NORMALLY AT A LOW SPEED. THE DEALER SHOP OBVIOUSLY COULD NOT FIND ANY ISSUES. I CANNOT UNDERSTAND WHY THIS TYPE OF HIGHLY DANGEROUS PROBLEM IS NOT BEING ADDRESSED BY NHTSA URGENTLY. I SEE THAT THERE ARE OTHER COMPLAINTS OF THIS NATURE REPORTED. I CANNOT BELIEVE THAT I HAVE TO RISK OUR FAMILY LIVES TO PROVE THAT THERE IS A SERIOUS FAULT WITH THIS VEHICLE! *TR

Complaint Filed February 26, 2013 (**NHTSA ID Number:** 10500116)

FROM STOP,MAKING LEFT TURN, LOST ALL POWER MOMENTARILY, RPM DROPPED TO IDLE. PRESSING ACCELERATOR DID NOTHING, FINALLY ENGINE CAME BACK AND ACCELERATED WILDLY. VERY DANGEROUS. *TR

Complaint File March 22, 2013 (**NHTSA ID Number**: 10504079)

THIS COMPLAINT IS SIMILAR TO A COMPLAINT I ALREADY FILED IN DECEMBER 2012 AND IS A RECURRING ISSUE.  ON 3/18/12, WAS TRAVELING APPROX 55 MPH UP A STEEP HILL WHEN THE CHECK ENGINE LIGHT CAME ON AND IMMEDIATELY THE GAS PEDAL CEASED FUNCTIONING AS WELL.   THE ENGINE REMAINED

RUNNING, HOWEVER PRESSING THE GAS PEDAL DID NOTHING. THIS CREATED AN EXTREMELY DANGEROUS SITUATION AS THE TRAFFIC BEHIND ME WAS NOT AWARE MY VEHICLE WAS SLOWING DOWN AND I HAD NO ABILITY TO SAFELY PULL OVER TO THE SIDE OF THE ROAD. I BROUGHT THE CAR TO TA STOP, TURNED OFF THE ENGINE, WAITED A MINUTE, AND RESTARTED IT. AT THIS POINT THE GAS PEDAL WAS FUNCTIONING AS EXPECTED, BUT THE CHECK ENGINE LIGHT REMAINED ON. WENT TOT EH DEALER, HOWEVER THEY INDICATED THE FIX FOR THE ISSUE (TECHNICAL SERVICE BULLETIN #12-FL-004) HAD BEEN APPLIED AFTER THE 12/2012 INCIDENT AND THEY FOUND NOTHING WRONG THIS TIME. ON 3/22/13, THE EXACT SAME ISSUE HAPPENED TWICE DURING ONE COMMUTE TO WORK. THE VEHICLE IS CURRENTLY AT THE DEALER WHO HAS NO IDEA WHY THIS IS HAPPENING. THIS IS A MAJOR SAFETY ISSUE AND FROM OTHER REPORTS SEEN ONLINE, A RECALL SHOULD BE INVESTIGATED. *TR

Complaint Filed April 6, 2013 (**NHTSA ID Number:** 10507355)

WAS NEGOTIATING A LEFT SIDED CURVE ON THE DOWNHILL SIDE OF A STEEP, WINDY ROAD IN A REMOTE AREA BETWEEN OAKLAND AND MORAGA, CA WHEN I SUDDENLY LOST STEERING POWER. I WENT TO HIT THE BRAKES AND FOUND THAT MY BRAKES ALSO HAD NO POWER. I PUSHED VERY HARD ON THE BRAKES AND MANAGED TO GET THE VEHICLE TO STOP. HAD I BEEN UNABLE TO STOP, MY CAR WOULD'VE GONE DIRECTLY OVER A VERY STEEP HILLSIDE THAT BORDERS A RESERVOIR. AS IT WAS, THE REAR END OF MY CAR WAS JUTTED OUT HALFWAY ONTO THE ROADWAY AND ONLY A FEW YARDS FROM A BLIND CURVE. THIS PARTICULAR SPOT ALSO HAS NO CELL PHONE COVERAGE. AFTER PUTTING THE CAR IN PARK, I NOTED THAT MY IGNITION WAS STILL IN THE "ON" POSITION AND THAT ALL THE APPROPRIATE DASH LIGHTS WERE ON, BUT THE ENGINE SOUND WAS ABSENT AND THE TACH READ ZERO. I DID NOT NOTICE ANY ERROR MESSAGES ON MY DASH. I TURNED THE CAR OFF, THEN TURNED THE IGNITION BACK ON. THE CAR STARTED RIGHT UP WITH NO HESITATION. I HEARD NO UNUSUAL ENGINE NOISES OR EXPERIENCED ANY DIFFICULTIES WITH DRIVING THE VEHICLE. I DROVE TO THE CLOSEST SERVICE STATION APPROX. 3-4 MILES FROM THE INCIDENT LOCATION. THE MECHANIC DID A QUICK CHECK UNDER THE HOOD, FOUND NOTHING UNUSUAL AND SUGGESTED I GO DIRECTLY TO THE HYUNDAI DEALERSHIP. I TOOK MY CAR TO FUTURE HYUNDAI IN CONCORD, CA. THEY RAN DIAGNOSTICS THE NEXT DAY, THEN REPORTED THAT THEY "COULD FIND NOTHING WRONG WITH THE CAR." I EXPRESSED MY FEAR OF DRIVING THE VEHICLE BASED ON VERY RATIONAL SAFETY CONCERNS AND WHAT I FELT HAD BEEN

A CLOSE CALL ON MY LIFE THE DAY PRIOR. I ALSO TOLD THE SERVICE PERSON THAT A QUICK LOOK ONLINE LEAD ME TO FIND SEVERAL STORIES SIMILAR TO MINE. I WAS TOLD I WOULD NEED TO TALK WITH THE SERVICE MANAGER THE NEXT DAY AS HE WAS NOT AVAILABLE. I THEN CALLED HYUNDAI CUSTOMER SERVICE AND REPORTED THE ENTIRE HISTORY OF THIS ISSUE. I HAVE BEEN ASSIGNED CASE # [XXX]. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TR

Complaint Filed April 14, 2013 (**NHTSA ID Number:** 10508158)

2011 HYUNDAI SANTA FE V6 LIMITED TRAVELING AT A SPEED OF APPROXIMATELY 15 MPH, IN THE PROCESS OF MAKING A LEFT HAND TURN THE ENGINE EXPERIENCED A STALL CONDITION. IMMEDIATELY LOST THE ABILITY TO SAFELY CONTROL THE VEHICLE, COMPLETE LOSS OF THE BRAKING SYSTEM AND POWER STEERING. ENGINE LIGHT WAS ILLUMINATED. ONCE THE VEHICLE HAD COASTED TO A STOP, SHIFTED THE VEHICLE FROM THE DRIVE POSITION TO THE PARK POSITION. TURNED THE IGNITION TO THE OFF POSITION. IMMEDIATELY TURNED THE IGNITION TO THE START POSITION AND ENGINE RESTARTED. ENGINE LIGHT INDICATOR IN DASH PANEL WAS NO LONGER ILLUMINATED. TOOK VEHICLE TO DEALERSHIP TO HAVE THEM LOCATE THE ROOT CAUSE. DEALERSHIP WAS UNABLE TO DETERMINE THE ROOT CAUSE. FILED AN INCIDENT REPORT WITH HYUNDAI USA. *TR

Complaint Filed May 2, 2013 (**NHTSA ID Number:** 10510408)

TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE VEHICLE STALLED WITHOUT WARNING WHILE SITTING AT A TRAFFIC STOP. THE FAILURE WAS EXPERIENCED SEVERAL TIMES. THE VEHICLE WAS TAKEN TO THE DEALER TO HAVE A DIAGNOSTIC PERFORMED BUT THE DEALER WAS UNABLE TO GENERATE A FAILURE CODE. THE DEALER ALSO TEST DROVE THE VEHICLE BUT WAS UNABLE TO DUPLICATE THE FAILURE. THE DEALER RESET THE ELECTRONIC CONTROL MODULE AS A PRECAUTION. THE FAILURE WAS NOT CORRECTED HOWEVER, AND THE VEHICLE CONTINUED TO STALL WHEN STOPPED. THE FAILURE MILEAGE WAS 2,766 AND THE APPROXIMATE FAILURE MILEAGE WAS 3,000.

Complaint Filed May 3, 2013 (**NHTSA ID Number:** 10510497)

2012 HYUNDAI SANTA FE HAD COMPLETE POWER LOSS ON INTERSTATE WHILE MOVING AT 65MPH IN THE LEFT MOST LANE. ENGINE SHUTTERED, CHECK ENGINE LIGHT CAME ON AND ENGINE

POWER WENT TO IDLE RPM. THERE WAS NO THROTTLE RESPONCE AND STEERING BECAME HEAVY. MANAGED TO CROSS TWO LANES AND GET THE VEHICLE TO THE SHOULDER. SHUT VEHICLE OFF AND RESTARTED IT. CHECK ENGINE LIGHT STAYED ON AND ENGINE APPEARED TO FUNCTION NORMALLY. ACCELERATED FROM SHOULDER INTO TRAFFIC. DROVE FOR 1/4 MILE AND INCIDENT AGAIN REPEATED ITSELF AS DESCRIBED ABOVE. FEARING FOR MY SAFETY, I PARKED THE VEHICLE AND HAD IT TOWED TO DEALER WHOM I PURCHASED VEHICLE FROM. I CALLED (ON 5-2-13) THE DEALER AND TOLD THEM WHAT WAS HAPPENING. THE NEXT MORNING (5-3-12) I CALLED THEM AT 9AM TO FIND STATUS OF REPAIR. THEY STATED IT WAS ALREADY REPAIRED. THEY STATED IT IS RELATED TO THE TROTTLE POSITION SENSOR. THEY STATED THEY WERE WELL AWARE OF THE PROBLEM. THEY STATED THEY WERE HAVING MANY OF THE SAME ISSUES WITH THIS TYPE OF VEHILCE. THEY STATED THERE WAS A TSB ON THE PROBLEM. DOES SOMEONE HAVE TO BE INJURED OR KILLED BEFORE A MANUFACTURE HAS THE OBLIGATION TO CORRECT A KNOWN PROBLEM THAT REPEATS ITSELF? LOOK AT ALL THE OTHER REPORTS AND COMPLAINTS! I HAVE A WIFE AND 2 CHILDREN THAT RIDE IN THIS VEHICLE. WHAT NOW? *TR

Complaint Filed May 13, 2013 (**NHTSA ID Number:** 10511729)

SINCE I RECEIVED MY SUV IN 2011 I'VE EXPERIENCED 3 VEHICULAR CUT-OFFS WHILE DRIVING. THE CUT-OFF ALWAYS OCCURS DURING A SLOW MOVING TURN, WHETHER GOING LEFT OR RIGHT. I WOULD START TURNING OR SWITCHING LANES IN ONE CASE AND THE CAR WILL STALL. ALL PANEL LIGHTS WOULD COME ON, THE STEERING WOULD SHUT-DOWN SO I CANT CONTROL THE VEHICLE AND THE BRAKES SHUT-DOWN AS WELL. I HAVE TO COAST TO A STOP AND PLACE IN PARK. THIS IS A VERY VULNERABLE SITUATION WHERE I'VE BEEN AT THE MERCY OF ONCOMING TRAFFIC. THANK GOODNESS THAT MY 2 YEAR OLD DAUGHTER WASN'T IN THE VEHICLE ANY OF THE TIMES. THE SUV ALWAYS STARTS BACK UP AFTER SITTING FOR ABOUT A MINUTE. THIS PROBLEM IS SO RANDOM AND THERE ARE NO WARNING SIGNS, IT'S JUST HAPPENS. IT WAS SUGGESTED THAT PERHAPS THEIR COULD HAVE BEEN AIR IN THE GAS LINE, I DON'T BELIEVE THIS TO BE TRUE. THE FIRST TIME IT HAPPENED I HAD LESS THEN A QUARTER TANK OF GAS, THE SECOND ABOUT A HALF TANK AND THE LAST A FULL TANK. CURRENTLY MY CAR IS BACK AT THE DEALERSHIP WHERE THEY'RE HOPING THAT THEY CAN ONCE AGAIN DUPLICATE THE PROBLEM. THEY'VE HAD IT FOR 6 DAYS SO FAR. *TR

Complaint Filed May 20, 2013 (**NHTSA ID Number:** 10512810)

THIS HAS OCCURRED TWICE (5900 MILES AND 7000 MILES). AT A RED LIGHT, THE ENGINE WILL SHUT OFF WITH NO SYMPTOMS. IT IS ONLY WHEN THE LIGHT TURNS GREEN AND THE GAS PEDAL IS PRESSED DO YOU NOTICE THE ENGINE HAS STOPPED. I SEE AS A DANGEROUS SITUATION. DEALER SAYS WITH NO CHECK ENGINE " ON" THERE IS NO WAY TO FIND THE PROBLEM. *TR

Complaint Filed May 23, 2013 (**NHTSA ID Number:** 10513363)

TOOK MY CAR IN TO HYUNDAI DEALERSHIP IN CONCORD, CA ON APPROX. MARCH 17TH OF THIS YEAR FOR PREVIOUS COMPLAINTS OF ENGINE SUDDENLY SHUTTING OFF WHILE DRIVING. WAS TOLD AT THAT TIME THAT NO ERROR CODES WERE RECORDED BY THE CAR'S COMPUTER AND THAT HYUNDAI MECHANICS COULD NOT FIND ANY MECHANICAL ISSUES WITH THE VEHICLE. THEY THEN TALKED TO HYUNDAI ENGINEERS AND DECIDED THAT POSSIBLY THE CARS THROTTLE BODIES COULD BE A PROBLEM AND TOLD ME THEY WOULD DO A "GOOD WILL" REPLACEMENT OF THIS AUTO PART. SINCE THAT TIME, I HAVE DRIVEN THE CAR APPROXIMATELY 1K MILES WITHOUT INCIDENT, UNTIL THIS PAST SATURDAY MAY 18 2013. I WAS IN STOP AND GO TRAFFIC, GOING AT SPEEDS BETWEEN 5-15 MPH. I PUSHED THE BRAKE TO DO A GRADUAL SLOW, THEN WENT TO PUSH THE ACCELERATOR BUT THERE WAS NO POWER. I LOOKED DOWN TO SEE MY DASH LIGHTS WERE PRESENT, BUT NO ENGINE SOUND. I SLOWED THE CAR TO A COMPLETE STOP, TURNED THE IGNITION OFF, THEN TURNED IT ON AND THE ENGINE STARTED RIGHT UP. AGAIN, AS PREVIOUS, NO ERROR MESSAGES APPEARED ON MY DASH. THE CAR HAS BEEN DRIVEN WITHOUT INCIDENT SO FAR 200 MILES SINCE THIS LAST INCIDENT. THE DEALERSHIP HAS ASKED ME TO BRING THE CAR IN AND ALLOW THEM TEST DRIVE THE CAR FOR A DAY HOPING THAT THIS INTERMITTENT PROBLEM WILL OCCUR FOR THEM. IT APPEARS TO BE CONNECTED TO HITTING THE BRAKES, SLOWING, THEN ATTEMPTING TO ACCELERATE. ALL TIMES THIS SO FAR THIS HAS OCCURRED WHILE DRIVING ON AN INCLINE. THE VEHICLE CURRENTLY HAS 35, 500 MILES. *TR

Complaint Filed July 8, 2013 (**NHTSA ID Number:** 10523828)

THE ENGINE STALLED WHILE DRIVING. I WAS DRIVING AT A LOW SPEED AND MAKING A RIGHT-HAND TURN, AND THE ENGINE SHUT OFF. THE CHECK ENGINE LIGHT ILLUMINATED. I LOST POWER STEERING AND WOUND UP ON THE OPPOSITE SIDE OF THE ROAD; FORTUNATELY, THERE WAS NO ONCOMING TRAFFIC OR IT COULD

HAVE BEEN AN EVEN MORE DANGEROUS SITUATION. I WAS ABLE TO RESTART THE CAR AND CONTINUE DRIVING. THE DEALERSHIP DID NOT SEE A DIAGNOSTIC CODE RECORDED. THEY WERE ALSO NOT ABLE TO RECREATE THE PROBLEM. NO REPAIRS WERE MADE. THIS INCIDENT HAPPENED AGAIN AT APPROXIMATELY 9,000 MILES, AND MOST RECENTLY AT 24,184 MILES. IN ALL CASES THE SCENARIO IS SIMILAR: DRIVING AT A LOW SPEED, EITHER TURNING OR ON A CURVY ROAD. THE VEHICLE HAS RESTARTED WITHOUT INCIDENT, BUT THE COMPLETE LOSS OF POWER STEERING AND BRAKING MAKES THIS AN INCREDIBLY DANGEROUS DEFECT. THE DEALERSHIP WAS UNABLE TO FIND A DIAGNOSTIC CODE FOR THE MOST RECENT INCIDENT. *TR

Complaint Filed August 16, 2013 (**NHTSA ID Number:** 10535699)

FOR THE SECOND TIME THIS SUMMER THE ENGINE HAS JUST SHUT OFF WHILE DRIVING SLOWLY DOWN HILL. THIS TIME I BARELY MISSED CAUSING AN ACCIDENT AND HITTING A PEDESTRIAN. *TR
Complaint Filed September 7, 2013 (**NHTSA ID Number:** 10542456)

ENGINE DIED WHEN SLOWING DOWN - COMING TO A STOP OR MAKING TURNS APPROXIMATELY 8 TIMES SINCE THE TIME OF PURCHASE. FIRST TIME WAS WHEN COMING DOWN AN INCLINE TO A STOP SIGN. THE NEXT TIME HAPPENED WHEN MAKING A TURN AROUND A CORNER ON A RESIDENTIAL STREET. SINCE THAT FIRST TIME, SERVICE DEALER CHECKED FOR RECALLS, BUT THERE WERE NONE., IT RANDOMLY HAPPENS, NORMALLY WHEN SLOWING DOWN FROM TRAVELING SPEEDS OF 45 MI/HR OR SLOWER. I HAVE BEEN DOING MORE HIGHWAY DRIVING AND I AM STARTING TO GET SCARED THAT THIS COULD BE A REAL SAFETY ISSUE. THE NEXT TIME I BROUGHT THIS UP TO THE DEALER, MAY 2013, THE SERVICE DEALER CHECK COMPUTER FOR CODES BUT DIDN'T FIND ANY. NOW, WHEN I BROUGHT IN FOR MAINTENANCE IN AUGUST 2013, SAME THING, MENTIONED IT HAD DIED 2 TIMES SINCE MAY 2013, ALL IN SIMILAR SITUATIONS AND RANDOMLY/COMPUTER CHECKED AND NO CODES.. TODAY, SEPTEMBER 7, 2013. IT JUST HAPPENED AGAIN AND THIS TIME AS I WAS MAKING A RIGHT HAND TURN FROM A BUSY STREET (45 MILES/HR WHEN IT DIED- NO POWER STEERING. GOOD THING I WAS ABLE TO COME TO A STOP BEFORE CROSSING THE MEDIAN INTO ONCOMING TRAFFIC AND NO ONE WAS RIGHT BEHIND ME. I WAS ABLE TO RESTART THE ENGINE AND DROVE VERY CAUTIOUSLY HOME! PLAN ON BRINGING IT IN AND LEAVING IT WITH THE DEALER ASAP.

Complaint Filed September 30, 2013 (**NHTSA ID Number:** 10546144)

9/26/13 - WHILE GOING UP TO THE NEXT LEVEL OF A PARKING STRUCTURE AT A SLOW SPEED, THE VEHICLE STALLED. PUT IT INTO PARK AND RESTARTED IT AND DROVE IT TO A PARKING SPOT. LATER THAT DAY WAS ABLE TO DRIVE IT TO THE DEALERSHIP; THEY HAVE HAD IT FOR 4 DAYS (2 OF WHICH WERE OVER THE WEEKEND). NO CODES REGISTERED IN THE COMPUTER SYSTEM; THEY ARE WAITING TO HEAR FROM A HYUNDAI TECH. ACCORDING TO RESEARCH ONLINE, THIS IS A COMMON (AND DANGEROUS) PROBLEM WITH THE SANTA FE. PRIOR TO THIS EPISODE, ON 2 OTHER OCCASIONS (9/13/13 AND 8/3/2012), WAS DRIVING THE VEHICLE AT 70MPG AND 50MPH RESPECTIVELY AND LOST POWER AND THE ABILITY TO KEEP OR INCREASE MY SPEED AND HAD TO PULL OVER AND GET TOWED TO THE DEALERSHIP, BOTH TIMES. THIS TOO APPEARS TO BE COMMON AMONG ONLINE FORUMS FOR SANTA FE'S. *TR

Complaint Filed October 7, 2013 (**NHTSA ID Number:** 10547093)

CAR HAS STALLED WHILE DRIVING THREE TIMES, ALL AT LOW SPEEDS. 3/4 TANK OF GAS, NO LESS. CAR ALSO WON'T START AT TIMES UNLESS YOU MOVE SHIFT LEVER. CAR IS UNDER WARRANTY AND DEALER KEEPS SAYING NOTHING WRONG. NOT STARTING IS VERY MINOR. CAR STALLING IN TRAFFIC IS A MAJOR SAFETY ISSUE. *TR

Complaint Filed October 27, 2013 (**NHTSA ID Number:** 10549692)

VEHICLE HAS STALLED IN TRAFFIC WHEN DRIVING UNDER 10MPH AND ALSO WHEN AT A STANDSTILL AT A FOUR WAY INTERSECTION. TOOK THE VEHICLE TO HYUNDAI DEALERSHIP 5.13.2013 AND A THROTTLE BODY PART WAS ORDERED AND INSTALLED 5.21.2013. VEHICLE AGAIN STALLED TWICE AT LOW SPEED AND ON 10.11.2013 (MILEAGE 37,710) AN ECM UPGRADE WAS DONE. YESTERDAY,10.26.2013, THE CAR STALLED AGAIN. *TR

Complaint Filed October 31, 2013 (**NHTSA ID Number:** 10550397)

MY ENGINE HAS STALLED AT SEVERAL OCCASIONS BEGINNING AROUND APRIL 2013. THE FIRST 2 EVENTS HAPPENED AS I WAS STOPPED AT A RED LIGHT. I PUT MY FOOT ON THE ACCELERATOR AND NOTHING HAPPENED I HAD TO RESTART THE CAR TO GET IT MOVING AGAIN. THE CAR HAS ALSO STALLED TWICE WHILE I WAS REVERSING INTO A PARKING SPOT AND ONCE AS I WAS TURNING A CORNER I LOST CONTROL OF THE STEERING FUNCTION IN THE

MIDDLE OF THE STREET. AS RECENTLY AS OCTOBER 2013 THE CAR STALLED AGAIN WHILE STOPPED AT A RED LIGHT. ALL OF THESE EVENTS HAPPENED AS I WAS STOPPED OR MOVING AT A LOW (LESS THAN 10 MPH) RATE OF SPEED. *TR

Complaint Filed November 11, 2013 (**NHTSA ID Number:** 10550475)

WHILE DRIVING AT SLOW SPEED 10-15 MPH AND BRAKING THE CAR COMPLETELY STALLED, ONCE WHILE TURNING LEFT AND ONCE WHILE GOING STRAIGHT. LOSS OF POWER STEERING AND POWER BRAKES AND NARROWLY AVOIDING HITTING ANOTHER VEHICLE. NO CHECK ENGINE LIGHT CAME ON AND NO CODES STORED. *TR

Complaint Filed December 19, 2013 (**NHTSA ID Number:** 10556649)

VEHICLE PICKED UP AFTER INSPECTION AT DEALER AND DRIVEN APPROX. 1 MILE WHEN VEHICLE EXPERIENCED SUDDEN LOSS OF POWER. TOOK BACK TO DEALER, MILLER HYUNDAI, AND THEY ADVISED NOTHING WRONG. THEN ON 11/11/13 SAME THING OCCURRED. MILLER HYUNDAI ADVISED THEY COMPLETED AN ECM UPGRADE. LEFT DEALER LOT AND DROVE APPROX. 1/2 MILE AND SAME THING OCCURRED. MILLER HYUNDAI THEN REPLACE THE THROTTLE BODY ON 11/14/13. ON 12/19/13 THE SAME THING OCCURRED, SUDDEN LOST OF POWER. THIS IS THE 4TH TIME IN 8 MONTHS THAT THIS HAS OCCURRED. *TR

Complaint Filed January 24, 2014 (**NHTSA ID Number:** 10561379)

TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE VEHICLE STALLED WITHOUT WARNING WHILE DRIVING AT VARIOUS SPEEDS. THE MALFUNCTION INDICATOR LIGHT ILLUMINATED AFTER THE FAILURE OCCURRED. THE CONTACT WAS ABLE TO RESTART THE ENGINE. THE FAILURE WAS EXPERIENCED SEVERAL TIMES. THE DEALER REPLACED THE THROTTLE BODY HOWEVER THE FAILURE WAS NOT CORRECTED AND THE ENGINE CONTINUED TO STALL WITHOUT WARNING. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 18,000 AND THE CURRENT MILEAGE WAS 22,000.

Complaint Filed January 31, 2014 (**NHTSA ID Number:** 10562419)

I WAS ON A FREEWAY ON RAMP THAT GOES DOWNHILL AND INVOLVES A CURVE TO THE RIGHT. ABOUT HALFWAY DOWN THE ON RAMP MY ENGINE STALLED. I HAD TO TURN MY WHEEL AS FAR RIGHT AS I COULD TO AVOID GOING OFF EMBANKMENT AND

COULD NOT ACCELERATE TO TRY TO MOVE AWAY FROM THE EDGE OF THE EMBANKMENT OR ATTAIN A SAFE SPEED TO MERGE ONTO FREEWAY. MY OIL LIGHT AND MALFUNCTION LIGHT BOTH CAME ON. I WAS ABLE TO GET TO THE SIDE OF THE ROAD AND TURN CAR OFF. WHEN I TURNED IT BACK ON ALL INDICATOR LIGHTS WERE OFF AND CAR DROVE FINE. I WAS INFORMED BY DEALERSHIP THERE HAS BEEN A RECENT SOFTWARE FIX FOR THIS THAT HAS TO DO WITH THE THROTTLE. *TR

Complaint Filed March 4, 2014 (**NHTSA ID Number:** 10566936)

MY 2012 HYUNDAI SANTA FE HAS LOST POWER TWICE WHILE DRIVING. THE FIRST TIME THIS OCCURRED WAS ON APRIL 11, 2013. IT HAPPENED AGAIN ON MARCH 1, 2014. BOTH TIMES THE VEHICLE SHUT OFF WHILE DRIVING AT A SLOW SPEED. THE FIRST TIME WAS ON A ROADWAY, THE SECOND TIME WAS IN A PARKING LOT. I HAVE READ OF SIMILAR EXPERIENCES ON THE INTERNET. I HAVE NOTIFIED THE DEALER AND HYUNDAI CUSTOMER SERVICE OF BOTH INCIDENTS. HYUNDAI HAS ADVISED THERE IS NOTHING THEY CAN REALLY DO UNLESS THEY ARE ABLE TO DUPLICATE THE ISSUE. *TR

Complaint Filed March 18, 2014 (**NHTSA ID Number:** 10573113)

THIS IS A FOLLOW UP TO THE COMPLAINT I MADE ON 5/13/2013. AT THAT TIME MY VEHICLE WAS AT THE DEALERSHIP TO TRY TO DUPLICATE THE PROBLEM I HAD BEEN HAVING WHICH WAS THAT MY CAR WOULD RANDOMLY STALL WHILE MAKING A TURN, WHETHER LEFT OR RIGHT. WHEN THIS HAPPENED THE PANEL WOULD LIGHT UP LIKE CHRISTMAS AND EVERYTHING INCLUDING THE BRAKES WOULD CEASE TO WORK. I HAVE TO COAST TO A SAFE LOCATION (IF POSSIBLE) TO TURN OFF CAR AND THEN RESTART IT. I HAVE BEEN VERY FORTUNATE THAT ME OR MY FAMILY HAVE NOT BEEN HIT WHEN THIS HAPPENS. UPDATE TO LAST REPORT: MY CAR STAYED AT THE DEALERSHIP FOR 3 WEEKS HOWEVER THE PROBLEM WAS NOT DUPLICATED. THEIR SOLUTION (HYUNDAI USA AND MY DEALERSHIP) WAS TO REPLACE THE THROTTLE BODY. EVERYTHING WAS FINE UNTIL THE SAME PROBLEM OCCURED ON 1/19/2014. I DON'T THINK HYNDAI USA WILL BE SATISFIED UNTIL THERE'S FATALITIES UNFORTUNATELY.

Complaint Filed March 24, 2014 (**NHTSA ID Number:** 10574618)

THE VEHICLE SHUT ITSELF OFF WHEN DRIVING LOCALLY AND ON HIGH WAY. THE DEALERSHIP COULD NOT EVEN MAKE A

DIAGNOSIS. HYUNDAI HEADQUARTERS REFUSED TO INVESTIGATE IT.

Complaint Filed March 25, 2014 (**NHTSA ID Number:** 10574730)

AFTER COMING TO A FULL STOP AT AN INTERSECTION, I ACCELERATED TO ENTER THE INTERSECTION AND TURN RIGHT. ALMOST IMMEDIATELY AS I PULLED INTO THE INTERSECTION, THE CAR STALLED AS THOUGH IT HAD DIED. I CONTINUED TO PRESS ON THE ACCELERATOR AND AFTER 3 TO 4 SECONDS, THE CAR LURCHED FORWARD, WITH FUEL FEED WORKING NORMALLY. I TOOK THE CAR TO MY LOCAL DEALER WHERE I BOUGHT THE CAR FOR INSPECTION. THEY TOOK THE CAR IN FOR TESTING AND SAID THEY COULD NOT FIND ANYTHING WRONG. THIS PROBLEM PERSISTED, WITH THE INCIDENTS BEING INFREQUENT. I REPORTED THIS PROBLEM EACH OF THE NEXT FEW TIMES THE PROBLEM RECURRED. EACH TIME I ASKED IF OTHERS HAD REPORTED THE SAME PROBLEM. EACH TIME I WAS TOLD THERE WERE NO SUCH COMPLAINTS, AND THAT THEY COULD NOT FIND A REASON FOR MY PROBLEM. FINALLY, I LEFT THE VEHICLE AT THE DEALER FOR SEVERAL DAYS WITH THE UNDERSTANDING THAT THEY WOULD DRIVE THE CAR FREQUENTLY, TRYING TO DUPLICATE MY PROBLEM. AFTER SEVERAL DAYS, THEY CALLED TO SAY THEY HAD EXPERIENCED THE PROBLEM AS I HAD REPORTED IT, AND THEY HAD FIXED IT. I ASKED WHAT WAS DONE, AND THE AGENT COULD/WOULD NOT SPECIFY WHAT THE CAUSE WAS, BUT THEY WROTE ON THE INVOICE THAT THEY HAD REPROGRAMMED TCM WITH TSB#11-AT-011-1. I THEN AGAIN QUERIED ABOUT OTHER COMPLAINTS, AND HE SAID THAT THERE HAD BEEN OTHER COMPLAINTS AFTER ALL, AND THIS SHOULD FIX THE PROBLEM. HOWEVER, I HAVE SINCE EXPERIENCED THE PROBLEM AGAIN AND FEAR THAT AN ACCIDENT IS POSSIBLE. THE LATEST: THEY ARE TAKING MY VEHICLE IN THIS THURSDAY FOR A MAJOR DIAGNOSIS "TO TRY TO FIND THE PROBLEM"., AGAIN.

Complaint Filed April 2, 2014 (**NHTSA ID Number:** 10576654)

TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 10 MPH, THE ENGINE STALLED WITHOUT WARNING. THE VEHICLE WAS COASTED TO THE SIDE OF THE ROAD. THE VEHICLE RESTARTED ON THE FIRST ATTEMPT AND OPERATED NORMALLY. THE FAILURE RECURRED ON A SEPARATE OCCASION. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER WHERE THEY WERE UNABLE TO DUPLICATE THE PROBLEM. THE MANUFACTURER WAS NOTIFIED

OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 10,000. UPDATED 05/28/14*LJ

Complaint Filed April 4, 2014 (**NHTSA ID Number:** 10577396)

TL* THE CONTACT OWNS A 2011 HYUNDAI SANTA FE. THE CONTACT STATED THAT WHILE DRIVING 20 MPH, THE VEHICLE STALLED. THE VEHICLE WAS NOT TAKEN TO A DEALER OR INDEPENDENT MECHANIC. THE MANUFACTURE WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 38,800 AND THE CURRENT MILEAGE WAS 38,920.

Complaint Filed April 8, 2014 (**NHTSA ID Number:** 10578264)

OUR 2012 HYUNDAI SANTE FE HAS SUDDENLY LOST POWER ON THREE OCCASIONS. THE FIRST TWO TIMES WE WERE DRIVING AT HIGHWAY SPEEDS, LOST POWER AND MANAGED TO GET TO THE SIDE OF THE ROAD WITHOUT BEING HIT FROM BEHIND. THE DEALER INITIALLY DID AN ECM UPGRADE AND AFTER THE SECOND INCIDENT REPLACED THE THROTTLE BODY ASSEMBLY. A YEAR LATER (MARCH 2014) THE SAME THING HAPPENED WHILE DRIVING ABOUT 15 MPH. UNLIKE THE PREVIOUS EPISODES, THERE WAS NO CODE AND THE DEALERSHIP COULDN'T REPLICATE THE PROBLEM. THEY TOLD ME TO TAKE THE CAR BUT I REFUSED BECAUSE IT WAS SUCH A SAFETY PROBLEM. AFTER TWO WEEKS WITH THE CAR THEY REPLACED THE THROTTLE BODY ASSEMBLY AGAIN. I AM CONCERNED THAT THIS IS GOING TO HAPPEN AGAIN AND TRIED TO WORK WITH THE DEALER TO REPLACE THE CAR BUT WITHOUT LUCK. I'VE SEEN ON THE INTERNET THAT THIS PROBLEM IS COMMON WITH THIS PARTICULAR CAR AND CAN'T UNDERSTAND WHY THERE ISN'T A RECALL. MANY PEOPLE EXPERIENCED THE SAME SCENARIO AS I DID AND ALSO BELIEVE THE NEXT TIME THEY COULD BE KILLED.

Complaint Filed April 21, 2014 (**NHTSA ID Number:** 10583791)

2011 HYUNDAI SANTA FE. CONSUMER WRITES IN REGARDS TO WHILE DRIVING VEHICLE ENGINE SHUT OFF AND CAR DIED. *SMD THE CONSUMER STATED WHEN HE SLOWED DOWN TO GO AROUND A CURVE, THE VEHICLE SHUT OFF. HE COULD BARELY GET THE VEHICLE TO THE SIDE OF THE ROADWAY, BECAUSE THERE WAS NO POWER STEERING OR POWER BRAKES. TECH SUPPORT, RECOMMENDED REPLACING THE THROTTLE BODY, SINCE THE DEALER COULD NOT FIND A PROBLEM. HOWEVER, ON MARCH 1, 2014, WHILE DRIVING IN A PARKING LOT AT 10 MPH, THE ENGINE SHUT OFF AGAIN. THE POWER STEERING AND BRAKES WERE NOT

OPERABLE. HE LET THE VEHICLE SIT FOR SEVERAL MINUTES BEFORE RE-STARTING IT. THE CONSUMER RETURNED TO THE DEALER, AND AFTER A THOROUGH EXAMINATION, THEY WERE UNABLE TO DUPLICATE THE PROBLEM. *JB

Complaint Filed April 28, 2014 (**NHTSA ID Number:** 10585396)

SINCE PURCHASED NEW IN 2011, VEHICLE HAS STALLED, LOSING POWER WITHOUT WARNING IN 6 SEPARATE INCIDENTS. ROAD SURFACES WERE LEVEL AND SPEEDS RANGED FROM 0-50 MPH. DURING EACH MALFUNCTION, SPEED DECREASED TO 0 MPH OR DID NOT ACCELERATE IF ALREADY AT 0 MPH. LOSS OF SPEED IS ACCOMPANIED BY PRESENCE OF ENGINE, BATTERY, AND OIL INDICATOR LIGHTS. I AM ABLE TO SHIFT FROM DRIVE TO PARK MODE, COMPLETELY TURN OFF ENGINE, AND RESTART IGNITION. VEHICLE APPEARS TO OPERATE NORMALLY AFTER EACH INCIDENT UNTIL NEXT ONE OCCURS. ALL BUT TWO INCIDENTS OCCURRED INTERMITTENTLY MONTHS APART ON METROPOLITAN INTERSTATE HIGHWAYS WITH HEAVY TRAFFIC CONDITIONS. TWO MOST RECENT INCIDENTS OCCURRED ON SAME DAY WITHIN MINUTES OF EACH OTHER. EVERY TIME VEHICLE WAS TAKEN TO AUTHORIZED DEALER FOR EVALUATION, TYPICALLY WITHIN HOUR OF INCIDENT, TECHNICIANS HAVE BEEN UNABLE TO DUPLICATE PROBLEM OR DIAGNOSE MALFUNCTION. CONSEQUENTLY, VEHICLE HAS NOT BEEN REPAIRED. ACCORDING TO 4 AUTHORIZED DEALERS AND HYUNDAI CONSUMER AFFAIRS, TROUBLE CODE IS NECESSARY TO REPAIR MALFUNCTION. TWO AUTHORIZED DEALERS HAVE EVALUATED VEHICLE WITHOUT DIAGNOSING MALFUNCTION. NEITHER HAS BEEN ABLE TO DUPLICATE PROBLEM OR FIND TROUBLE CODE, DESPITE MAINTAINING POSSESSION OF VEHICLE FOR DAYS. BASED ON MY HISTORY OF COMPLAINTS ABOUT SAME SAFETY CONCERN, HOWEVER, TECHLINE ADVISED AUTHORIZED DEALER TO REPLACE ELECTRIC THROTTLE CONTROL MOTOR: PROCEDURE DONE IN OCTOBER 2013, YET STALLING/LOSS OF POWER OCCURRED AGAIN-- TWICE--IN APRIL 2014. SPORADICALLY RECURRING MALFUNCTION REMAINS UNRESOLVED. I HAVE TWO SEPARATE CASES FILED WITH HYUNDAI CONSUMER AFFAIRS. VEHICLE IS UNDER WARRANTY, UP-TO-DATE ON MAINTENANCE, AND HAS ACCUMULATED RELATIVELY LOW MILEAGE TO DATE AT APPROXIMATELY 37,000 MILES.**4/16/2014**STALLED/LOST POWER TWICE, 2-3 MINUTES BETWEEN INCIDENTS. TOWED TO AUTHORIZED DEALER; CURRENTLY AWAITING INSTRUCTIONS FROM TECHLINE.

Complaint Filed May 11, 2014 (**NHTSA ID Number:** 10587679)

DRIVING APROX 20 MPH, WITH NO WARNING ENGINE SHUTS DOWN, UNABLE TO STEER. SECOND TIME WAS DRIVING AT 40 MPH. THIS HAS HAPPENED THREE TIMES. DEALER CANNOT FIND OR REPRODUCE PROBLEM.

Complaint Filed May 26, 2014 (**NHTSA ID Number:** 10594085)

THIS IS THE SECOND INCIDENT. THE FIRST WAS IN SEPTEMBER 2013. BOTH TIMES I WAS TRAVELING AT 15 MPH WHEN THE CAR ENGINE STALLED AND I LOST STEERING POWER AND BRAKING POWER. I WAS ABLE TO PULL OVER TO SIDE OF ROAD AND PUT CAR IN PARK IT THEN RESTARTED. ENGINE WARNING LIGHT CAME ON BOTH TIMES. I CALL HYUNDAI CUSTOMER SERVICE AND WAS TOLD TO HAVE CAR TOWED TO CLOSEST DEALER WHICH IS OVER 60 MILES FROM ME. THEY ARE NOT SURE IF I WILL BE REIMBURSED FOR TOWING FEES THIS FAR

Complaint Filed June 5, 2014 (**NHTSA ID Number:** 10596478)

WHILE DRIVING THE ENGINE DIED SUDDENLY, I WAS ABLE TO RESTART THE ENGINE. THIS HAS HAPPENED MULTIPLE TIMES AND IS VERY DANGEROUS FOR A REAR END COLLISION, I HAVE TAKEN THE CAR TO HYUNDAI DEALERSHIPS BUT THEY ARE UNABLE TO DUPLICATE THE PROBLEM AND SAY THAT THEY CAN'T FIND ANYTHING WRONG WITH THE VEHICLE. I HAVE NOTIFIED HYUNDAI OF THE PROBLEM AND THEY JUST TELL ME TO TAKE IT TO A DIFFERENT DEALERSHIP. I HAVE RESEARCHED THIS ISSUE ON THE INTERNET AND THERE SEEMS TO BE MANY HYUNDAI OWNERS HAVING THE SAME ISSUE WITH THE SAME YEAR AND MAKE OF VEHICLE. THERE DOESN'T SEEM TO BE A FIX FOR THIS PROBLEM THAT HYUNDAI IS AWARE OF. PLEASE HELP! THANK YOU

Complaint Filed June 6, 2014 (**NHTSA ID Number:** 10596575)

TL* THE CONTACT OWNS A 2010 HYUNDAI SANTE FE. THE CONTACT STATED THAT WHILE DRIVING THE VEHICLE STALLED. ADDITIONALLY, WHILE AT A STOP LIGHT THE VEHICLE WOULD NOT ACCELERATE WHEN THE ACCELERATOR PEDAL WAS ENGAGED. THE VEHICLE WAS TAKEN TO A DEALER, WHO WAS UNABLE TO DETERMINE THE CAUSE OF FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 50,000. THE CURRENT MILEAGE WAS 70,000.

Complaint Filed June 8, 2014 (**NHTSA ID Number:** 10596915)

VEHICLE DRIVEN SHOPPING CENTER (APPROXIMATELY 15 MI.) UPON LEAVING VEHICLE STALLED GOING APPROXIMATELY 15 MPH. STEERING CUT OUT AND DIFFICULT, BUT WAS ABLE TO GET TO THE SIDE OF THE ROAD. WAS ABLE TO RESTART VEHICLE AFTER APPROXIMATELY 3 MINUTES. GAS WAS PURCHASED APPROXIMATELY 1 WEEK PRIOR AND VEHICLE RAN FINE. WILL TAKE TO THE DEALER, BUT BASED ON OTHER REPORTS I DO NOT EXPECT THEM TO FIND ANY PROBLEMS.

Complaint Filed June 10, 2014 (**NHTSA ID Number:** 10597317)

TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED THAT WHILE TRAVELING 60 MPH, THE VEHICLE STALLED AS ALL INDICATORS LIGHTS ILLUMINATED ON THE INSTRUMENT PANEL. THE VEHICLE WAS TOWED TO THE DEALER. THE TECHNICIAN DIAGNOSED THAT THE ECM CARBURETOR WAS DEFECTIVE AND NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS REPAIRED BUT THE FAILURE HAS RECURRED SEVERAL TIMES. THE FAILURE AND CURRENT MILEAGE WAS 24,741.

Complaint Filed June 12, 2014 (**NHTSA ID Number:** 10597887)

TL* THE CONTACT OWNS A 2010 HYUNDAI SANTA FE. THE CONTACT STATED WHILE MAKING A LEFT TURN, THE VEHICLE STALLED WITH NO WARNING. THE CONTACT HAD TO APPLY EXTREME FORCE TO TURN THE STEERING WHEEL AND WAS ABLE TO MERGE TO THE SIDE OF THE ROAD. THE CONTACT WAS ABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER. THE TECHNICIAN WAS NOT ABLE TO NEITHER REPLICATE NOR DIAGNOSE THE FAILURE.THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 30,800.

Complaint Filed June 16, 2014 (**NHTSA ID Number:** 10598590)

MY FAMILY HAS A 2012 HYUDAI SANTA FE. WE STARTED EXPERIENCING PROBLEMS WITH THE VEHICLE STALLING WHILE DRIVING IN 2013. THE CAR STALLED MULTIPLE TIMES ON CITY STREETS AND ONCE ON THE HIGHWAY. WHEN THE CAR STALLS, THE DRIVER LOSES POWER STEERING AND BRAKES. IT IS A VERY DANGEROUS SITUATION. AFTER THE THIRD TIME THE CAR STALLED WE TOOK IT IN FOR SERVICE IN APRIL OF 2013 TO THE LOCAL HYUNDAI DEALERSHIP. THE TECHNICIAN RAN A COMPLETE

DIAGNOSTIC AND SAID HE COULD NOT FIND ANYTHING WRONG WITH THE VEHICLE. WE REFUSED TO TAKE THE CAR AT THAT TIME AND INSISTED ON MORE TESTING. THEY DID FIND A PROBLEM. THEY REPLACED/REPAIRED THE ETC-ACTUATOR AND GASKET-THROTTLE BODY. THE CAR RAN FINE UNTIL LAST WEEK WHEN IT STARTED THE SAME PROBLEMS AGAIN. IT HAS STALLED FOUR TIMES IN THE LAST WEEK. THE LATEST STALL HAPPENED TODAY WHEN MY GIRLFRIEND WAS DRIVING THE CAR AT AROUND 30 MPH. IT ALSO STALLED LAST NIGHT WHEN I WAS DRIVING IT HOME AT ABOUT 25 MPH. I WAS ABLE TO GET TO THE SIDE OF THE ROAD AND PUT THE CAR IN PARK. I TURNED THE KEY AND IT STARTED RIGHT UP AGAIN. WHEN IT STALLED ON ME, I LOST POWER STEERING AND POWER BRAKES. THE TIME OF THE INCIDENT WAS 9:48PM AND THE MILEAGE ON THE CAR WAS 72,917. IT WAS VERY SCARY. WE ARE TAKING CAR TO HYUNDAI DEALERSHIP TODAY FOR REPAIRS. WE DO NOT WANT TO DRIVE THIS CAR ANYMORE. IT IS UNSAFE AND A HAZARD.

Complaint Filed June 26, 2014 (**NHTSA ID Number:** 10606094)

AFTER DRIVING TO WORK (APPROXIMATELY 27 MINUETS AT SPEEDS UP TO 70+) I PULLED INTO MY WORK PARKING LOT LIKE I HAVE DONE THOUSANDS OF TIMES BEFORE. I PROCEEDED TO MAKE A RIGHT TURN AND ALL POWER FAILED ON VEHICLE. THE RADIO DISPLAY WENT DEAD AND THE CAR STOPPED MID TURN. IT WAS ALMOST LIKE WHEN YOUR POWER GOES OUT AT HOME DURING A STORM. I TRIED SHIFT THE CAR TO SEE IF IT WOULD WANT TO START BACK UP BUT IT DIDN'T LET THE KEY GO ALL THE WAY TO THE RIGHT LIKE YOU WOULD TO NORMALLY CRANK A VEHICLE. THE PANEL ILLUMINATED ALL ICONS AND LIGHTS (SIMILAR TO A POWER OUTAGE). I TRIED TO START THE CAR A FEW MORE TIMES WHEN FINALLY IT TURNED OVER AND I PULLED TO THE NEAREST PARKING SPACE. I IMMEDIATELY CALLED THE DEALERSHIP AND EXPLAIN WHAT HAPPENED. I HAD ROADSIDE TOW IT TO THE DEALERSHIP (SPORT DURST). AFTER HAVING THE VEHICLE ALL DAY, I ARRIVED THERE SLIGHTLY BEFORE 5PM TO DISCUSS WHAT WAS FOUND. THEY PROCEEDED TO SHOW ME A PRINT OUT OF THE COMPUTER READING WHERE IT HAD NO "CODES" PRESENT. I WAS THEN TOLD IF THEY DON'T HAVE A CODE, THEY DON'T KNOW WHERE TO LOOK FOR THE ISSUE. I THEN EXPLAINED THAT I WAS LUCKY THIS TIME THAT I WAS NOT IN TRAFFIC OR THAT ANOTHER CAR WASN'T BEHIND ME OR THAT IT WASN'T AT NIGHT IN AN UNSAFE AREA BUT AS A CAR OWNER WHY AM I EXPECTED TO ROLL THE DICE WITH MY SAFETY?? WHY CAN'T THEY DO WHAT IT TAKES TO GET TO THE BOTTOM OF THE ISSUE. I DON'T LIKE BEING AT ANY DEALERSHIP WASTING MY EVENING

HAGGLING WITH THEM MORE THEN THEY DO. THEREFORE I HAVE NO REASON TO MAKE IT UP. THE SERVICE MANAGER TRIED TO EXPLAIN THAT HIS HANDS WERE TIED AND THAT FOR THE WARRANTY TO BE USED TO CHECK ALL POTENTIAL ISSUES (WITHOUT ANY "CODES") I WOULD HAVE TO BE RESPONSIBLE FOR THE BILL UNLESS THEY FIND SOMETHING WHICH I FEEL IS UNFAIR WHEN THE CAR IS 2 YEARS OLD WITH 40,000 MILES. I WAS THEN TOLD WHEN IT HAPPENS NEXT TIME... RECORD IT...

Complaint Filed July 11, 2014 (**NHTSA ID Number:** 10609836)

TL* THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. THE CONTACT STATED THAT WHILE DRIVING 30 MPH, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT WAS ABLE TO RESTART THE VEHICLE AFTER THE FAILURE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 5,000 AND THE CURRENT MILEAGE WAS 7,000.

Complaint Filed July 14, 2014 (**NHTSA ID Number:** 10610396)

I HAVE HAD THE ENGINE STALLMENT ISSUE WITH MY 2010 SANTA FE LIMITED SINCE I BOUGHT THIS CAR NEW IN 2010. MY LAST 4 INCIDENTS HAVE BEEN REPORTED TO THE DEALER. THEY HAVE NOT BEEN ABLE TO DUPLICATE THE ISSUE NOR FIND ANY CODES FOR IT. THEY HAVE PERFORMED THE FOLLOWING FIXES ON MY CAR IN 4 SEPARATE ATTEMPTS WITH NO LUCK: - REPLACE THROTTLE BODY (2013) - REPLACE MAIN POWER CABLE - REPLACE COMPUTER'S MAIN BOARD - UPDATE SOFTWARE THIS IS AN EXTREMELY DANGEROUS ISSUE. LAST TIME IT HAPPENED I WAS DRIVING MY CAR ON A DOWNHILL RAMP TO ENTER THE FREEWAY WHEN THE ENGINE STALLED. I CAN STILL HEAR THE CONCRETE TRUCK'S BRAKE SOUND IN MY EARS WHEN IT DESPERATELY MANAGED TO STOP AND AVOID COLLISION. I DON'T FEEL SAFE TO DRIVE THIS CAR ANYMORE. I HAVE ALSO LOST MY CONFIDENCE IN THE DEALER'S ABILITY TO PERMANENTLY FIX THIS ISSUE.

Complaint Filed July 16, 2014 (**NHTSA ID Number:** 10611004)

WHEN MAKING A RIGHT HAND TURN AT SLOW SPEED THE CARS STALLS OUT. TODAY 7/16 IS THE 3RD TIME THIS HAS HAPPENED. THE SAME EVENT HAPPENED TWICE IN THE SAME WEEK ABOUT 6 MONTHS AGO THEN NOT AGAIN. THIS SOUNDS TOO SIMILAR TO THE PROBLEMS W/ GM CARS.

Complaint Filed July 17, 2014 (**NHTSA ID Number:** 10611285)

ON MONDAY, JULY 14, 2014, MY WIFE RODE HER SANTA FE ON A
STRAIGHT ROAD ACCELERATING SLIGHTLY UPHILL WHEN THE
ENGINE STALLED. ON THURS. DEC. 5, 2013, I HAD A SIMILAR
EXPERIENCE, WHICH I REPORTED TO YOU AT THE TIME. THIS IS
THE SECOND TIME THIS HAS HAPPENED WITH THIS CAR. AGAIN
NOBODY TOUCHED THE IGNITION KEY WHICH HAS NOTHING
HANGING ON IT EXCEPT THE ALARM AND DOOR LOCK DONGLE.
MY WIFE ALSO SUDDENLY LOST POWER STEERING AND POWER
BRAKES, AND LUCKILY THERE WAS NO OTHER TRAFFIC, WHICH
COULD HAVE CAUSED AN ACCIDENT. SHE WAS ABLE TO BRING
THE CAR TO A SAFE STOP AND THEN WAS ABLE TO RESTART THE
ENGINE AND CONTINUE HER TRIP. THE 2010 CAR HAD A FULL TANK
OF GAS AND HAS ABOUT 50000 MILES ON THE ODOMETER. IT'S AWD
AND HAS A 6 CYL. ENGINE. COULD THIS BE RELATED TO THE
IGNITION SWITCH PROBLEM THAT HAS PLAGUED SO MANY GM
CARS? NEEDLESS TO SAY WE ARE WORRIED DRIVING THE CAR
BECAUSE IF THIS INCIDENT OCCURS AT HIGH SPEED, A SERIOUS
ACCIDENT COULD BE THE RESULT. DO YOU KNOW OF ANY SIMILAR
EXPERIENCE? WHAT DO YOU ADVISE? ALBERT NILLE

74.    The consumer website carcomplaints.com contains similar accounts.    For
example:[8]

Complaint Dated December 1, 2011

2011 Hyundai Santa Fe Limited. Has stalled three times in the seven months
we've had it. Bought it new. Completely dies- no engine lights or anything. If I
turn the car off and then back on, it seems fine. I've taken the car back in to the
dealership where it was purchased (and serviced) and they've held it for at least
a week each time, claiming they've done everything Hyundai reps have told
them to do. They're telling me the car is ready to be picked up, and that they
can't find anything wrong. Has happened when I was driving (accelerating after
a red light), while my husband was driving (going over a speed bump), and once
in traffic- while accelerating. Dangerous, especially with two little kids in the
car and the power steering goes. Glad i wasnt going faster. Have read psts where
others haven't been as lucky. Dealership has told me they have no reason to hold
the car, and if I want to I can call the 1-800 number for Hyundai. Should I be
looking into the Lemon Law? While searching for info, I'm finding a lot of
stalling issues with these newer Santa Fe models!

---

[8] *See*
http://www.carcomplaints.com/Hyundai/Santa_Fe/2012/engine/Engine_Stalls_Stops.shtml

Complaint Dated August 6, 2012

The engine stalls at least weekly. Many times of dropping off the vehicle to the dealership, with no answer at all. The dealership and the Hyundai USA is kicking this back and forth each other.  - **poorhyundaisantafe**, Clementon, NJ, USA

Complaint Dated August 12, 2012

This is dangerous because the car just stops working dead in its tracks without any indication that there is a problem. One is not safe.  - **Janet D.**, Chapel Hill, NC, USA

Complaint Dated April 15, 2013

The car has simply died in the middle of the road, 2 times. 1st time (26k miles) on a 2 lane highway with a lot of traffic going about 40mph coasting on a slight downhill. Fortunately, I was able to pull to the side without incident, despite loss of steering and power brakes. Second time, (51k miles) slowing down to turn into my driveway. stalled during my turn, losing the steering I missed hitting my mailbox by inches.

Both times I took into Hyundai service & they could not replicate the problem. The 1st time, they replaced wires that were connected to battery? I don't know why, it is not a starting problem. Any suggestions?  - **Cathy P.**, Fremont, CA, USA

Complaint Dated May 24, 2013

This car is a lemon. It suddenly loses power at any speed between 40-80 miles per hour. Dealer has replaced the throttle body three times, supposedly they claim its a "software" update that's needed. It is a gas hog, worse than my v-8 Chevy Tahoe. It is totally unreliable.  - **Oscar M.**, PLantation, FL, USA

Complaint Dated June 4, 2013

Just want to relate that at 6am on my way to work, my car died after I stopped at a stop sign. All was dead, except for three light on the dash. I was in drive when it happened and I immediately put the car into park, tried to start it and nothing happened. Tried three times and nothing happened. No noise - nothing. then when I was about to panic, it started. I reported it to the dealership as this is a lease car. Probably they won't find any problem. I took it to a reptable mechanic that said nothing will show on the computer when I do take it in because nothing registered when I tried to start it. He said it wasn't the gas and was probably electric. I just hope it doesn't happen again. I'm already upset about the creaky console that they've already replaced once. It still creaks and this will be the

deal breaker for me keeping the car. Otherwise it's an okay car.  - **sschryer**, Lakewood, CO, USA

Complaint Dated September 7, 2013

This is a dangerous problem. This is the first time I am reporting this online, but have talked to the dealer service department 2 times before today's incidence. Bought this new at the end of April 2012. It died when slowing down - coming to a stop sign twice that first summer. Didn't think too much of it, but unusual. Next it happen in Sept 2012 while making a turn on a residential street.
These two type of issues have happened a total of 6 times since I purchased it. Today, takes the cake - as I was turning from one busy street (approx 40 mi/hr) slowing down and into another busy street approx 30 mph when it died. I lost power steering and almost turned into oncoming traffic. Hyundai service, looks at the computer and says it does not record anything and I should leave it next time to see if they can duplicate it.  - **Cathy T**., Elk Grove Village, IL, USA

75.     The following question was posted on the website cargurus.com on December 28, 2011: "My SF stalled on a slow speed right turn.  No engine code was produced.  Anyone else experienced this problem?  It is a 2011 Limited."   Thirty-eight responses have been posted to date, most by fellow Santa Fe owners who experienced the Stalling Defect under various conditions.[9]

76.     On October 5, 2011 the following consumer report was posted on the well-known review site edmunds.com:

I bought my 2010 Santa Fe V6, full option, last year. I've been having problems from the start. I noticed a violent jerk and sounded like my transmission fell off. I took it in to the dealer but they couldn't find anything wrong. My wife drives the Santa Fe, and the engine shut down on her twice. When we took it to the dealer, he gave us a rental for a week while they test drove it. Again, they didn't find anything wrong with it. Last month, when I was driving, I was making a left turn and when I stepped on the gas, the car was not moving, only the engine revved up. I hope people read this and never buy this crap. I am Korean-American and I will NEVER buy Korean crap again. Thank you.[10]

77.     In addition, the following comments were posted on a popular user forum:

---

[9] *See* http://www.cargurus.com/Cars/Discussion-t42005_ds511688
[10] *See* http://www.edmunds.com/hyundai/santa-fe/2010/consumer-reviews/2/?sub=suv

Complaint Dated August 26, 2010

I purchased a new 2010 Sante Fe SE automatice in March. Three times now I have had the car "shut down" on me. Either while turning into my driveway or turning onto a side street, so all at a very low speed. I feel the power steering cut off and the dash lights light up bur engine halts. I shift into Par, restart the key and continue on. The dealer checked the first time and found nothing showing as an issue on the computer diagnostic test. The second time, I called and no call back to me. Now happened again. Have a call in to my sales rep. Anyone else experience this? Never on any car I have ever owned. My car is great otherwise, with about 8K miles on it. Thank you[11]

Complaint Dated October 1, 2010 (in response to above comment)

Dee- I just had the exact same thing happen to my 2010 santa fe w/ 5 thou miles on it. Pulling into my driveway the car just shut off. I restarted it and it was fine. I intend to bring to the dealer, but if you find out anything , please post, Will do same.

Mark[12]

Complaint Dated September 26, 2011 (in response to above comment)

Hi,

I had the same problem twice with y 2010 santa fe w 4,000km. The first time my husband reduced the speed in a small street and it stopped and the 2nd time I happened this morning: I stopped at stop sign and the engine stopped. OMG, I bought this car and won't be able to return it. The dealer just told me there's no code shown on their computer analysis. Please keep post to see if there's any solution to this problem. Thanks[13]

78.    Similarly, the popular owner forum found at hyundai-forums.com has multiple stalling complaints placed over a period of years.  For example, the following colloquy was posted on October 25, 2011:

---

[11] *See* http://www.topix.com/forum/autos/hyundai-santa-fe/TV6RNLE6GCS996FP0
[12] *See*  http://www.topix.com/forum/autos/hyundai-santa-fe/TV6RNLE6GCS996FP0/p2
[13] *See* http://www.topix.com/forum/autos/hyundai-santa-fe/TV6RNLE6GCS996FP0/p2

334901.1 HYUNDAISANTAFE

Forum member "xtaski" posted:

Scared me half to death. Yesterday while driving (coming down a very steep hill), I applied brakes softly as I had to make a right turn in about 300 feet. I noticed I had no braking power and was unable to turn the car so I coasted into a nearby parking lot. All the lights were on the car but it seemed dead. I turned the key off and made a call to see if my spouse could come and get me. While talking to him, I turned the car on and it started and off I drove with no further problems.

This is horrible. I can't imagine if I were on the interstate at 70 miles an hour. I was debating calling Hyundai and having them tow it but closest Hyundai garage is a 2+ hour drive. When I called to make an appointment with Hyundai service they acted like it has never happened before. Now I am stuck driving it on the interstate for over 2 hours and believe me I am very nervous.

Any ideas?

Forum member "lovemysantafe" posted:

Oh, boy. Welcome to the club of Santa Fe owners whose cars stall randomly. You are member number two.

First comes the bad news; mine has done it five times in the last year and has never once thrown a code. The dealership is stumped as is TechLine who suggested the dealer replace the camshaft position sensor as a shot in the dark. It didn't fix the problem and I have given up on letting them try and because of that, it has become an occasional annoyance that I have just learned to live with.

Here is some good news: It has NEVER done it under throttle and never at speeds greater than 15 MPH (24 KPH). After five or six incidents, I have noticed it comes around only after repeated short trips of slow-speed driving although I've yet to be able to actually cause it by doing so. There is an X-factor in there I just haven't been able to isolate yet.

To be sure you are experiencing the same problem as I, there are a few criteria that I need you to confirm.

1. Were you applying **any** throttle at the time of the stall? Yes or no?

2. What was your speed at the time of the stall. I don't need a scientific measurement, just a guesstimate.

3. Did it do it so quietly and so subtly that you didn't notice until you needed a power-assisted function.

Your reply is most appreciated because now that I know I'm not alone, I'm hoping we can team up against Hyundai and finally get this figured out once and for all.[14]

79. As detailed by way of example above, scores of consumers have reported experiencing the Stalling Defect through NHTSA's website and other online sources.

80. The existence of the Stalling Defect is a material fact that any reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members been made aware of the Stalling Defect, they would not have purchased the Class Vehicles or would have paid less for them.

81. Reasonable consumers, like Plaintiffs, expect that a vehicle will function in a manner that will not pose a safety hazard, and will be free from defects. Plaintiffs and Class Members further reasonably expect that Defendants will not sell or lease vehicles with a known safety defect, and will disclose any such defect when it becomes known.

82. Defendants had superior and exclusive knowledge of the Stalling Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles. Plaintiffs are informed and believe, and based thereon allege, that before Plaintiffs purchased their Class Vehicles, and since as early as 2009, Defendants acquired their exclusive knowledge of the Stalling Defect through sources not available to Plaintiffs and Class Members. These sources include, but are not limited to, the following: pre-production testing, pre-release testing data, early consumer complaints made exclusively to Defendants and their dealers, including high warranty reimbursement rates and repair orders, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Defendants'

---

[14] *See* http://www.hyundai-forums.com/187-cm-2007-2012-santa-fe/133580-2011-santa-fe-stall-while-driving.html

dealers, and repair order and parts data received by Defendants from Defendants' network of dealers.

83.     In addition, Defendants were made aware of the Stalling Defect through online complaints which were publicly available, and, on information and belief, actively monitored by Defendants.

84.     On information and belief, Defendants were also made aware of the Stalling Defect by additional complaints made by consumers directly to Defendants but not publicly reported.  As illustrated above, a significant number of consumers took the time to document their complaints with NHTSA and on other public websites.  Such complaints typically represent only a fraction of actual complaints as many consumers are not inclined to document their problems publicly.  On information and belief, many more consumers contacted Defendants directly as early as the release of the 2010 model (*i.e.*, in late 2009) to report manifestations of the Stalling Defect.

85.     The fact that Defendant was made aware of the Stalling Defect years ago is made all the more plausible by the manner in which the defect manifests and its seriousness.  The publicly available complaints show that the defect has a tendency to recur repeatedly and places drivers in an extremely perilous position.  The frequency of the defect and its seriousness, as well as the number of public complaints, create a plausible inference that Defendants received many more complaints than are available online and were made keenly aware of the Stalling Defect early.  On information and belief, Defendants actively concealed the Stalling Defect to avoid the economic impact of notifying consumers and taking responsibility.

86.     The fact that Defendants have been aware of the Stalling Defect for years is also evidenced by Defendants' efforts to address the issue through a series of service

bulletins. As discussed above, Defendants issued multiple TSBs regarding the Santa Fe throttle body and ECM which were implemented to address the Stalling Defect. The first of these bulletins, TSB 10-FL-009 regarding throttle body cleaning, was issued in 2010 and superseded by TSB 13-FL-002 in April 2013. (*See* Exs. A and B, respectively). Not including Defendant's recent Service Campaign, at least three TSBs concerning engine power and/or idle problems have been issued: TSB 11-AT-001 dated January 11, 2011; TSB 12-FL-004 dated April 2012 and TSB 12-FL-008 dated November 2012. (*See* Exs. C, D and E, respectively). On information and belief, each of these TSBs was the product of months, if not years, of internal analysis and evidence Defendants' knowledge of a longstanding defect in its vehicles.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS

87. Because the Stalling Defect in the Class Vehicles cannot be detected until manifestation, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

88. Plaintiffs and Class Members had no realistic ability to discern that their vehicles were defective until they stalled repeatedly, nor would Plaintiffs and Class Members have reason to believe that problems they encountered were caused by a widespread, systematic defect.

89. Plaintiffs are informed and believe, and based thereon allege, that Defendants have known of the Stalling Defect since at least 2009, if not earlier, and have concealed from or failed to alert owners and lessees of the Class Vehicles of their defective nature.

90. Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein. Defendants are further

estopped from relying on any statute of limitation because of their concealment of the defective nature of the Class Vehicles.

## VII. CLASS ACTION ALLEGATIONS

91. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class and Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

92. The Class and Sub-Class are defined as follows:

**Class**: All persons or entities in the United States who purchased or leased any 2010 through 2012 model year Hyundai Santa Fe vehicle with a 3.5L engine.

**New York Sub-Class**: All persons or entities in the State of New York who purchased or leased any 2010 through 2012 model year Hyundai Santa Fe Vehicle with a 3.5L engine.

93. Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

94. <u>Numerosity</u>: The Class here numbers in the tens of thousands, making joinder impracticable. The disposition of the claims of these Class Members in a single action will

provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

95. <u>Typicality</u>: The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased and leased a Class Vehicle designed, manufactured, and distributed by Defendants and subject to the Stalling Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

96. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

(a) Whether the Class Vehicles contain a defect that causes stalling;

(b) Whether the Stalling Defect constitutes an unreasonable safety risk;

(c) Whether Defendants knew about the Stalling Defect and, if so, how long Defendants have known of the defect;

(d) Whether the Stalling Defect constitutes a material fact to consumers;

(e) Whether Defendants have a duty to disclose the Stalling Defect to Plaintiffs and putative Class Members;

(f) Whether Plaintiffs and other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(g) Whether Plaintiffs and other Class Members are entitled to damages;

(h) Whether Defendants should be declared financially responsible for notifying all Class Members of the Stalling Defect and for the costs and expenses of repairing the defect;

(i) Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, and replace their vehicles due to the Stalling Defect; and

(j) Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

97. <u>Adequate Representation:</u> Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

98. <u>Superiority:</u> Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal

litigation because class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of the adjudication.

99.    In the alternative, the Class and Subclass may be certified because:

(a)  The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

(b)  The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

## FIRST CAUSE OF ACTION

### Violations of California Consumers Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq*.)

100.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

101.    Plaintiffs Reniger, Battaglia and Saitta bring this cause of action on behalf of themselves and on behalf all Class Members nationwide who are "consumers" within the meaning of California Civil Code § 1761(d).

102.    Each Defendant is a "person" as defined by California Civil Code § 1761(c).

103. Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

104. By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiffs and prospective Class Members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

105. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

106. Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

107. As a result of their reliance on Defendants' omissions and/or misrepresentations, Plaintiffs and Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Specifically, as a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members bought or leased vehicles that they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and the Class Vehicles suffered a diminution in value. Additionally, as a result of the Stalling Defect, Plaintiffs and Class Members were harmed and suffered actual damages because the Class Vehicles are substantially certain to fail before their expected useful life has run.

108. Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and/or the associated repair costs because:

(a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles;

(b) Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their vehicles had a dangerous safety defect until it manifested; and

(c) Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

109. In failing to disclose the defective nature of the Class Vehicles, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

110. The facts Defendants concealed from or did not disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them. Had Plaintiffs and other Class Members known that the Class Vehicles were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

111. As a result of Defendants' conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience the Stalling Defect.

112. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

113. Plaintiffs and the Class are entitled to equitable relief.

114. Pursuant to California Civil Code § 1782(a), by letter dated August 7, 2014 Plaintiffs notified Defendants in writing of their particular violations of the CLRA and demanded that Defendants rectify the problems associated with the behavior detailed above,

which acts and practices are in violation of Civil Code § 1770. True and correct copies of Plaintiffs' CLRA letters to Defendants are attached hereto as Exhibit Q and R.

115.    Defendants failed to adequately respond to Plaintiffs' above described demands and failed to give notice to all affected consumers, pursuant to California Civil Code § 1782.

116.    Plaintiffs seek an order enjoining the acts and practices described above, restitution of property, and any other relief that the Court deems proper.

117.    Plaintiffs additionally seek damages, restitution, punitive damages, attorneys' fees and costs, and any other relief under § 1780(a) of the CLRA pursuant to Civil Code § 1782(d), due to Defendants' failure to rectify or agree to adequately rectify their violations as detailed above.

118.    Plaintiff Greg Battaglia's Declaration of Venue, as required under California Civil Code § 1780(d), which reflects that a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in the Northern District of California, is attached hereto as Exhibit S.

## SECOND CAUSE OF ACTION

### Violations of California Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

119.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

120.    Plaintiffs Reniger, Battaglia and Saitta bring this cause of action on behalf of themselves and on behalf of all Class Members nationwide.

121.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

122. Plaintiffs and Class Members are reasonable consumers who do not expect their vehicles to randomly stall and lose all power, including steering and braking, while in operation.

123. Defendants knew the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

124. In failing to disclose the defects in the Class Vehicles, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

125. Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles:

>  (a) Defendants were in a superior position to know the true state of facts about the Stalling Defect in the Class Vehicles;
>
>  (b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing their defective nature; and
>
>  (c) Defendants actively concealed the defective nature of the Class Vehicles from Plaintiffs and the Class.

126. The facts Defendants concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiffs and the other Class Members known that the Class Vehicles were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased the Class Vehicles, or would have paid less for them.

127. Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem to this day.

128. By their conduct, Defendants have engaged in unfair competition and unfair business practices.

129. Defendants' unfair acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

130. In addition, as set forth herein, Defendants' acts and practices alleged herein are unlawful because they violate California Civil Code §§ 1770 (a)(5), 1770 (a)(7), 1770 (a)(9), 1792, *et seq.*, and 1795.90, *et seq.*, and 15 U.S.C. § 2301, *et seq.*

131. Further, as set forth herein, Defendants' acts and practices are deceptive in that they were capable of misleading or deceiving, and in fact did mislead and deceive, a substantial portion of the purchasing public.

132. As a result of their reliance on Defendants' omissions and/or misrepresentations, Plaintiffs and Class Members suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Specifically, as a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members bought or leased vehicles that they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and the Class Vehicles suffered a diminution in value. Additionally, as a result of the Stalling Defect, Plaintiffs and Class Members were harmed and suffered actual damages because the Class Vehicles are substantially certain to fail before their expected useful life has run.

133.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members, pursuant to §§ 17203 and 17204 of the Business & Professions Code.

### THIRD CAUSE OF ACTION

**Violations of New York Deceptive Practices Act**
**(N. Y. Gen. Bus. L. § 349 *et seq*.)**

134.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

135.    Plaintiff Mancuso brings this cause of action against Defendants on behalf of herself and the New York Sub-Class.

136.    Like California, New York also has broad consumer protection laws designed to protect consumers against deceptive business practices.  Specifically, New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce."

137.    The conduct of Defendants alleged herein violates New York General Business Law § 349.  The prohibited conduct includes Defendants' manufacture, marketing and sale of the defective Class Vehicles while failing to disclose a known safety defect as discussed above.

138.    Reasonable consumers would be and were misled by Defendants' misrepresentations and/or omissions which occurred in the conduct of trade or commerce.

139.    Because Defendants' deceptive acts and practices took place in the context of automobile safety, they affect the public interest.

140.    As a result of their reliance on Defendants' omissions and/or misrepresentations, Plaintiff and Class Members suffered an ascertainable loss of money,

property, and/or value of their Class Vehicles. Specifically, as a direct and proximate result of Defendants' conduct, Plaintiff and Class Members bought or leased vehicles that they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and the Class Vehicles suffered a diminution in value. Additionally, as a result of the Stalling Defect, Plaintiff and Class Members were harmed and suffered actual damages because the Class Vehicles are substantially certain to fail before their expected useful life has run.

141. Pursuant to New York General Business Law § 349, Plaintiff and the New York Class Members are entitled to recover the greater of actual damages or $50. Because Defendants acted willfully or knowingly, Plaintiff and the New York Class Members are entitled to recover three times actual damages, up to $1,000

### FOURTH CAUSE OF ACTION

**Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act
(Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*)**

142. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

143. Plaintiffs Reniger, Battaglia, and Saitta bring this cause of action against Defendants on behalf of themselves and all Class Members nationwide.

144. Defendants were at all relevant times the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

145. Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their

ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffered from an inherent defect at the time of sale and thereafter were not fit for their particular purpose of providing safe and reliable transportation.

146. Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

147. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective.

148. As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Specifically, as a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members did not receive the benefit of their bargain, and the Class Vehicles suffered a diminution in value. Additionally, as a result of the Stalling Defect, Plaintiffs and Class Members were harmed and suffered actual damages because the Class Vehicles are substantially certain to fail before their expected useful life has run.

149. Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty Pursuant to New York Uniform Commercial Code
(N.Y. U.C.C. § 2-314)**

150.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

151.     Plaintiff Mancuso brings this cause of action against Defendants on behalf of herself and all Class Members nationwide, and in the alternative on behalf of the New York Sub-Class.

152.     As noted above, Plaintiff purchased her Class Vehicle from Star Hyundai in Bayside, New York.  Star Hyundai is an officially authorized Hyundai dealer listed as such on the website www.hyundaiusa.com maintained by Defendant Hyundai Motor America and, on information and belief, operates pursuant to a franchise/dealer agreement with Defendant Hyundai Motor America and/or Hyundai Motor Company.  On information and belief, Star Hyundai is the sales and leasing agent of Defendants who together dictate both the terms on which its products and services are made available, as well as the representations and warranties made in connection with such products and services, among other things.

153.     Defendants were at all relevant times the manufacturers, distributors, warrantors, and, through dealers such as Star Hyundai, the sellers and lessors of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

154.     Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class

Vehicles suffered from an inherent defect at the time of sale and thereafter were not fit for their particular purpose of providing safe and reliable transportation.

155.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

156.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles were and are defective.

157.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Specifically, as a direct and proximate result of Defendants' conduct, Plaintiff and Class Members did not receive the benefit of their bargain, and the Class Vehicles suffered a diminution in value.  Additionally, as a result of the Stalling Defect, Plaintiff and Class Members were harmed and suffered actual damages because the Class Vehicles are substantially certain to fail before their expected useful life has run.

158.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of New York Uniform Commercial Code § 2-314.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty Pursuant to Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301)

159.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

160.    Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of all Class Members nationwide.

161.    Plaintiffs and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

162.    Each Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

163.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

164.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

165.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective.

166.    The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum

or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

167.    Defendants have been afforded a reasonable opportunity to cure their breach of implied warranty, including when Class Members brought their vehicles in for diagnoses and repair.

## SEVENTH CAUSE OF ACTION

### (Common Law Fraud)

168.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

169.    Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of all Class Members nationwide.

170.    Defendants made material omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to Plaintiffs and Class Members that the Class Vehicles suffer from the Stalling Defect, a fact which was not readily discoverable until after purchase.  To the contrary, Defendants touted the safety and reliability of the Class Vehicles.  As a result, Plaintiffs and Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the Stalling Defect and all of its resultant problems.

171.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class Members rely on them.

172.    Plaintiffs and Class Members reasonably relied on these omissions, and suffered damages as a result, as more fully discussed above.

## <u>RELIEF REQUESTED</u>

173.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the

Court to enter judgment against Defendants, as follows:

        (a)     An order certifying the proposed Class and Sub-Class, designating

Plaintiffs as named representatives of the Class and Sub-Class, and

designating the undersigned as Class Counsel;

        (b)     A declaration that Defendants are financially responsible for notifying all

Class Members about the defective nature of the Class Vehicles,

including the need for repair;

        (c)     An order enjoining Defendants from further deceptive distribution, sales,

and lease practices with respect to Class Vehicles;

        (d)     An order requiring Defendants to notify all recipients of the Service

Campaign Notification of the false and misleading statements contained

within the Notification and accompanying website and to provide an

accurate explanation of the nature, extent, manifestations and danger

posed by the Stalling Defect;

        (e)     An order requiring Defendants to perform a safety recall which, *inter*

*alia*: (1) fully and accurately discloses the nature and manifestations of

the Stalling Defect including, without limitation, the danger the defect

poses; (2) provides a fix that addresses all manifestations of the Stalling

defect and repairs Plaintiffs' and Class Members' vehicles such that they

are  no longer subject to the Stalling Defect, or, if not possible, then

alternatively provides full reimbursement of the purchase price or a

comparable replacement vehicle; (3) establishes a reimbursement program for out-of-pocket losses suffered by Class Members as a result of the Stalling Defect; and (4) provides substitute vehicles during the time necessary to perform repairs for those who do not wish to drive their vehicles until they are repaired;

(f)     A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(g)     A declaration requiring Defendants to comply with the various provisions of the Magnuson-Moss Act alleged herein and to make all the required disclosures;

(h)     An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(i)     Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(j)     A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

(k)     An award of attorneys' fees and costs, as allowed by law;

(l)     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(m)     An award of pre-judgment and post-judgment interest, as provided by

law;

(n)    Leave to amend the Complaint to conform to the evidence produced at trial; and

(o)    Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

174.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated:  August 3, 2016                GLANCY PRONGAY & MURRAY LLP

By: _s/ Mark S. Greenstone_
Lionel Z. Glancy
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On August 3, 2016, I served the following document:

**FOURTH AMENDED CLASS ACTION COMPLAINT**

By posting the document to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as listed on the attached Court's ECF Service List.

And on any non-ECF registered parties:

By U.S. Mail:  By placing true and correct copies thereof in individual sealed envelope: with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence or mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 3, 2016, at Los Angeles, California.


*s/ Mark S. Greenstone*
Mark S. Greenstone

# Mailing Information for a Case 4:14-cv-03612-CW Reniger et al v. Hyundai Motor America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Thanh Chung**
  Kimberly.Chung@lewisbrisbois.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com,info@glancylaw.com

- **Michael K. Grimaldi**
  michael.grimaldi@lewisbrisbois.com,bonnie.reinhard@lewisbrisbois.com

- **Eric Y Kizirian**
  eric.kizirian@lewisbrisbois.com,cynthia.snyder@lewisbrisbois.com,Bonnie.Reinhard@lewisbrisbois.com,michael.grimaldi@lewisbrisbois.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)