GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Marc L. Godino (#182689)
Mark S. Greenstone (#199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA RENIGER, GREG BATTAGLIA, LUCIA SAITTA and ANN MANCUSO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation, and HYUNDAI MOTOR COMPANY, a foreign corporation,<br><br>Defendants. | Case No. 4:14-cv-03612-CW<br><br>Hon. Claudia Wilken<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE:** March 21, 2017<br>**TIME:** 2:30 p.m.<br>**PLACE:** Oakland Courthouse, Courtroom 2 |

# TABLE OF CONTENTS


I. INTRODUCTION ..... - 2 -

II. PROCEDURAL AND FACTUAL BACKGROUND ..... - 3 -

A. Plaintiffs' Initial Complaint and the Initial 929 Service Campaign ..... - 3 -

B. Plaintiff's Amended Complaints Challenging the Adequacy of the Initial 929 Service Campaign ..... - 4 -

C. Defendants' Initiation of Campaign 929A ..... - 5 -

D. The Court's Order on Defendants' Motion to Dismiss and Motion to Strike ..... - 6 -

E. Negotiation of the Proposed Settlement Agreement ..... - 6 -

F. Terms of the Proposed Settlement Agreement ..... - 8 -

1. 10 Year Campaign 929A Guarantee ..... - 8 -

2. Reimbursement Program for Out-of-Pocket Expenses ..... - 8 -

3. New Vehicle Incentive Program ..... - 9 -

G. Dissemination of Notice and Implementation of the Proposed Settlement Agreement ..... - 10 -

III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..... - 11 -

A. The Standard for Final Approval ..... - 11 -

B. This Non-Collusive Settlement is Entitled to a Presumption of Fairness ..... - 12 -

C. The Settlement is Fair, Adequate and Reasonable ..... - 13 -

1. The Benefits of the Settlement Favor Final Approval ..... - 13 -

2. The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity and Likely Duration of Further Litigation Favor Final Approval ..... - 17 -

3. The Risks of Maintaining Class Action Status Through Trial Favor Final Approval ..... - 18 -

4. The Stage of the Proceedings Favors Final Approval ...................... - 19 -

5. The Experience and Views of Counsel Favor Final Approval ......... - 21 -

6. The Reaction of Class Members to the Settlement Favors Final Approval ........................................................................... - 22 -

D. The Settlement Class Satisfies the Requirements of Rule 23 ...................... - 23 -

IV. CONCLUSION ........................................................................................... - 23 -

# TABLE OF AUTHORITIES

CASES

*Aarons v. BMW of N. Am. LLC*,
2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) .................................. - 15 -, - 18 -

*Browne v. Am. Honda Motor Co.*,
2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) .................................. - 15 -, - 17 -

*Bui v. Sprint Corp.*,
2016 WL 727163 (E.D. Cal. Feb. 24, 2016) .................................................... - 13 -

*Cholakyan v. Mercedes-Benz USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012) .................................................................. - 19 -

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ......................................................................... - 11 -, - 13 -

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................... - 11 -

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011) ................................ - 15 -

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ................................................................................ - 19 -

*Dubeau v. Sterling Sav. Bank*,
2013 WL 4591034 (D. Or. Aug. 28, 2013) ...................................................... - 12 -

*Edwards v. Ford Motor Co.*,
2012 U.S. Dist. LEXIS 81330 (S.D. Cal. June 12, 2012) .................................. - 18 -

*Eisen v. Porsche Cars North American, Inc.*,
2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ..................................... - 15 -, - 17 -, - 21 -, - 22 -

*Forrand v. Fed. Express Corp.*,
2013 U.S. Dist. LEXIS 62252 (C.D. Cal. Apr. 25, 2013) .................................. - 19 -

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2010) ................................ - 22 -

*Grodzitsky v. Am. Honda Motor Co.*,
2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014) .................................. - 18 -

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................................................ - 11 -

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................ - 17 -

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)........................................................................ - 21 -

*In re Toys "R" Us-Del., Inc. FACTA Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................................ - 12 -, - 13 -, - 19 -

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988) ........................................................................ - 21 -

*Laguna v. Coverall N. Am.*,
753 F.3d 918 (9th Cir. 2014)........................................................................ - 19 -

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th. 2012)........................................................................ - 11 -

*Manner v. Gucci Am., Inc.*,
2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) ........................................................ - 13 -

*Manouchehri v. Styles for Less, Inc.*,
2016 WL 3387473 (S.D. Cal. June 20, 2016) ........................................................ - 12 -

*Marcus v. BMW of North America*,
687 F.3d 583 (3rd Cir. 2011) ........................................................................ - 19 -

*National Rural Tele. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................- 20 -, - 22 -

*Officers for Justice v. Civil Service Comm'n*,
668 F.3d 615 (9th Cir. 1982)........................................................ - 12 -, - 13 -, - 17 -

*Parkinson v. Hyundai Motor Am.*,
796 F. Supp. 2d 1160 (C.D. Cal. 2010)........................................................ - 15 -

*Portal Software, Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007).......................................... - 18 -

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
2016 WL 4052588 (W.D. Wash. Feb. 3, 2016)........................................................ - 12 -

*Rodriguez v. West Pub. Corp.*,
463 F.3d 948 (9th Cir. 2009) ... - 17 -

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. April 13, 2007) ... - 12 -

*Sugarman v. Ducati*,
2012 WL 113361 (N.D. Cal. 2012) ... - 23 -

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ... - 12 -

*Van Bronkhorst v. Safeco* Corp.,
529 F.2d 943 (9th Cir. 1976) ... - 11 -

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ... - 21 -, - 22 -

*Wren v. RGIS Inventory Specialists*,
2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ... - 12 -

STATUTES

15 U.S.C. § 2301 ... - 3 -

28 U.S.C. § 1715 ... - 10 -

49 U.S.C. § 30101 ... - 4 -

49 U.S.C. § 30118(e) ... - 4 -

49 U.S.C. § 30165(a) ... - 4 -

Cal. Bus. & Prof. Code §§ 17200 ... - 3 -

Cal. Civ. Code §§ 1750 ... - 3 -

Cal. Civ. Code §§ 1792 and 1791.1 ... - 3 -

N.Y. Gen. Bus. L. § 349 ... - 4 -

N.Y. Gen. Bus. L. §§ 350 ... - 4 -

N.Y. U.C.C. §§ 2-314 ... - 4 -

RULES

Fed. R. Civ. P. 23(e) .......... - 1 -

REGULATIONS

49 C.F.R. §579.5.......... - 4 -

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 21, 2017 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, plaintiffs Julia Reniger, Greg Battaglia, Lucia Saitta and Ann Mancuso ("Plaintiffs") will, and hereby do, move the Court for entry of an order granting final approval to the proposed class settlement of this action, which was preliminarily approved on August 8, 2016.

Plaintiffs bring this motion pursuant to Fed. R. Civ. P. 23(e) on the grounds that the proposed settlement is fair, adequate, and reasonable. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Class Counsel Mark S. Greenstone, the Declarations of Plaintiffs, the Declaration of Claims Administrator Sandy Zielomski, the Declaration of Defendants' Counsel Eric Y. Kizirian, the [Proposed] Order, all pleadings and other documents on file in this action, and such other matters as may be presented at or in connection with the hearing.

DATED: January 12, 2017

GLANCY PRONGAY & MURRAY LLP

By: *s/ Mark S. Greenstone*

Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The proposed Settlement Agreement[1] provides current and former owners and lessees of the 77,331 Cass Vehicles encompassed by this action something rarely achieved through settlement: a comprehensive remedy. The basis of this action is a defect that causes random stalling ("Stalling Defect"). At about the time that Plaintiffs filed their initial Complaint, Defendants extended a limited service campaign to a portion of the Class. After eight months of litigation and multiple amended complaints challenging the adequacy of that campaign, Defendants expanded the fix to all Class Vehicles through a new consolidated service campaign ("Campaign 929A") that Defendants contend has effectively resolved the issue, as evidenced by post-Campaign 929A warranty claims data. Under the proposed Settlement Agreement, Defendants agree to keep Campaign 929A open free of charge for ten years without a mileage restriction. Defendants also agree to reimburse class members for out-of-pocket costs incurred prior to the dissemination of Class Notice as a result of the Stalling Defect. This relief—in and of itself—would be fair, adequate and reasonable. In addition, the proposed Settlement Agreement provides those Class Members who have experienced the Defect with a special rebate on the purchase or lease of a new vehicle, notwithstanding relief they are to otherwise receive. The proposed Settlement Agreement is the product of in-depth investigation, aggressive litigation and protracted arms-length negotiations between experienced counsel before a respected mediator. It provides Class Members with outstanding relief and should be finally approved.

---

[1] The "Settlement Agreement" refers to the Settlement Agreement filed as Dkt. No. 73-1. All capitalized terms herein shall have the definitions given to them in the Settlement Agreement unless otherwise stated.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Plaintiffs' Initial Complaint and the Initial 929 Service Campaign

Plaintiffs Julia Reniger and Greg Battaglia filed the initial Complaint on August 8, 2014 alleging causes of action for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.* ("Song Beverly") and derivatively pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("Mag-Moss"). Dkt. 1, ¶¶61-109.

Defendants filed a motion to dismiss ("MTD") on October 6, 2014 arguing vociferously that Plaintiffs' claims were moot in light of a voluntary service campaign (the "929 Campaign") launched just before the initial Complaint was filed, and which Defendants contended fully resolved the Stalling Defect. Dkt. 13. The 929 Campaign offered an engine control module ("ECM") upgrade limited to approximately 44,281 of the 77,331 putative Class Vehicles that had a particular brand of alternator as original equipment. Declaration of Mark S. Greenstone ("Greenstone Decl."), ¶3. Defendants stated in their MTD introduction:

> This case proves that no good deed goes unpunished. On the first day in August 2014, Hyundai Motor America ("HMA") notified its customers of a service campaign for certain 2010 through 2012 model year Santa Fe vehicles after learning that, in certain low speed operating conditions, some Santa Fe vehicles may experience a momentary reduction in engine power that in rare cases may also cause engine stalling. The campaign notice offers all owners and lessees of the affected vehicles a simple fix—a free software update for the vehicles' Engine Control Module ("ECM") available through dealerships. Once the ECM is updated, any stalling concerns become a distant memory.

MTD at 8.[2] Defendant's elaborated on this argument in a section of their MTD titled "All Of Plaintiff's Claims Are Mooted By HMA's Voluntary Repair Remedy" stating:

> This Court also lacks jurisdiction to decide plaintiffs' claims because they are moot. HMA's service campaign is being conducted under the auspices of NHTSA and the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et. seq*. ("Safety Act"). HMA sent a formal letter notifying NHTSA of the service campaign, as required by the Safety Act regulation 49 C.F.R. §579.5…Should NHTSA decide that HMA's actions are inappropriate, it could order further action and ensure full compliance with NHTSA mandates through fines. (49 U.S.C. § 30165(a) or orders (49 U.S.C. § 30118(e).) Through this suit, plaintiffs are injecting themselves into this statutory oversight process that NHTSA is currently overseeing.

MTD at 13-14. However, having spent hundreds of hours investigating the Stalling Defect, Plaintiffs believed that a full and complete remedy to all affected Class Members had not been provided and that it was necessary for Plaintiffs to "inject" themselves into the process.

**B. <u>Plaintiff's Amended Complaints Challenging the Adequacy of the Initial 929 Service Campaign</u>**

In response to Defendants' MTD, Plaintiffs filed a First Amended Complaint on October 27, 2014 (Dkt. 17) and a Second Amended Complaint ("SAC") on November 24, 2014 (Dkt. 21). Plaintiffs' SAC added Lucia Saitta and Ann Mancuso as plaintiffs; alleged supplemental facts concerning the inadequacy of the 929 Campaign; asserted additional claims for violation of the New York Deceptive Practice Act (N.Y. Gen. Bus. L. § 349, *et seq.*), violation of the New York False Advertising Law (N.Y. Gen. Bus. L. §§ 350, *et seq.*), breach of implied warranty pursuant to the New York Uniform Commercial Code (N.Y. U.C.C. §§ 2-314), and common law fraud; and alleged a New York Sub-Class. SAC, ¶¶ 1, 149-65; 174-81. Plaintiffs'

[2] Citations to ECF filings are to the ECF system pagination.

SAC was based upon an extensive investigation of counsel that included, *inter alia*, interviews of hundreds of putative Class Members. Greenstone Decl., ¶4.

In particular, Plaintiffs went to great lengths in the SAC to document the shortcomings of the initial 929 Campaign, included *nine pages* of detailed allegations concerning the initial 929 Campaign. SAC at ¶¶12-29. Plaintiffs' SAC included specific examples of post-929 Campaign stalling complaints and alleged that "Defendants' Service Campaign is limited to an undisclosed subset of Class Vehicles and, on information and belief, has not been made available to thousands of class members." *Id*. at ¶12. As proof of the fact that the initial 929 Campaign was underinclusive, Plaintiffs included printouts of the results when the VINs for Plaintiffs Battaglia and Mancuso that were input into the "VIN Validation" field on the website set up to administer the initial 929 Campaign, which provided "**Your vehicle is NOT affected**" (emphasis in original). *Id*. at ¶¶51, 69 and Exhs. K & P. Plaintiffs' SAC also criticized Defendants for not offering to reimburse vehicle owners for repairs and diagnosis or the cost of transporting their stalled out vehicles to dealerships. *Id*. at ¶18. In the prayer for relief, Plaintiffs SAC specifically demanded, *inter alia*, that Defendants notify all Class Members of the Stalling Defect, provide them all with a viable fix that addresses the Defect, and establish a reimbursement program for out-of-pocket costs incurred as a result of the Defect. *Id*. at ¶196(d) & (e). On January 26, 2016, Defendants filed a second motion to dismiss (Dkt. 33) and motion to strike (Dkt. 31).

**C. <u>Defendants' Initiation of Campaign 929A</u>**

Eight months after the filing of Plaintiffs' initial Complaint, in April 2015, Defendants initiated Campaign 929A which extended the 929 Campaign ECM upgrade to the remaining 33,050 vehicles in the putative 77,331 vehicle class not covered under the original 929

Campaign.[3] Greenstone Decl., ¶5. Campaign 929A also added additional software updates that provided for a software-based cleaning of the electronic throttle control ("ETC"). Analysis of Hyundai's warranty claims database performed by Gregory Webster, Hyundai's Senior Group Manager, Design and Engineering Analysis, revealed that prior to the Campaign 929A there was an average of 70 stalling complaints per month; since the Campaign 929A was launched (April 2015), the complaint rate nationwide was just 0.9 complaints per month. *Id*., ¶5 and Exh. A. Thus, Hyundai contends that the Campaign 929A eliminates any ongoing stalling concerns.

**D. The Court's Order on Defendants' Motion to Dismiss and Motion to Strike**

On August 18, 2015, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Motion to Strike in which it upheld all of Plaintiffs' claims with the exception of Plaintiffs' California and New York False Advertising Law ("FAL") claims, as well as Plaintiffs' New York implied warranty claim and derivative Mag-Moss claim. Dkt. 53. On September 1, 2015 Plaintiffs filed a Third Amended Complaint ("TAC") dropping the FAL claims and re-alleging the New York implied warranty claim and the derivative Mag-Moss claim. Dkt. 54. Defendants filed answers to the TAC on September 15, 2015. Dkt. 55 & 56.

**E. Negotiation of the Proposed Settlement Agreement**

Shortly thereafter, at the end of September 2015, the parties agreed to mediate and

[3] It is Defendants' contention that the extension of the 929 Campaign ECM update was contemplated earlier. Specifically, in December 2014, Hyundai Motor America ("HMA") prepared a service bulletin bearing the title Service Campaign TV5. Defendants contend this was intended to make the 929 Campaign ECM update available to the remaining 33,050 vehicles in the putative 77,331 vehicle class, but that before a consumer notice was sent on TV5, HMA decided to merge it with the 929 Campaign into a single campaign that was formally launched with consumer notice in April 2015 as Campaign 929A. Regardless, the benefits were extended to Class Members only *after* Plaintiff attacked the adequacy of the initial 929 Campaign, which Defendants had contended fully resolved the issue.

informed the Court of their intentions at the September 25, 2015 Case Management Conference. Greenstone Decl., ¶6. The parties selected retired Chief Magistrate Judge Edward A. Infante as their mediator. Prior to the mediation, the parties agreed to an exchange of information (in addition to that exchanged through formal discovery) to help inform the parties at mediation. *Id*. The parties drafted detailed mediation statements which provided Judge Infante with a comprehensive understanding of the factual and legal issues. On December 15, 2015, the parties attended a full-day mediation before Judge Infante in San Francisco. *Id*.

Although the parties were unable to reach a resolution at the December 15, 2015 mediation session, they continued to engage in settlement negotiations with the assistance of Judge Infante. Greenstone Decl., ¶6. On or about February 3, 2016, the parties executed a Memorandum of Understanding ("MOU") which outlined all material terms of the proposed Settlement Agreement. *After* the material terms of the proposed Settlement Agreement were agreed to in the MOU, the parties separately negotiated Class Counsel's entitlement to attorneys' fees and costs, and Plaintiffs' service awards. *Id*. The parties filed a Stipulation with Proposed Order to Vacate Case Management Conference in Light of Settlement in Principle on March 29, 2016 (Dkt. 67), which the Court granted on April 4, 2016 (Dkt. 68).

Plaintiffs drafted a motion for preliminary approval of the proposed Settlement Agreement and the parties worked collaboratively on drafting a Class Notice, Claim Form and other relevant documentation. The Court heard Plaintiffs' preliminary approval motion on August 2, 2016, and on August 8, 2016, issued its Order Preliminarily Approving Class Action Settlement; Provisionally Certifying A Settlement Class For Settlement Purposes, Appointing Class Counsel, Directing The Issuance Of Notice To The Class, And Scheduling

A Fairness Hearing ("Preliminary Approval Order"). Dkt. 82.

### F. Terms of the Proposed Settlement Agreement

#### 1. 10 Year Campaign 929A Guarantee

Under the proposed Settlement Agreement, Defendants agree that Campaign 929A Software Update (or its functional equivalent) will remain available free-of-charge for 10 years after the date the Class Vehicles were first put into circulation as "new" vehicles. Settlement Agreement, ¶ III.D. As noted above, analysis of Hyundai's warranty claims database revealed that prior to Campaign 929A there was an average of 70 stall complaints per month; since Campaign 929A was launched (April 2015), the complaint rate nationwide was just 0.9 complaints per month. Greenstone Decl., ¶5 Exh. A. The proposed Settlement Agreement thus makes judicially enforceable the Campaign 929A benefit, ensuring its availability for those who have not yet had the Campaign performed, and for those who need the update reinstalled.[4]

#### 2. Reimbursement Program for Out-of-Pocket Expenses

Defendants also agree to fully reimburse, on a claims-made basis, all out-of-pocket costs incurred at any authorized Hyundai dealer[5] for any diagnosis or repair associated with the Stalling Defect. Significantly, there is *no cap* on the amount that may be claimed for these costs. In addition, Defendants agree to reimburse third-party towing and car rental costs of up to $250. Settlement Agreement, ¶ III.A.

Class Members eligible to make a Claim are those who experienced a stall associated

---

[4] As with any computer update, incorrect or incomplete installation of the 929A software update may require that it be reinstalled.

[5] Because the Class Vehicles are model year 2010 through 2012 vehicles with warranties ranging from five to ten years depending on the component, the vast majority would have been taken to authorized Hyundai dealers for repairs and diagnosis during the relevant time period.

with the "929A Condition" up to the mailing date of the Class Notice.[6] Settlement Agreement, ¶ III.A. A claims-friendly reimbursement program requires only that Class Members provide minimal documentary proof, such as repair orders or invoices, which can generally be obtained from Hyundai dealers if no longer in a Class Member's possession. *Id*., Exh. A (Claim Form). Claims may be submitted through March 29, 2017, providing Class Members with ample time to gather the relevant paperwork. Preliminary Approval Order (Dkt. 82) at ¶15(e).

### 3. New Vehicle Incentive Program

Notwithstanding the availability of the Campaign 929A remedy and reimbursement for out-of-pocket expenses, the proposed Settlement Agreement also provides a special cash incentive for replacement vehicles. Class Members who have experienced one documented 929A Condition stall, are eligible for a rebate of $250 to $1,000 on a new Hyundai vehicle, depending upon the specific new vehicle purchased or leased.[7] Settlement Agreement, ¶ III.B. This amount is doubled to $500 to $2,000 (again, depending upon the vehicle) for those who have experienced at least two 929A Condition stalls, with at least one occurring after the Class Vehicle received the Campaign 929A software update. *Id*., ¶ III.C. Rebate certificates can be

---

[6] "929A Condition" is a documented stall in a Class Vehicle that does not generate a diagnostic trouble code ("DTC"). Specifically, some vehicle stalls generate a code that is stored in the vehicle's on-board computer system and that dealers often note in the repair order. A 929A Condition stall is a stall that does ***not*** generate such a code. If a repair order does ***not*** identify a particular code or cause for the stall, it will be considered a 929A Condition stall. This definition is consistent with Class Members' real-world experiences of the Stalling Defect as an unexplained random occurrence.

[7] Rebate Certificate values are as follows: Tier 1 ($250) – Hyundai Accent; Tier 2 ($400) - Hyundai Elantra, Elantra GT, Veloster, Sonata (non-hybrid); Tier 3 ($600) - Hyundai Tucson, Santa Fe, Sonata Hybrid/Plug-in Hybrid, Genesis Coupe (or its functional equivalent at the time of purchase); Tier 4 ($750) - Hyundai Azera, Genesis Sedan (or its functional equivalent at the time of purchase); Tier 5 ($1,000) - Equus (or its functional equivalent at the time of purchase). Agreement, ¶ III.B.

claimed through a simple claim process with minimal documentary proof requirements, and redeemed by simply sending proof of a new Hyundai vehicle purchase or lease within one year of the Rebate Certificate's issuance. Agreement, ¶¶ III.B, C.

### G. <u>Dissemination of Notice and Implementation of the Proposed Settlement Agreement</u>

Following entry of the Preliminary Approval Order, the parties worked diligently to implement its terms and carry through with the proposed Settlement Agreement. On June 29-30, 2016 Defendants sent notice of the Proposed Settlement to the appropriate federal official, and the appropriate state official in all fifty states pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Declaration of Eric Y. Kizirian ("Kiz. Decl."), ¶2. On November 21, 2016 Defendants caused 113,236 Class Notices to be mailed to the last known addresses of all current and former owners and lessees of the Class Vehicles from state DMV registration databases.[8] Decl. of Sandy Zielomski ("Zielomski Decl.") ¶¶ 4-5.[9] Concurrently, Defendants set up a toll free telephone line for Class Member inquiries, and a dedicated website viewable at santafesettlement.hyundaiusa.com on which Class Members may submit claims and view information pertinent to the litigation. *Id.*, ¶¶ 2-3. Following the mailing of the Class Notice, Defendants and Plaintiffs have both worked to respond to Class Member inquiries. *Id.*, ¶ 2; Greenstone Decl., ¶14. As of the close of business on January 8, 2017 there had been a total of 850 visits to the case website, 107 settlement-related inquiries fielded

---

[8] Under the proposed Settlement Agreement, Defendant Hyundai Motor America, with assistance as appropriate, is to act as Claims Administrator. Settlement Agreement, ¶V.A. The claims process, of course, is very similar to the service campaign and recall process with which Defendants have significant experience as car manufacturers. Further, any denied claims are to be forwarded to the parties' respective counsel who agree to engage in good faith efforts to resolve the disputed claim. *Id.* at ¶V.D.

[9] As of January 8, 2017, 2,527 Class Notices had been returned undeliverable with no forwarding address. These records are being reviewed against Defendants' customer records for a more current address and, where applicable, will be re-mailed to the updated addresses. Zielomski Decl., ¶ 6.

at the toll-free telephone line, and 303 pieces of correspondence received at the PO Box established for the settlement. Zielomski Decl., ¶¶ 2-3, 7. In addition, to date Plaintiffs' Counsel has fielded 50 class member inquiries regarding the settlement. Greenstone Decl., ¶14.

## III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. The Standard for Final Approval

The law favors the compromise and settlement of class action lawsuits. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "there is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The decision to approve or reject a settlement is committed to the sound discretion of the trial court because it "is exposed to the litigants and their strategies, positions and proof." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In exercising such discretion, the trial court should give "proper deference to the private consensual decision of the Parties." *Hanlon*, 150 F.3d at 1027.

In determining whether a class action settlement is fair, adequate, and reasonable, district courts in the Ninth Circuit balance the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575. This list is not exclusive, and different factors may

predominate in different factual contexts. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993). However, in reviewing what is "otherwise a private consensual agreement negotiated between the parties to a lawsuit," the district court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 668 F.3d 615, 625 (9th Cir. 1982).

**B. <u>This Non-Collusive Settlement is Entitled to a Presumption of Fairness</u>**

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. April 13, 2007). A non-collusive settlement, negotiated with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014). The proposed Settlement Agreement here is the product of arms'-length negotiations conducted over several months with oversight and assistance of the Honorable Edward A. Infante, a retired Chief Magistrate Judge for this District. Judge Infante is widely respected by Courts throughout the Ninth Circuit and has been recognized as a key factor in helping to craft fair, adequate and reasonable class settlements on multiple occasions.[14] Moreover, the parties negotiated Class Counsel's entitlement to attorneys'

[14] *See, e.g., Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *14 (N.D. Cal. Apr. 1, 2011), supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (noting that settlement reached with an experienced mediator, Hon. Edward A. Infante (Ret.) was a result of arms-length negotiations); *Dubeau v. Sterling Sav. Bank*, 2013 WL 4591034, at *2 (D. Or. Aug. 28, 2013) (finding that counsel, with Judge Infante's help as mediator, negotiated an arms-length settlement agreement that is fair, reasonable, and adequate); *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016) (the parties worked with a trusted mediator, retired U.S. Magistrate Judge Edward Infante, weighing in favor of preliminary approval); *Manouchehri v. Styles for Less, Inc.*, 2016 WL 3387473, at *5 (S.D.

fees and Plaintiffs' service awards separately, *after* an MOU was signed memorializing the material terms of the proposed Settlement Agreement. Greenstone Decl., ¶6. Based on these factors, the Settlement is entitled to a presumption of fairness. *See In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 450 (finding a presumption of fairness where the settlement was reached following a mediation and the fees and settlement relief were separately negotiated).

**C. <u>The Settlement is Fair, Adequate and Reasonable</u>**

In evaluating the proposed Settlement Agreement, the Court must balance the factors set forth in *Churchill Village*, 361 F.3d at 575. As shown below, consideration of the relevant *Churchill* factors supports final approval of the Settlement Agreement in this case.

**1. The Benefits of the Settlement Favor Final Approval**

"The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). The Ninth Circuit has explained, in light of the vagaries of litigation, "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. In this case however, even if it were, it would stand out as an exceptional achievement.

When Plaintiffs initially filed this case, a limited remedy (the initial 929 Campaign ECM update) had been extended to approximately half of the Class Members. After eight months of

---

Cal. June 20, 2016) (based on Judge Infante's participation the negotiations between the parties were made at arm's length); *Bui v. Sprint Corp.*, 2016 WL 727163, at *2 (E.D. Cal. Feb. 24, 2016) (noting that the parties attended mediation with an experienced and well-respected mediator, the Honorable Edward A. Infante (Ret.), and with Judge Infante's assistance the parties were able to reach an agreement on the terms of a settlement); *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *7 (S.D. Cal. Mar. 16, 2016)(finding that the proposed settlement was the result of "serious, informed, and non-collusive arm's-length negotiations" and mediation efforts overseen by retired United States Magistrate Judge Edward Infante, who conducted a full-day mediation session).

hard-fought litigation, Campaign 929A extended the 929 Campaign ECM upgrade to all Class Vehicles, and in addition extended a computer stimulated cleaning of the ETC to all Class Vehicles. Defendants contend that the 929A Campaign has effectively resolved the Stalling Defect, as evidenced by post-Campaign 929A warranty claims data. Greenstone Decl., ¶5 and Exh. A.

Through the proposed Settlement Agreement, Defendants have agreed to keep the Campaign 929A software update available to Class Members for 10 years from the date that the Class Vehicles were first placed into circulation as "new" vehicles, without any mileage restriction. Settlement Agreement, ¶ III.D. The Settlement Agreement thus makes judicially enforceable an important benefit that Defendants could otherwise withdraw or charge for at any time in the absence of the Agreement. In addition, Defendants have agreed to reimburse out-of-pocket costs incurred by Class Members for repairs or diagnoses associated with the Stalling Defect—without a cap—and to reimburse towing and rental car expenses up to $250. Id., ¶ III.A.

The above achievements represent a substantial victory. Plaintiffs' SAC requested that Defendants notify all Class Members of the Stalling Defect, offer a viable repair free of charge and reimburse out-of-pocket expenses. SAC (Dkt. 21) at ¶ 196(d) & (e). This is *exactly* what the litigation and Settlement Agreement have achieved. As an additional benefit, the Settlement Agreement provides those Class Members who have experienced the Stalling Defect and who wish to replace their Class Vehicles notwithstanding this relief, a special rebate incentive. Settlement Agreement, ¶ III.B & C.

In and of itself, by ensuring the availability of the Campaign 929A software update to *all* Class Members without common limitations like eligibility based on mileage or requiring Class

Members to prove that a problem has already manifested, this Settlement is superior to the common, but far less valuable, remedy of an extended warranty program offered in automotive settlements approved by many District Courts in this Circuit. *See*, *e.g*., *Eisen v. Porsche Cars North American, Inc*., 2014 WL 439006, at *1-2, 11 (C.D. Cal. Jan. 30, 2014) (approving settlement that did not provide a free repair program for the alleged engine defect, but instead extended the mileage/years of coverage on the warranty for that defect, along with a reimbursement program with limitations); *Sadowska v. Volkswagen Group of America*, No. 2:11-cv-00665-BROAGR, Dkt. No. 127 (C.D. Cal. Sep. 25, 2013) (same, but for alleged transmission defect); *Collado v. Toyota Motor Sales, U.S.A., Inc*., 2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011), *fee order rev'd*, 550 Fed. Appx. 368 (9th Cir. Cal. 2013) (approving settlement extending warranty coverage for defective headlights along with a limited reimbursement program for out-of-pocket expenses for repairs).

Moreover, the reimbursement component of this Settlement, which provides for reimbursement for the cost of Hyundai dealer repairs or diagnoses paid by Class Members prior to the mailing date of Class Notice, does not contain other time or mileage restrictions like other judicially approved settlements have contained. *See, e.g*., *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1164 (C.D. Cal. 2010) (approving settlement for defective flywheel transmissions reached where class members received cash reimbursement of 50-100% of repair expenses, depending on actual mileage for vehicles up to 10 years old or with 100,000 miles); *Aarons v. BMW of N. Am. LLC*, 2014 U.S. Dist. LEXIS 118442, at *8–10 (C.D. Cal. Apr. 29, 2014) (approving a diminishing payout structure for a reimbursement program on transmission repairs that end for vehicles with 150,000 miles or 8 years on the road); *Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) (approving

reimbursement program that limits costs to brake pads purchased within 3-years of the purchase or lease of the vehicle).

The Settlement benefits are also superior to other automotive settlements approved in other District Courts in other Circuits. *See, e.g., Falk/Zwicker v. General Motors Corporation*, Case No. C07-0291-JCC (W.D. Wash. 2008), Docket No. 125-1 (settlement agreement) §§ C.1 & C.2 (providing 7-year/70,000-mile warranty for replacement/reimbursement of speedometer for owners of 2003-2004 and certain 2005 GMT800 platform vehicles, and replacement/reimbursement for cost of speedometer part only, excluding labor costs, for owners of 2003-2004 vehicles who repaired problem between 70,000-80,000 miles); *Alin v. American Honda Motor Co., Inc.*, Case No. 08-4825-KSH-PS (D.N.J. 2011), Docket No. 54-3 (settlement agreement) §§ 4.2 & 4.3 (providing reimbursement of 15%-100% of out-of-pocket expenses, based on time and mileage thresholds between 3 years/36,000 miles and 8 years/96,000 miles, for allegedly defective air conditioning condenser or compressor); *Henderson v. Volvo Cars of North America*, Case No. 09- 4146-CCC-JAD (D.N.J. 2012), Docket No. 71-1 (settlement agreement) § III.A (providing 8-year/100,000-mile extended warranty and reimbursement of either 50% for original owners and lessees, or 25% for all other class members, for out-of-pocket costs for allegedly defective automatic transmissions). The judicially approved settlements in these cases included both warranty extensions and reimbursements, but did not include a free repair remedy such as the 929A Campaign remedy here.

As set forth above, these benefits are more comprehensive than the benefits provided in other settlements of automotive class actions that have been found to be fair, adequate and

reasonable[16]. Here, "the class is receiving nearly as much as could reasonably be expected after a successful verdict at trial because they are recovering all or substantial portion of the cost of repairing the [automotive defect]." *Eisen*, 2014 WL 439006, at *11 (finding the Settlement "fair, adequate and reasonable" on this and other bases). Here, Class Members will obtain similar benefits by settlement, but without the risk of "protracted litigation, requiring retention of experts and significant expenses." *Id.*

Accordingly, the proposed Settlement Agreement should be approved.

**2. The Strength of Plaintiffs' Case Compared to the Risk, Expense, Complexity and Likely Duration of Further Litigation Favor Final Approval**

As the Ninth Circuit has instructed, in assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625. There is "no single formula" to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

An objective evaluation confirms the relief offered for the Class here is well within the range of reasonableness, particularly when compared to the likely outcome of prosecuting the action. Plaintiffs face significant risks that are part and parcel of continued litigation, including increased costs and the passage of a substantial amount of time. *Rodriguez v. West Pub. Corp.*, 463 F.3d at 966. A class action against a major automotive manufacturer, where Plaintiffs

[16] That the Settlement will confer immediate monetary and equitable relief to Class Members is a strong factor in approving the proposed Settlement. *Browne v. Am. Honda*, 2010 U.S. Dist. LEXIS 145475, at *42–43 (finding that, despite the fact that class members may not be fully compensated by the proposed reimbursement program, immediate relief conferred by settlement supports final approval); *see also, In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that provides immediate relief constituting one-sixth of the potential recovery in light of the difficulties of continued litigation).

allege tens of thousands of vehicles suffer a serious defect, has the strong potential to engulf plaintiffs and attorneys in protracted, resource-draining court battles. Plaintiffs would likely need to supply multiple experts' testimony and analyses, including an expert on engine design and engineering, an expert on consumer expectations, and a damages expert. These hefty costs would have to be advanced by Plaintiffs and Class Counsel, and add significantly to the risks of proceeding in litigation. *See Aarons v. BMW*, 2014 U.S. Dist. LEXIS 118442, at *29–31 (approving a settlement for repairs/reimbursement of transmission defect and observing that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

Finally, the inherent risks of proceeding to trial weigh in favor of settlement. *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, *7–8 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to… trial and appeal also support the settlement"). In light of the substantial risks of continued litigation, the relief secured for the Class by the proposed Settlement Agreement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

**3. The Risks of Maintaining Class Action Status Through Trial Favor Final Approval**

In addition to the risks discussed above, risks unique to the class action context also weigh strongly in favor of final approval. Plaintiffs may well be unable to maintain class status through trial, as plaintiffs bringing automotive defect actions are frequently denied class certification due to lack of common proof. *See, e.g., Grodzitsky v. Am. Honda Motor Co.*, 2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Edwards v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 81330, at *21–22 (S.D. Cal. June 12, 2012)

(denying certification because Plaintiffs failed to show that the sudden acceleration problem is caused by a common design defect in the electronic throttle system); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…"). The inherent causation and proof challenges that plaintiffs must confront in automotive defect cases may well spell doom for Plaintiffs here.

There is also substantial risk that manageability issues could prevent class certification or require modification or decertification of the Class before trial. *See, e.g.*, *Marcus v. BMW of North America*, 687 F.3d 583 (3rd Cir. 2011) (reversing certification of consumer class action case involving BMW vehicles equipped with allegedly defective run flat tires).

And aside from the above issues, Plaintiffs must also contend with "menacing precedents" from the U.S. Supreme Court and the Ninth Circuit. *See Laguna v. Coverall N. Am.*, 753 F.3d 918, 925 (9th Cir. 2014) (approving class action settlement based in part, on the risks of continuing litigation in light of U.S. Supreme Court precedent raising further barriers to class certification). Had the case proceeded, Defendants would no doubt have argued that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) requires plaintiffs to present a method for common proof of damages before a class can be certified, a position that has been accepted by some courts. *See*, *e.g.*, *Forrand v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 62252, at *7–8 (C.D. Cal. Apr. 25, 2013). This body of recent case law demonstrates that, had the case continued, "plaintiffs [would] face[] a substantial risk of incurring the expense of a trial without any recovery." *In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 451.

**4. The Stage of the Proceedings Favors Final Approval**

The court may evaluate the stage of the proceedings to determine if "the parties arrived

at a compromise based on a full understanding of the legal and factual issues surrounding the case." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citation omitted). A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *Eisen*, 2014 WL 439006, at *4 (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on").

Notwithstanding the fact that this case was mediated shortly after the Court's decision on Defendants' motion to dismiss, Class Counsel conducted a vigorous investigation that enabled them to obtain the information needed to evaluate the strengths and weaknesses of the case and reach a reasoned determination as to the fairness of the proposed Settlement Agreement. This was done through two tracks.

First, as part of their independent investigation, Class Counsel personally interviewed over *two hundred* Class Members; researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the Stalling Defect; reviewed and researched consumer complaints and discussions of the Stalling Defect in articles and forums online; reviewed various manuals and technical service bulletins discussing the alleged Defect; and, conducted research into the various causes of actions. Greenstone Decl., ¶8.

In addition, Plaintiffs propounded comprehensive sets of written discovery on Defendants regarding, among other things: warranty data regarding stalling complaints of Class Vehicles; customer relations records; Quality Information Reports regarding the Stalling Defect; owner's manuals and warranty booklets for Class Vehicles; communications with suppliers of

alternators and throttle bodies for Class Vehicles; communications between Defendants' employees regarding the Stalling Defect; communications between Defendants' employees and third parties regarding the Stalling Defect; marketing brochures for Class Vehicles, FSE reports regarding the Stalling Defect on Class Vehicles; and, sales information regarding the Class Vehicles. Greenstone Decl., ¶9. In response, Defendants produced and Class Counsel reviewed Quality Information Reports generated in connection with Defendants' analysis of the Stalling Defect; warranty claims data; technical service bulletins; Class Vehicle manuals and brochures; consumer complaints; field service reports; and. other related information. *Id.*

Class Counsel also consulted with a technical expert concerning the Stalling Defect, and flew from Los Angeles to the Bay Area for a vehicle inspection performed by Defendants and observed by Class Counsel and Counsel's expert. Greenstone Decl., ¶ 10.

In light of Class Counsel's thorough independent investigation of the Stalling Defect both pre-and post-filing, and formal discovery efforts, this factor also weighs in favor of final approval.

**5. The Experience and Views of Counsel Favor Final Approval**

When counsel recommending approval of a settlement is competent and experienced, their opinion should be given significant weight, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Weinberger v. Kendrick*, 698 F.2d 61, 75–76 (2d Cir. 1982) (affording great weight to opinion of competent and experienced counsel in favor of settlement approval).

Here, Class Counsel were satisfied with the proposed Settlement Agreement only after

intensive independent investigation, followed by litigation and months of settlement negotiations. Greenstone Decl., ¶13. Class Counsel has worked tirelessly to achieve the best possible result for the Class and believe that the Settlement Agreement is an excellent result. Based on their experience and expertise, Class Counsel view the Settlement Agreement as fair, adequate and reasonable. *Id.*, ¶ 13.

Moreover, Class Counsel are seasoned class action attorneys with significant experience in consumer class actions, including automotive defect class actions. Greenstone Decl., ¶11. Likewise, Defendants' counsel, Lewis Brisbois Bisgaard & Smith LLP, is a renowned defense firm with significant experience with automobile class actions. *Id.*, ¶12. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

**6. The Reaction of Class Members to the Settlement Favors Final Approval**

Class Notice was mailed almost two months ago on November 21, 2016. Zielomski Decl., ¶ 5. Thus far there has been only *one* objection. ECF 87.[10] This single objection to date, in a class that includes over 77,000 vehicles and over 113,000 Class Members who were mailed a Class Notice is exceptional and also weighs strongly in favor of final approval. *See National Rural Tele. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2010) ("[T]he Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few

[10] Plaintiffs will respond to this objection, and any others that are filed, if any, by February 7, 2017 per the Preliminary Approval Order. *See* Dkt. 82 at ¶ 15(g).

class members object to it.") (internal quotation marks omitted); *Sugarman v. Ducati*, 2012 WL 113361, at *3 (N.D. Cal. 2012) (42 objections where 38,774 notices were sent out constituted a "positive response" to the settlement and "weigh[ed] strongly" in favor of its approval).

Only 66 Class Members have elected to opt out of the Settlement. Kizirian Decl., ¶ 3 and Exh. B. Thus far, 410 Claims Forma have been submitted, which the Settlement Administrator is in the process of reviewing. Zielomski Decl., ¶ 7. Plaintiffs expect that additional claims will be submitted prior to the claims deadline of March 29, 2017 which is still several months away.

### D. The Settlement Class Satisfies the Requirements of Rule 23

In the Preliminary Approval Order, this Court provisionally certified the Class for settlement purposes. Dkt. 82 at ¶3. In so doing, the Court made a preliminary determination that the Class satisfies the requirements of Rule 23. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004). Plaintiffs now submit that the Class may finally be certified for settlement purposes, as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement Agreement.

///

///

///

///

///

DATED: January 12, 2017

GLANCY PRONGAY & MURRAY LLP

By: *s/ Mark S. Greenstone*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On January 12, 2017, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 12, 2017, at Los Angeles, California.

*s/ Mark S. Greenstone*
Mark S. Greenstone

# Mailing Information for a Case 4:14-cv-03612-CW Reniger et al v. Hyundai Motor America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Thanh Chung**
  Kimberly.Chung@lewisbrisbois.com
- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com
- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com,info@glancylaw.com
- **Michael K. Grimaldi**
  michael.grimaldi@lewisbrisbois.com,bonnie.reinhard@lewisbrisbois.com
- **Eric Y Kizirian**
  eric.kizirian@lewisbrisbois.com,cynthia.snyder@lewisbrisbois.com,Bonnie.Reinhard@lewisbrisbois.com,michael.grimaldi@lewisbrisbois.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)