1  GLANCY PRONGAY & MURRAY LLP
   Lionel Z. Glancy (#134180)
2  Marc L. Godino (#182689)
   Mark S. Greenstone (#199606)
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
   Facsimile:  (310) 201-9160
5  E-mail: info@glancylaw.com
6
7  *Attorneys for Plaintiffs*

8              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
9

10 JULIA RENIGER, GREG              Case No.  4:14-cv-03612-CW
   BATTAGLIA,  LUCIA SAITTA and
11 ANN MANCUSO, Individually and On   Hon. Claudia Wilken
   Behalf of All Others Similarly Situated,
12                                  **NOTICE OF MOTION AND MOTION FOR**
              Plaintiffs,          **AWARD OF ATTORNEYS' FEES, COSTS,**
13                                  **EXPENSES, AND SERVICE AWARDS TO**
              v.                   **CLASS REPRESENTATIVES;**
14                                  **MEMORANDUM OF POINTS AND**
                                    **AUTHORITIES IN SUPPORT THEREOF**
15 HYUNDAI MOTOR AMERICA, a
   California corporation, and HYUNDAI  **DATE:** March 21, 2017
16 MOTOR COMPANY, a foreign          **TIME:** 2:30 p.m.
   corporation,                     **PLACE:** Oakland Courthouse, Courtroom 2
17
              Defendants.
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... - 2 -

II.   PROCEDURAL AND FACTUAL BACKGROUND ............................................ - 3 -

III.  THE SETTLEMENT BENEFITS ARE SUBSTANTIAL ..................................... - 3 -

IV.   THE REQUESTED FEE IS FAIR, REASONABLE AND JUSTIFIED.................. - 5 -

      A.    California Law Governs Both the Entitlement to and Computation of Fees . - 5 -

      B.    Plaintiffs Are Entitled To Fees Under The Private Attorney General Statute and
            the CLRA .................................................................................... - 6 -

            1.    Plaintiffs are Entitled to Fees Under the Private Attorney General
                  Statute ................................................................................ - 6 -

            2.    Plaintiffs are Entitled to Fees under the CLRA ............................. - 10 -

      C.    Plaintiffs' Request for Attorneys' Fees Is Reasonable Under the Lodestar
            Method ......................................................................................... - 10 -

            1.    Plaintiffs' Counsel's Hours Expended are Reasonable.................... - 12 -

            2.    Plaintiffs' Counsel's Rates are Reasonable ................................... - 15 -

      D.    Plaintiffs' Request for Attorneys' Fees is Also Reasonable Under Percentage-
            of-the-Fund Method......................................................................... - 16 -

      E.    This is *Not* a Coupon Settlement ..................................................... - 18 -

V.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET
      EXPENSES, WHICH ARE REASONABLE ........................................................ - 20 -

VI.   THE REQUESTED SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE
      REASONABLE AND SHOULD BE APPROVED................................................. - 21 -

VII.  CONCLUSION ....................................................................................... - 23 -

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Alin v. Honda Motor Co.*,
    2012 WL 8751045 (D.N.J. Apr. 13, 2012) ................................................ - 17 -

*Anderson v. Nextel Retail Stores, LLC*,
    2010 U.S. Dist LEXIS 71598 (C.D. Cal. June 30, 2010) ............................ - 22 -

*Bluetooth Headset Products Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................... - 11 -, - 18 -

*Broughton v. Cigna Healthplans*,
    21 Cal. 4th 1066 (1999) .............................................................................. - 10 -

*Browne v. American Honda Motor Co.*,
    2010 U.S. Dist LEXIS 144823 (C.D. Cal. Oct. 5, 2010) ............................. - 14 -

*Californians for Responsible Toxics Mgmt. v. Kizer*,
    211 Cal.App.3d 961 (1989) ............................................................................ - 8 -

*Carter v. Anderson Merchandisers, LP*,
    2010 WL 1946757 (C.D. Cal. May 11, 2010) .............................................. - 22 -

*Chambers v. Whirlpool Corp.*,
    2016 WL 5922456 (C.D. Cal. 2016) ............................... - 6 -, - 18 -, - 19 -

*Children's Hospital and Med. Center v. Bonta*,
    97 Cal. 4th 740 (2002) ................................................................................. - 15 -

*City of Sacramento v. Drew*,
    207 Cal.App.3d 1287 (1989) ........................................................................... - 6 -

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010) ............................................................... - 17 -

*Diamond v. John Martin Co.*,
    753 F.2d 1465 (9th Cir. 1985) ...................................................................... - 18 -

*Fischel v. Equitable Life. Assur. Soc'y*,
    307 F.3d 997 (9th Cir. 2002) ........................................................................ - 16 -

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ...................................................................... - 12 -

*Fraley v. Facebook, Inc.*,
  2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) ........................................................ - 16 -

*Graciano v. Robinson Ford Sales, Inc.*,
  144 Cal. App. 4th 140 (2006) .............................................................................. - 7 -

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) ........................................................................................ - 8 -

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ................................................................................... - 21 -

*Henderson v. J.M. Smucker Co.*,
  2013 WL 3146774 (C.D. Cal. June 19, 2013) ..................................................... - 7 -

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................ - 7 -, - 11 -, - 12 -

*Hopson v. Hanesbrands Inc.*,
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .......................................................... - 22 -

*Horsford v. Board of Trustees of California State Univ.*,
  123 Cal.App. 4th 359 (2005) ............................................................................... - 12 -

*In re Am. Apparel S'holder Litig.*,
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .................................. - 21 -

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  2016 WL 4126533 (N.D. Cal. 2016) .................................................................... - 16 -

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009) .............................................................................. - 11 -

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................................. - 22 -

*In re High-Tech Employee Antitrust Litigation*,
  2015 WL 5158730 (N.D. Cal. 2015) .................................................................... - 15 -

*In re HP Inkjet Printer Litigation*,
  716 F.3d 1173 (9th Cir. 2013) ............................................................................. - 20 -

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) .................................................................... - 21 -

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)............................................................... - 22 -

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................... - 21 -

*In re Toyota Motor Corp.*,
  2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013) ........................... - 17 -

*Johansson-Dohrmann v. Cbr Systems, Inc.*,
  2013 WL 3864341 (S.D. Cal. Jul. 24, 2013) ........................................... - 17 -

*Kearney v. Hyundai Motor America*,
  2013 WL 3287996 (C.D. Cal. June 28, 2013) .......................................... - 15 -

*Kearney v. Hyundai Motor Am.*,
  2013 U.S. Dist. LEXIS 9163 (C.D. Cal. June 28, 2013) ............................. - 14 -

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ...................................................................... - 11 -

*Kim v. Euromotors West/The Auto Gallery*,
  149 Cal. App. 4th 170 (2007)................................................................ - 10 -

*Lafitte v. Robert Half Int'l Inc.*,
  231 Cal. App. 4th 860 (2014)................................................................ - 16 -

*Lealao v. Beneficial Calif.*,
  82 Cal. App. 4th 19 (2000) .................................................................. - 16 -

*Lyons v. Chinese Hosp. Ass'n*,
  136 Cal. App. 4th 1331 (2006)................................................................ - 6 -

*MacDonald v. Ford Motor Co.*,
  142 F.Supp.3d 884 (N.D. Cal. 2015)....................................................... - 8 -

*Mangold v. Calif. Public Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995)............................................. - 5 -, - 6 -, - 18 -

*Meister v. Regents of Univ. of California*,
  67 Cal. App. 4th 437 (1998) ................................................................ - 10 -

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008)............................................................... - 15 -

*Milligan v. Toyota Motor Sales, U.S.A.*,
    2012 U.S. Dist. LEXIS 189782 (N.D. Cal. Jan 6, 2012) ................................ - 14 -

*Parkinson v. Hyundai Motor Am.*,
    796 F.Supp.2d 1160 (C.D. Cal. 2010) ................................................. - 15 -

*Roberti v. OSI Sys.*,
    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. Dec. 8, 2015) ........................... - 21 -

*Roberts v. Electrolux Home Prods., Inc.*,
    2014 WL 4568632 (C.D. Cal. 2014) ................................................. - 19 -

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ...................................................... - 18 -

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................... - 22 -

*Ryan v. California Interscholastic Federation*,
    94 Cal. App. 4th 1033 (2001) ....................................................... - 9 -

*Serrano v. Priest*,
    20 Cal.3d 25 (1977) .................................................. - 6 -, - 10 -, - 14 -

*Shames v. Hertz Corp.*,
    2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ........................... - 19 -

*Tazel v. City of Richmond*,
    2007 WL 172379 ..................................................................... - 8 -

*Vasquez v. State of California*,
    45 Cal. 4th 243 (2008) .............................................................. - 6 -

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................... - 5 -

*Vo v. Las Virgenes Municipal Water Dist.*,
    79 Cal.App. 4th 440 (2000) ................................................. - 12 -, - 13 -

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ........................................................ - 16 -

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009) ....................................................... - 11 -

*Woodland Hills Residents Assoc., Inc. v. City Council,*
  23 Cal.3d 917 (1979) ................................................................. - 6 -

*Wren v. RGIS Inventory Specialists,*
  2011 U.S. Dist. LEXIS 38667 (N.D. Cal. April 1, 2011) ............................................. - 22 -

## STATUTES

28 U.S.C. § 1712 ................................................................. - 18 -

28 U.S.C. § 1712(c) ............................................................. - 19 -, - 20 -

28 U.S.C. §1712(b) ............................................................. - 20 -

Cal. Civ. Code Section 1780(e) ............................................... - 1 -, - 10 -, - 20 -

Cal. Civ. Code Section 1021.5 ................................................ - 1 -

## RULES

Fed. R. Civ. P. 23(b)(3) ....................................................... - 7 -

Fed. R. Civ. P. 23(h) .......................................................... - 1 -, - 5 -, - 20 -

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on March 21, 2017 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, before the Honorable Claudia Wilken, plaintiffs Julia Reniger, Greg Battaglia, Lucia Saitta and Ann Mancuso ("Plaintiffs") will, and hereby do, move the Court for entry of an order awarding attorneys' fees, costs, expenses, and service awards to class representatives.

Plaintiffs bring this motion pursuant to Fed. R. Civ. P. 23(h) on the grounds that the parties' Settlement Agreement authorizes the requested fees, costs, expenses and service awards, which are also warranted under, *inter alia*, the Consumers Legal Remedies Act, Cal. Civ. Code Section 1780(e), and the Private Attorney General Statute, Cal. Civ. Proc. Code Section 1021.5.   This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Mark S. Greenstone, the Declaration of Kirk D. Kleckner, the Declarations of Plaintiffs, the Declaration of the Claims Administrator, the [Proposed] Order, all pleadings and other documents on file in this action, and such other matters as may be presented at or in connection with the hearing.

DATED:  January 12, 2017            GLANCY PRONGAY & MURRAY LLP


By:  *s/ Mark S. Greenstone*
Lionel Z. Glancy
Marc L. Godino
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiffs*

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES
Case No.  4:14-cv-03612-CW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Through this litigation, Plaintiffs have secured an outstanding benefit for the owners and lessees of the 77,331 Class Vehicles and the public: extension to all Class Vehicles of a free 10 year service campaign ("Campaign 929A") without mileage restriction designed to remedy the stalling issue that is the subject of Plaintiffs' Complaint ("Stalling Defect").  Defendants have agreed not to oppose Plaintiffs' request for $745,000 in fees and costs which is less than Plaintiffs lodestar and actual costs incurred.  By any measure, Plaintiffs' counsel's requested fees are justified.

To date, Class Counsel have devoted approximately 1,314.58 hours with a combined lodestar value of $736,225.25 and have incurred $33,661.73 in unreimbursed expenses to achieve the excellent result here.  These fees and costs were incurred as a result of intensive pre- and post-filing investigation that included personally interviewing over two hundred class members, aggressive law and motion practice, formal and informal discovery and mediation process that spanned three months.  Measured by lodestar, Plaintiffs counsel's requested fees—representing a negative lodestar—are clearly justified.

Plaintiffs' expert, Kirk D. Kleckner, a renowned automotive settlement valuation expert, has estimated that the Campaign 929A benefit attributable to Plaintiffs' efforts alone has a value of **$5,050,000**.  This valuation does *not* include the reimbursement program for out-of-pocket costs or rebate certificates for those who wish to replace their vehicles notwithstanding the Campaign 929A remedy, also provided under the proposed Settlement Agreement.  Plaintiffs' requested fees, after deduction of costs, are only 14% of Mr. Kleckner's valuation and well

below the generally accepted benchmark.  Thus, measured on a percent-of-the-fund basis, Plaintiffs' counsels' requested fees are also clearly justified.

Plaintiffs' request for class representative service awards of $2,500 is also justified by the nature of the case and work performed, and is commensurate with awards in similar cases.

Accordingly, Plaintiffs' request for an award of attorneys' fees, costs, expenses, and class representative service awards should be granted.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Pursuant to the Procedural Guidance for Class Action Settlements posted on the Northern District's website, Plaintiffs refer the Court to the Procedural and Factual Background set forth in Section II of the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, filed concurrently herewith.

## III.   THE SETTLEMENT BENEFITS ARE SUBSTANTIAL

Under the proposed Settlement Agreement, Defendants agree that the Campaign 929A Software Update (or its functional equivalent) will remain available free-of-charge for 10 years after the date the Class Vehicles were first put into circulation as "new" vehicles. Settlement Agreement, ¶ III.D.  This benefit is available to *all* owners and lessees of the 77,331 Class Vehicles without a mileage restriction.  Defendants also agree to fully reimburse all out-of-pocket costs incurred at any authorized Hyundai dealer[1] for any diagnosis or repair associated with the Stalling Defect.  Significantly, there is *no cap* on the amount that may be claimed for these costs.  In addition, Defendants agree to reimburse third-party towing and car rental costs of up to $250.  *Id.*, ¶ III.A.  And finally, notwithstanding the availability of

---

[1] Because the Class Vehicles are model year 2010 through 2012 vehicles with warranties ranging from five to ten years depending on the component, the vast majority would have been taken to authorized Hyundai dealers for repairs and diagnosis during the relevant time period.

reimbursement for out-of-pocket expenses and the Campaign 929A remedy, the proposed Settlement Agreement also provides a special cash incentive for replacement vehicles.[2] *Id.*, ¶ III.B.  Reimbursement for out-of-pocket costs and rebate certificates are available on a claims-made basis to the subset of Class Members with documented proof of a 929A condition stall.[3]

The primary achievement of the litigation is the expansion of Campaign 929A to cover all 77,331 Class Vehicles, and the guarantee to keep it available, free of charge, for 10 years. It is the Campaign 929A remedy that Defendants contend has remedied the Stalling Defect based on Defendants' warranty claims data, providing Class Members with the benefit of their bargain (a non-defective vehicle) and promoting public safety as well.  Greenstone Decl., ¶5 and Exh. A.  Through the Settlement, Campaign 929A becomes a judicially enforceable guarantee that may not be revoked.  Settlement Agreement, ¶ III.D.

To value the Campaign 929A benefit conferred by the litigation *only*, Plaintiffs retained Kirk D. Kleckner, a respected valuation expert who has provided opinions in numerous other automobile class actions, including *In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, And Products Liability Litigation*, No. 8:10ML2151 JVS (FMOx). Declaration of Kirk D. Kleckner, ¶ 1.d and Exh. A.  As Mr. Kleckner explains,

---

[2] The rebate certificate ranges from $250 to $1,000 depending on the type of new vehicle purchased or leased, and is doubled for those who have experienced multiple stalls at least one of which occurred after implementation of Campaign 929A.  Settlement Agreement, ¶ III.C.

[3] "929A Condition" is a documented stall in a Class Vehicle that does not generate a diagnostic trouble code ("DTC").  Specifically, some vehicle stalls generate a code that is stored in the vehicle's on-board computer system and that dealers often note in the repair order.  A 929A Condition stall is a stall that does ***not*** generate such a code.  If a repair order does ***not*** identify a particular code or cause for the stall, it will be considered a 929A Condition stall.  This definition is consistent with Class Members' real-world experiences of the Stalling Defect as an unexplained random occurrence.

the 929A guarantee achieved by this litigation may be analogized to an extended warranty for valuation purposes.   Using data provided by the parties concerning the litigation and the implementation of Campaign 929A, and additional information obtained independently concerning the warranty marketplace, Mr. Kleckner concluded that this benefit, standing alone, has a value to Class Members of **$5,050,000**.   *Id*., ¶¶ 4.b & 5.a.   Mr. Kleckner's analysis specifically excludes the benefit extended to a portion of the Class by the initial 929 Campaign launched just prior to the filing of Plaintiffs' initial Complaint.   In addition, Mr. Kleckner also specifically excludes the value of the other elements of the proposed Settlement Agreement, *i.e*., the reimbursement program and the rebate certificates.   *Id*., ¶ 2.b.

## IV.      THE REQUESTED FEE IS FAIR, REASONABLE AND JUSTIFIED

In a successful class action, Rule 23(h) permits the Court to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."   Fed. R. Civ. P. 23(h).   The proposed Settlement Agreement permits Class Counsel to seek attorneys' fees and reimbursement of expenses of no more than $745,000.   Settlement Agreement, ¶¶ I.11 & 39, IX. These fees are fair, reasonable and justified.

### A.      California Law Governs Both the Entitlement to and Computation of Fees

California law governs this action.   "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees."   *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the underlying claims in a diversity action "also governs the award of fees."   *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).[4]

---

[4] Plaintiffs' operative Complaint invokes diversity jurisdiction (see Fourth Amended Complaint (Dkt. 79 at ¶¶ 66–70) and the principal claims asserted by Plaintiffs here are California state law claims arising under the CLRA, UCL, Song Beverly's implied warranty

**B.** **Plaintiffs Are Entitled To Fees Under The Private Attorney General Statute and the CLRA**

    **1.** **Plaintiffs are Entitled to Fees Under the Private Attorney General Statute**

Plaintiffs are entitled to a fee award under Code of Civil Procedure § 1021.5, which the California Legislature enacted to codify the private attorney general doctrine previously developed by the courts. *Vasquez v. State of California*, 45 Cal. 4th 243, 250 (2008). The "fundamental objective" of Section 1021.5 is "to encourage suits effectuating a strong [public] policy by awarding substantial attorneys' fees…to those who successfully bring such suits…" *Woodland Hills Residents Assoc., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (*quoting Serrano v. Priest*, 20 Cal.3d 25, 43 (1977)). The statute "seeks to induce persons to shoulder a burden disproportionate to their personal financial stake in order to ensure the vindication of important public rights that might otherwise be disregarded." *City of Sacramento v. Drew*, 207 Cal.App.3d 1287, 1301 (1989). Accordingly, Section 1021.5 authorizes an award of attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or non-pecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Code of Civ. Proc. § 1021.5; *see also Lyons v. Chinese Hosp. Ass'n,* 136 Cal. App. 4th 1331, 1344 (2006)

---

provisions and common law fraud. The only federal claim is an *entirely* derivative implied warranty claim under the Mag-Moss. *See* Fourth Amended Complaint at ¶¶ 100-133; 142-149; 159-172. Hence California law applies. *See Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *1, *10 (C.D. Cal. 2016) (applying California law to determine fees in settlement of washing machine defect class action where plaintiffs alleged claims under California consumer protection statutes, as well as claims under the laws of other states and derivative Mag-Moss claims); *Mangold,* 67 F.3d at 1478 (9th Cir. 1995) (applying California law in case where plaintiff succeeded on both state and federal claims).

("Although section 1021.5 is phrased in permissive terms (the court 'may' award), the discretion to deny fees to a party that meets its terms is quite limited.").  Plaintiff satisfies this standard.

Plaintiffs are a "successful party."  California courts determine prevailing party status based on whether a party succeeded on a practical level.  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150–51 (2006).  Under this pragmatic approach, Plaintiffs may be considered prevailing parties "if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit."  *Id.* at 153 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis in original)).

Here, Plaintiffs' operative Complaint alleges that Defendants violated the UCL by selling vehicles which they were aware contained the Stalling Defect, and seeks to have Defendants notify Class Members of the Defect and offer a free repair and reimbursement of out-of-pocket expenses.  *See* Fourth Amended Complaint (Dkt. 79) at ¶¶ 100-118; 173(e).  For settlement purposes only, the Court preliminary certified a Rule 23(b)(3) class.  Preliminary Approval Order, ¶ 3.  The proposed Settlement Agreement succeeded in achieving these benefits sought by Plaintiffs in connection with their UCL claim by guaranteeing the availability of Campaign 929A, free of charge and without mileage limitation for 10 years and by providing for reimbursement of out-of-pocket costs.  Settlement Agreement, ¶ III.A & D.

Plaintiffs are also prevailing parties under what is commonly known as the catalyst theory, under which a plaintiff is a prevailing party entitled to fees pursuant to Section 1021.5 where: (1) plaintiff's lawsuit was a catalyst motivating defendant to provide the relief sought; (2) the lawsuit had merit; and (3) plaintiff reasonably attempted to settle the action before filing the lawsuit.  *Henderson v. J.M. Smucker Co.*, 2013 WL 3146774, at *4 (C.D. Cal. June 19,

2013); *see also Tazel v. City of Richmond*, 2007 WL 172379, at *12 ("A defendant's voluntary action induced by plaintiff's lawsuit will still support an attorney fee award on the rationale that the lawsuit spurred defendant to act or was a catalyst speeding defendant's response"). Importantly, to prevail on a catalyst theory, a plaintiff need not show that plaintiff was the *only* cause of defendant's remedial actions, but rather just that plaintiff was *a* significant cause. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 573 (2004). Further, "[w]hen action is taken by defendant after plaintiff's lawsuit is filed, the chronology of events may permit the inference that the two events are causally related." *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal.App.3d 961, 968 (1989).

When Plaintiffs filed this case in August 2014, the initial 929 Campaign had been extended to approximately half of the Class Members.[5] Greenstone Decl., ¶ 3. Defendants argued Plaintiffs claims were moot (*see* Motion to Dismiss (Dkt. 13 at 8; 13-14)), but Plaintiffs persevered alleging that the initial 929 Campaign was under inclusive (*see* SAC (Dkt. 21) at ¶¶12-29)). Plaintiff specifically demanded that Defendants extend a remedy to the entire Class and reimburse out of pocket expenses. *See* SAC at ¶ 196(d) & (e). This is exactly what Plaintiffs achieved. Eight months after Plaintiffs filed suit, Defendants launched Campaign 929A which extended the 929 ECM upgrade to the 33,050 Class Vehicles not covered under the original 929 Campaign, and added an ECT cleaning for all Class Members. Greenstone Decl., ¶ 5. Although Defendants extended this benefit to the Class prior to the Settlement, the chronology supports the strong inference that Plaintiffs were a substantial factor in bringing it about. *See MacDonald v. Ford Motor Co.*, 142 F.Supp.3d 884, 891–92 (N.D. Cal. 2015) (chronology of events gave rise to inference that lawsuit was substantial factor in decision to

---

[5] Prior to filing, Plaintiffs sent Defendants a CLRA letter describing the Stalling Defect and demanding remedial action. *See* Fourth Amended Complaint (Dkt. 79), ¶ 114.

recall where Ford issued recall after plaintiff filed amended complaint seeking relief in form of manufacturer's notice of defect to class members and replacement of defective component). And of course, through the Settlement, Campaign 929A is guaranteed to remain available, free of charge for ten years.  Settlement Agreement, ¶ III.D.

Plaintiffs also satisfy the other factors for an award of fees under Section 1021.5. Specifically:

● Plaintiffs are "prevailing plaintiffs" under Section 1020.5 for the same reasons that they are prevailing plaintiffs under the CLRA: from a pragmatic standpoint, Plaintiffs have achieved their litigation objectives.  Thus, Section 1020.5 provides an independent statutory basis for an award of fees.

● Plaintiffs' action conferred a significant benefit on a large class of persons. Defendants contend, based on warranty data, that Campaign 929A has effectively resolved the Stalling Defect.  By causing the Campaign to be extended to the entire class, and by guaranteeing its continued availability, as well as reimbursement for out of pocket expenses, Plaintiffs have made the Class whole.  Plaintiffs have also made the roads safer for everyone by helping to resolve a systemic auto defect affecting a significant number of vehicles.

● Without the incentive of an attorney fees award, Plaintiffs could not have afforded lawyers to litigate this case; their out-of-pocket losses were not significant enough to hire a lawyer and litigate an individual suit.  *See Ryan v. California Interscholastic Federation,* 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award *is appropriate where the cost of the* legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiffs individual stake in the matter.")(emphasis added) .

●    Finally, this is not a case where, in the interests of justice, attorney fees should be paid from the recovery. There is no common fund from which Class Counsel could be paid, and Defendants have agreed not to oppose Plaintiff's request for $745,000 for attorney fees and expenses.

### 2. Plaintiffs are Entitled to Fees under the CLRA

Under the CLRA, one of the claims alleged in the case, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]." Cal. Civ. Code § 1780(e). As the California Supreme Court has observed, "the availability of costs and attorneys' fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Broughton v. Cigna Healthplans,* 21 Cal. 4th 1066, 1086 (1999). "Accordingly, an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pretrial settlement agreement." *Kim v. Euromotors West/The Auto Gallery,* 149 Cal. App. 4th 170, 178–79 (2007).

Plaintiffs are "prevailing plaintiffs" under the CLRA for the same reasons that they are prevailing plaintiffs under Section 1021.5 – from a pragmatic standpoint, Plaintiffs have achieved their litigation objectives. Thus, the CLRA provides an independent statutory basis for an award of fees.

### C. Plaintiffs' Request for Attorneys' Fees Is Reasonable Under the Lodestar Method

Under California law, the lodestar is the "starting point of every fee award." *Serrano v. Priest,* 20 Cal. 3d 25, 48 n.23 (1977). "[T]he California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation." *Meister v. Regents of Univ. of California,*

67 Cal. App. 4th 437, 448–49 (1998).  For any fee application subject to a statutory award, courts should "presume that the Legislature intended courts to use the prevailing lodestar adjustment method." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001); *accord Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes").

California's lodestar method is a two-step process.  To determine the lodestar, the Court must first multiply "the number of hours reasonably expended on the litigation…by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941.  This base "unadorned" lodestar figure is "presumptively reasonable." *Id*.  The Court may then enhance or reduce the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the ultimate success achieved. *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556 (2009).

Class Counsel invested approximately 1,314.58 hours prosecuting Plaintiffs' claims and have a lodestar of $736,225.25, as detailed in the accompanying Declaration of Mark S. Greenstone.  To assist the Court in evaluating the reasonableness of this lodestar, Class Counsel have presented sworn summaries of their work. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (internal citation and quotations omitted) (when awarding fees under a California fee-shifting statute, "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees"). These summaries are sufficient evidence for the Court to make a determination as to the reasonableness of Class Counsel's lodestar, as it is well established that in moving for fees, counsel is "not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  Instead, counsel need only

"identify the general subject matter of his time expenditures."  *Id.*; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("a summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of documentation).

### 1.    Plaintiffs' Counsel's Hours Expended are Reasonable

In making a determination as to the reasonableness of the hours, courts must "focus on providing an award of attorneys' fees reasonably designed to fully compensate plaintiffs' attorneys for the services provided."  *Horsford v. Board of Trustees of California State Univ.*, 123 Cal.App. 4th 359, 395 (2005).  Courts do so by looking at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics…"  *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App. 4th 440, 445 (2000).

The "entire course of the litigation" here shows that Class Counsel exerted extraordinary efforts at every step to achieve an outstanding result for the class.  As part of its independent investigation, which began months before the filing of the initial complaint, Class Counsel personally interviewed over ***two hundred*** putative Class Members.  Greenstone Decl., ¶ 8.  In addition, Counsel researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the Stalling Defect; reviewed and researched consumer complaints and discussions of the Stalling Defect in articles and forums online; reviewed various manuals and technical service bulletins discussing the alleged Defect; and, conducted research into the various causes of action.  *Id.*

When Defendants filed their first motion to dismiss arguing that this action was moot in light of the initial 929 Campaign, Counsel redoubled their efforts.  Through additional independent investigation, Class Counsel obtained evidence that not all Class Members had

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

been included in Defendants' service campaign, and filed a detailed SAC documenting Class Members' ongoing stalling problems.  See SAC (Dkt. 21) at ¶¶ 12–29.  Defendants then filed another motion to dismiss, as well as a motion to strike Plaintiffs' nationwide class allegations, which the parties briefed, including supplemental briefing requested by the Court.

In terms of formal discovery, propounded comprehensive sets of written discovery on Defendants regarding, among other things: warranty data regarding stalling complaints of Class Vehicles, customer relations records; Quality Information Reports regarding the Stalling Defect; owner's manuals and warranty booklets for Class Vehicles; communications with suppliers of alternators and throttle bodies for Class Vehicles; communications between Defendants' employees regarding the Stalling Defect; communications between Defendants' employees and third parties regarding the Stalling Defect; marketing brochures for Class Vehicles; FSE reports regarding the Stalling Defect on Class Vehicles; and, sales information regarding the Class Vehicles.   Greenstone Decl., ¶ 9.   In response, Defendants produced and Class Counsel reviewed Quality Information Reports generated in connection with Defendants' analysis of the Stalling Defect; warranty claims data; technical service bulletins; Class Vehicle manuals and brochures; consumer complaints; field service reports; and other related information.  *Id*.

Because of the size and complexity of this matter, the settlement negotiations and the process of documenting the settlement, were also drawn out.  On December 15, 2015 the parties attended a full-day mediation before Hon. Edward A. Infante (Ret.), for which they submitted detailed mediation briefs, and for which Class Counsel flew from Los Angeles to San Francisco. Greenstone Decl., ¶ 6.  Thereafter, with Judge Infante's assistance, the parties negotiated for approximately three months before finalizing the Settlement.  *Id*.  Class Counsel has spent significant additional time shepherding this case through the approval process, fielding regular

1    inquiries from Class Members, in addition to drafting the necessary documentation.  Greenstone

2    Decl., ¶ 14.

3           The 1,314.58 hours expended on the above tasks are reasonable and compare favorably

4    to the hours submitted by counsel in class actions of comparable duration involving a technical

5    automobile defect.  For example, *Kearney v. Hyundai Motor Am.*, 2013 U.S. Dist. LEXIS

6    91636, at *24 (C.D. Cal. June 28, 2013), a class action involving allegations of defective

7    airbags, also spanned about two years.  The only contested motion was a motion to dismiss.

8    Counsel submitted billing showing 1864.8 hours worked and was awarded fees for all work

9    already performed in the amount of $776,707.50.  *Id.*  In *Milligan v. Toyota Motor Sales,*

10   *U.S.A.*, 2012 U.S. Dist. LEXIS 189782, at *30 (N.D. Cal. Jan 6, 2012), a case spanning

11   approximately two years, that was partially mooted by an intervening settlement between

12   Toyota and a state regulatory agency, the plaintiffs' counsel reported having spent over 1,600

13   hours on the case.  As in *Kearney*, the only contested motion in *Milligan* was a motion to

14   dismiss, and much of the remaining work was for pre-litigation investigation and confirmatory

15   discovery.  *Id.* at *31.  The *Milligan* court ultimately awarded fees in the amount of $806,620.

16   In *Browne v. American Honda Motor Co.*, 2010 U.S. Dist LEXIS 144823, at *5 (C.D. Cal. Oct.

17   5, 2010), there was no contested motion practice, and  the action  settled soon after the

18   complaint was filed.  The court nonetheless evaluated the activities in the case, and approved

19   plaintiffs' counsel's 3,201 reported hours and awarded $2 million in fees after applying a 1.5

20   multiplier.  *Id.* at *32–35.  Much of the work was devoted to pre-filing investigation.  *Id.*

21          All told, Plaintiffs' Counsel's lodestar of $736,225.25 reflecting 1,314.58 hours worked

22   is reasonable.  This figure is not excessive, and does not reflect duplicative or unnecessary

23   work.  Indeed, courts should defer to successful counsel's judgment as to how much work was

1
2
3

needed to succeed.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Accordingly, the time devoted by Plaintiffs' Counsel in prosecuting this case is reasonable and

should be approved.

4
5

### 2.      Plaintiffs' Counsel's Rates are Reasonable

6
7
8
9
10
11
12
13
14
15
16
17

Plaintiffs' Counsel's hourly rates, which range from $350 for associates to $700 for

senior attorneys are also reasonable.  Counsel are entitled to their requested hourly rates if

those rates are within the range of rates charged by and awarded to attorneys of comparable

experience, reputation, and ability for similar work, *i.e.*, complex class action litigation.

*Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming that

rates were "within the range of reasonable rates charged by, judicially awarded to, comparable

attorneys for comparable work").  "Courts may find hourly rates reasonable based on

evidence of other courts approving similar rates or other attorneys engaged in similar

litigation charging similar rates."  *Parkinson v. Hyundai Motor Am.,* 796 F.Supp.2d 1160,

1172 (C.D. Cal. 2010).

18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiffs' Counsel's rates have been approved by multiple other courts (*see*

Greenstone Decl., ¶ 31), and are consistent with other attorneys engaged in similar complex

litigation.  *See In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730, at *9 (N.D.

Cal. 2015) (finding reasonable "billing rates for partners [that] range from about $490 to $975

… billing rates for non-partner attorneys, including senior counsel, counsel, senior associates,

associates, and staff attorneys, [that] range from about $310 to $800, with most under $500 …

[and] billing rates for paralegals, law clerks, and litigation support staff [that] range from

about $190 to $430, with most in the $300 range."); *Kearney v. Hyundai Motor America,*

2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (approving hourly rates between $650 and

$800 for class counsel in a consumer class action); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2016 WL 4126533, at *7 (N.D. Cal. 2016) ("billing rates between $350 and $875 are reasonable within this legal market for cases of this size, type, and complexity").

Accordingly, Plaintiffs' Counsel's hourly rates are reasonable.

### D. Plaintiffs' Request for Attorneys' Fees is Also Reasonable Under Percentage-of-the-Fund Method

Although the lodestar method is the primary method for determining fees under California law, both California and federal courts also recognize the percentage-of-the-fund method as valid. In addition, consideration of the value of the benefit conferred—a core component of the percentage of the fund analysis—can of course serve as a cross-check against the reasonableness of the lodestar, and whether a multiplier should be applied.

Under both California and federal law, "courts possess the 'discretion to apply either a lodestar method or the percentage-of-the-fund method in calculating a fee award.'" *Fraley v. Facebook, Inc.*, 2013 WL 4516806, at *2 (N.D. Cal. Aug. 26, 2013) (quoting *Fischel v. Equitable Life. Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001) (courts may use "percentage of recovery method" or "lodestar/multiplier method" to calculate attorney fees in civil class actions). Indeed, California courts have specifically noted the advantages of using the percentage-of-the-fund method. *See, e.g.*, *Lafitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860, 878 (2014) (noting application of the percentage method in California cases); *Lealao v. Beneficial Calif.*, 82 Cal. App. 4th 19, 50–51 (2000) (analyzing fee request under the percentage method of the maximum payout even "though the settlement did not create a common fund out of which fees are to be paid"). The percentage-of-the-fund method is appropriate where "the class benefit can be monetized with a

reasonable degree of certainty." *Johansson-Dohrmann v. Cbr Systems, Inc.*, 2013 WL 3864341, at *8 (S.D. Cal. Jul. 24, 2013).

Automobile defect cases of this type are amenable to precise valuation justifying application of the percentage-of-the-award method, *i.e.*, by calculating the fee request as a percentage of the total value of the warranty provisions conferred. *See Alin v. Honda Motor Co.*, 2012 WL 8751045, at *19 (D.N.J. Apr. 13, 2012) (awarding fees of $2,423,523.23 based on 6.3% of the benefit conferred, which consisted of partial reimbursements in connection with air conditioning system problems); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 609 (D.N.J. 2010) *rev'd and remanded sub nom. Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) (awarding fees of $9,207,248.19 based on 13.3% of the benefit conferred, which consisted of reimbursements and service work in connection with water leakage problems); *In re Toyota Motor Corp.*,  2013 U.S. Dist. LEXIS 94485, at *211 (C.D. Cal. June 17, 2013) (valuing the relief involving the installation of a break override system at $400 million); *In re Audi and Volkswagen Warranty Extension Litig.*, No. 07- 01790 (D. Mass.), Dck. No. 430 at 32 (valuing reimbursements, oil-change discounts, extended warranties, and education campaign at $101,148,498 and awarding $15,468,000 in fees, which is equivalent to 15.3% of the benefits conferred).  Accordingly, the Court may use the percentage-of-the-award method to evaluate the reasonableness of Plaintiffs' fee request in light of that valuation.

Here, as explained in § III, *supra*, the Campaign 929A benefit conferred by this litigation, standing alone, has a value of **$5,050,000**.  Kleckner Decl., ¶ 5.a.  This does ***not*** include the benefit extended to a portion of the Class by the initial 929 Campaign launched just prior to the filing of Plaintiffs' initial Complaint.  *Id.*, ¶ 2.b.  In addition, Mr. Kleckner also specifically excludes the value of the other elements of the proposed Settlement Agreement, *i.e.*,

the reimbursement program and the rebate certificates.  *Id.*  Mr. Kleckner's valuation therefore represents a *bare minimum* valuation.

Plaintiffs' Counsel's requested fees of $736,225.25 amount to only 14% of the bare minimum value attributed by Mr. Kleckner to the Campaign 929A  benefit conferred by Plaintiffs.  This amount is well below the generally accepted 25% benchmark in this Circuit and provides an independent basis for Plaintiffs' Counsel's requested fees.  In addition, it provides further justification for the reasonableness of Plaintiffs' Counsel's lodestar.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 ("Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure.").

### E.  This is *Not* a Coupon Settlement

Plaintiffs note that the availability of a rebate certificate to a portion of the class, in addition to other substantial relief, does *not* convert the proposed Settlement Agreement into coupon settlement subject to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, for at least three reasons.

First, because the entitlement to and computation of fees is governed by California state law, CAFA § 1712 does not apply.  *See Chambers*, 2016 WL 5922456, *10; *see also Mangold,* 67 F.3d at 1478; *Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985) ("The rule in this circuit requires that federal courts in diversity actions apply state law with regard to the allowance (or disallowance) of attorneys' fees."); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012) ("If…we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees").

Second, as discussed at length above, the *primary* benefit here is the Campaign 929A benefit.  The settlement would be fair, adequate and reasonable if it provided only  the Campaign 929A benefit and reimbursement for out-of-pocket costs.  Including the added benefit of a rebate certificate on top of, or in lieu of, these other substantial benefits "does not necessarily transform a class action settlement into a coupon settlement under CAFA." *Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918, at *7 (S.D. Cal. Sept. 24, 2013).  For example, in *Roberts v. Electrolux Home Prods., Inc.*, 2014 WL 4568632 (C.D. Cal. 2014), the settlement gave cash reimbursements to class members who had already or would in the future incur out-of-pocket expenses due to a clothing dryer fire, provided safety notices and a safety cleaning service, and also provided class members with rebates of up to $350 off the purchase of a new dryer.  *Id.* at *4.  The court awarded class counsel $8 million in fees and expenses based on their lodestar enhanced by a l.23 multiplier, without ever referencing CAFA—notwithstanding the fact that rebates were an element of the settlement. *Id.* at *8.  Similarly in *Chambers* the court did not apply CAFA even though the settlement provided rebates along with other substantial relief.  2016 WL 5922456, at *2–3, *10.

Third, while CAFA contemplates "mixed" settlements, the only mixture it addresses is coupons plus some form of equitable relief. *See* 28 U.S.C. § 1712(c) (allowing a fee award based on a mixture of a percentage of the redeemed coupons and lodestar in settlements that "provide[] for an award of coupons to class members and also provide[] for equitable relief, including injunctive relief").  Thus, courts have rejected arguments that settlements providing both coupon and cash relief (here, in the form of a reimbursement program), are coupon settlements under CAFA. *See, e.g., Shames v. Hertz Corp.,* 2012 U.S. Dist. LEXIS 158577, at *55–56 n.14 (S.D. Cal. Nov. 5, 2012) (rejecting objector's argument that a settlement with a

coupon option was a coupon settlement, noting that § 1712(c) does not address settlements that involve "monetary relief in the form of cash payments"). Such cases are instructive even where they involved settlements in which all class members were afforded the option of cash relief (or "cash-like" vouchers).

Moreover, even if CAFA did apply, which it does not, Plaintiffs entitlement to fees would not change. Under CAFA, "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorneys' fee award shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. §1712(b). *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1183 (9th Cir. 2013) ("Whereas § 1712(a) governs cases where the class obtains only coupon relief, § 1712(b) applies in situations where a coupon settlement also provides for non-coupon relief"). Plaintiffs do not base their fee request on the rebate certificates made available to Class Members under the proposed Settlement Agreement. Thus, under Section 1712(b) the lodestar method would apply. This is one of the two primary methods endorsed under California law and, as discussed below, Plaintiffs fees are fully justified under the lodestar method.

## V.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES, WHICH ARE REASONABLE

Rule 23(h) also permits the Court to "award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Section 11.1 of the Revised Settlement Agreement permits Class Counsel to seek reimbursement of their reasonable expenses. In addition, the CLRA provides for an award of court costs to Plaintiff in addition to an award of attorney fees. Cal. Civ. Code § 1780(e) ("[t]he court shall award court costs and attorney's fees to a prevailing plaintiff.").

Attorneys who create benefit for a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund or benefit, so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action. *See Roberti v. OSI Sys.*, 2015 U.S. Dist. LEXIS 164312, at *20 (C.D. Cal. Dec. 8, 2015) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (class counsel may recover reasonable expenses typically billed to paying clients in non-contingent litigation)); *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *88 (C.D. Cal. July 28, 2014); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007) ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in noncontingency matters."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (same).

Plaintiffs' Counsel have incurred expenses in the prosecution of this Action in the total amount of $33,661.73. These expenses represent less than 5% of the combined lodestar of Class Counsel. All the expenses are described in the accompanying declarations of Plaintiff's Counsel. Greenstone Decl., ¶¶ 33–4.

From the beginning of the case, Plaintiffs' Counsel were aware they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the Action was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced to prosecute the Action.

## VI.   THE REQUESTED SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE REASONABLE AND SHOULD BE APPROVED

Upon the conclusion of a successful class action case, the Court has discretion to award the representative plaintiffs a service payment (also known as an incentive payment) as

compensation for the work done on behalf of the class.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

Here, each of the four representative Plaintiffs seek a service payment in the amount of $2,500.  Such an incentive compensation award is regularly (if not routinely) granted in the exercise of discretion by courts in this Circuit in similar class and representative litigation.  *See, e.g., Staton*, 327 F.3d at 977; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *46–47 (C.D. Cal. June 10, 2005); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667, at *38 (N.D. Cal. April 1, 2011).  "Such awards are intended to 'compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'"  *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist LEXIS 71598, at *26–27 (C.D. Cal. June 30, 2010) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000);  *see also Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); *Carter v. Anderson Merchandisers, LP*, 2010 WL 1946757, at *4 (C.D. Cal. May 11, 2010) ("Given the relatively small size of the proposed [$5,000] recognition payments, the Court thus approves the recognition payments requested for both Carter and Lanasa").

Each Plaintiff here invested time into this litigation, as described in their respective Declarations.  *See* Declaration of Julia Reniger; Declaration of Greg Battaglia; Declaration of Lucia Saitta; Declaration of Ann Mancuso.  They took personal time to speak with Class Counsel, search for relevant evidence, review and approve the complaints for filing, and keep abreast of the litigation for over two years.  *Id.*  This sacrifice was made to support a case in

which they had a relatively modest personal interest, but that has provided benefits to thousands of Settlement Class Members and the general public nationwide, and warrants the Court's approval of the requested service awards.  Given their contribution to the successful prosecution of this action, taking on the burden of challenging one of the largest automobile companies in the world, Plaintiffs should be granted incentive compensation awards in the amount of $2,500 each.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the instant Motion be granted, and that Class Counsel be awarded their requested attorneys' fees and costs in the aggregate amount of $745,000, and Plaintiffs their requested service awards of $2,500 each.

DATED:  January 12, 2017                    GLANCY PRONGAY & MURRAY LLP


                                            By:  *s/ Mark S. Greenstone*
                                            Lionel Z. Glancy
                                            Marc L. Godino
                                            Mark S. Greenstone
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, California 90067
                                            Telephone:  (310) 201-9150
                                            Facsimile:  (310) 201-9160
                                            E-mail: info@glancylaw.com

                                            *Attorneys for Plaintiffs*

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On January 12, 2017, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 12, 2017, at Los Angeles, California.


                        *s/ Mark S. Greenstone*
                        Mark S. Greenstone

# Mailing Information for a Case 4:14-cv-03612-CW Reniger et al v. Hyundai Motor America et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kimberly Thanh Chung**
  Kimberly.Chung@lewisbrisbois.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Mark Samuel Greenstone**
  mgreenstone@glancylaw.com,info@glancylaw.com

- **Michael K. Grimaldi**
  michael.grimaldi@lewisbrisbois.com,bonnie.reinhard@lewisbrisbois.com

- **Eric Y Kizirian**
  eric.kizirian@lewisbrisbois.com,cynthia.snyder@lewisbrisbois.com,Bonnie.Reinhard@lewisbrisbois.com,michael.grimaldi@lewisbrisbois.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)